UNITED STATES DISTRICT COURT
DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　Plaintiff,<br><br>　　v.<br><br>SCOTT RHODES,<br><br>　　Defendant. | Case No. 21-110-M-DLC-KLD<br><br>**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO MOTION TO DISMISS** |

## PLAINTIFF'S RESPONSE CONTAINS NOVEL ASSERTIONS AND ARE CONTRADICTED BY PLAINTIFF'S OWN FILING

Plaintiff's Response to Defendant's Motion to Dismiss makes new claims not contained in Plaintiff's Complaint and said claims should not be afforded a presumption of truth, and further, are shown as false by Plaintiff's own filings. Specifically, "...using a false caller ID that matches the locality of the recipient—to trick recipients into answering the phone and subjecting themselves to shocking and offensive prerecorded messages." (Plaintiff's Response, page 2). Also, this is contradicted by Plaintiff's own Exhibit A: "…recipients listened to the robocalls live while others listened to the robocalls from voicemail."[1] Thus whether or not a call recipient answered the phone was immaterial.

Plaintiff's Response page 2: "Rhodes also intended to misdirect anger over the spoofed calls onto entities whose caller IDs he falsely used, to those entities' detriment." This new claim could only potentially apply to one out of five calls contained in Complaint, one for which non-working phone numbers were used which were found by FCC to be assigned to two companies unrelated either to Defendant or to the political subject of the call recording. Further, this new claim is shown false by Plaintiff's filing which says that the recorded message ended with the source of the call.[2]

---

[1] Plaintiff's Exhibit A, page 3, footnote citation 18
[2] Plaintiff's Complaint, para. 19 and Plaintiff's Exhibit A, Appendix, page 24.

Plaintiff's Response page 2: "Rhodes spoofed in order to shield himself from liability and to obtain publicity by securing a larger audience for his illegal robocalls." This third novel claim does not make sense. A "robocaller"[3] chooses phone numbers of call recipients and initiates the calls. It does not require attracting an audience.

Plaintiff's Response page 4: "with the intent to...gain *valuable publicity*..." (emp. added). This is novel in that Plaintiff's Complaint does not make such a baldly direct claim, however it was preemptively addressed in Defendant's Motion there is no evidence that Defendant had any personal gain to be realized (including but not limited to monetary) by the dissemination of political speech. The Plaintiff's repeated attempts to improperly broaden the word of "value" to anything a Defendant might perceive as beneficial, in contradiction to legal precedent, were addressed in Defendant's Motion[4] and will be done so again further herein.

## PLAINTIFF'S RESPONSE MISLEADS COURT BY MISCHARACTERIZING DEFENDANT'S MOTION TO DISMISS

Plaintiff's Response page 4: "Rhodes argues that the Complaint does not supply conclusive proof of all the facts alleged". False. Defendant's motion in no

---

[3] Plaintiff chooses to use the word "robocaller" for negative emotional effect and to mislead the Court into believing an autodialer was used, despite Plaintiff knowing via its own Exhibit A (para. 7) that the computer application used for calling was not an autodialer , instead, one where a human must curate each call one by one. (Exhibit B, para. 24)
[4] Defendant's Motion to Dismiss, II 3 c , page 6.

2

instance makes any argument about "conclusive proof". Rather, Defendant's Motion outlines as one reason to dismiss (among others) failure to properly establish a plausible claim entitled to relief, that naked assertions and/or conclusory statements without sufficient factual allegations do not suffice.

    Plaintiff's Response page 4: "Rhodes incorrectly argues that the Truth in Caller ID Act does not cover emotional harm..." False. Defendant's motion nowhere makes such claim. Rather, one argument (among others) in Motion cites legal precedence that 1st Amendment protection is to be given preeminence in actions claiming political speech intends emotional harm. Supreme Court in Snyder v. Phelps, 562 U.S.443 (2011). Also see: Hustler Magazine, Inc. v. Falwell, Connick v. Myers, San Diego v. Roe, Rankin v. McPherson.

    Plaintiff's Response page 8 "Rhodes' effort to limit the harm prohibited by the statute to very specific contexts—such as calls intended to defraud the recipient...improperly restricts the scope of the Act." False, mostly. Motion seeks the Court to prevent Plaintiff from improperly *broadening* the scope of the Act. Motion did illustrate the type of fraud that was the driving impetus to the creation of the Act but went on to cite from the Congressional Record the consideration of other intents. Motion cites reasons why Court should see Complaint is seeking to broaden the Act beyond its clear intent as reflected in its language, its history, and

the Congressional Record, similarly reflected in statement by FCC Commissioner O'Rielly, as found in Plaintiff's Exhibit A, page 27-28.

Plaintiff's Response page 8, "Rhodes also suggests that the...Act requires the...caller ID...to cause harm by itself....Rhodes fails to explain how a string of numbers in a caller ID could cause harm by itself." False. Nowhere does Motion make or rely on such mischaracterization. Rather, Motion details why Court should recognize Plaintiff's misinterpretation of the Act is contrary to the common sense reading of Act's language and word order, that use of inaccurate caller ID be *material* to the intent to cause harm, not merely that a call that intends to cause harm, also happens to also use inaccurate caller ID, i.e. that the Act's sentence clause "with the intent to..." directly precedes and thus also relates to and modifies the clause "...transmit or display misleading (caller ID)..." Motion further details instances where Complaint makes such an assertion but why in each case it is an insufficiently naked assertion, such as its silly claim that humans experience distress merely by thinking a call's origin is within their state and then learning it is not, or that Defendant believed in the existence of such a dynamic.

Plaintiff's Response page 8, "Court should decline Rhodes' invitation to add words to the statute." False characterization. Motion asks Court to apply common sense to the statute language and of the Congressional Record. Further, Plaintiff's Complaint in some instances expects Court to *subtract* a word, specifically

4

"wrongfully" and reject any implication that "wrongfully" is satisfied by violation of the Act itself, since that would be self-referential and circular reasoning.

Plaintiff's Response page 8, "Rhodes also challenges the FCC's interpretation of the statutory phrase "anything of value" suggesting that the statute requires the intent to obtain money or specified valuable items." False. Motion in no place states, implies, nor relies on such, rather, cites precedence in asking the Court to not let Plaintiff improperly broaden scope of the word "value". United States v. Sheker explicit rejects a "sweeping position" that "thing of value....extends to anything that has value to the defendant." Also U.S. v. Girard.

## ERRORS IN PLAINTIFF'S RESPONSE

Plaintiff's Response, page 9, "...FCC has consistently interpreted the Act to cover the scenarios described in the Complaint." False. The forfeitures it cites only were also done under the Truth in Caller ID Act but are most certainly not "...the scenarios described in the Complaint" nor did they rely on some of the dubious interpretations in trying to show a plausible cause of action as in Complaint.

Plaintiff's Response, page 10, seeks to nullify Motion's claims of 1st Amendment preeminence using Texas v. Johnson, Spence v. Washington. In fact, both cases upheld free speech for acts that were not guaranteed to be understood by every viewer, i.e. displaying an altered U.S. flag upside down, burning the U.S. flag. Thus phrase relied on by Response "likelihood was great the message would

5

be understood by those who viewed it" was not a defining precedent in a case ruling against speech claimed expressive. Nor could any common sense inference take that to mean that in order to qualify as expressive speech, likelihood (would be) great for *every single* viewer/listener. If such interpretation were adopted, there would be instances where expressive speech was the crux of a case, and where the same speech could be ruled on in two contradictory ways depending on the native languages of the parties, i.e. a Spanish speaker engaging in protected speech but denied protection if audience was English-speaking only, or vice versa.

    Further, Response disingenuously says "Rhodes' claim that some of his false caller ID...is symbolic to him" when Plaintiff's own Exhibit C states it is "an amalgamation of...a white supremacist slogan". Motion cites the recognized meaning of the numbers as reflected in Plaintiff's Exhibits and nowhere says they are merely "symbolic to him".[5] Further, the source used on this matter by Plaintiff's Exhibit C, Google, shows Defendant correct.

    The Response citation, page 10, of Name.Space, Inc. v. Network Sols. contradicts Plaintiff's use of it. Ruling did not find web addresses not expressive, merely the then-existing three letter suffixes (.com, .net, etc.).

---

[5] Defendant asks Court to recognize that the pattern herein cited of repeated false statements of the Motion's content allows it to infer the Plaintiff is acting in bad faith, i.e. full on lying to this Court, as distinct from the acceptable practice of making novel or stretched arguments or interpretations in attempts to sway a Court.

Likewise Response's citation, same paragraph, of Munari v. Freeman. "The four domain names *at issue* (emp. added) contain insufficient expression..." "John Doe correctly states that domain names are not per se excluded from First Amendment protection. Kremer, 403 F.3d at 672. Whether a particular domain name is protected is a fact-specific inquiry. Name.Space, Inc., 202 F.3d at 585."

Plaintiff's Response, page 11, "...Rhodes' suggestion that the First Amendment protects his spoofed robocalls because the calls were used to disseminate messages touching on[6] political subjects." Motion nowhere makes such simple and broad argument. Rather, Motion cites how 1st Amendment-protected status of the speech takes preeminence over and disqualifies the "intent to harm" prong. In other instances, Motion explains how a government claim of regulating "conduct not speech" fails when the conduct is itself protected speech. And yet elsewhere details why the Court should find the Act itself as overbroad.

Plaintiff's Response, p. 12 "Truth in Caller ID Act does not impinge Rhodes' right to speak anonymously....the Act protects that right by expressly permitting callers to remain anonymous." Response's argument was already anticipated and preemptively addressed by Motion. Response does nothing to contradict what is cited there, in fact, merely repeats *part* of what Motion already acknowledged.

---

[6] Another instance in Plaintiff's pattern of careful, intentional understatements meant to deceive. Political speech was central to the message content and they did not merely "touch on" political subjects.

7

## EIGTH AMENDMENT

Plaintiff's (c.), page 13 seeks to recontextualize the $9.918 million forfeiture using an imperfect analogy of the atmosphere but does not refute the literal context provided in Motion of unprecedented, insufficiently considered forfeiture amount, namely (but not limited to) Roesel, 21 million for-profit calls in three-months, forfeiture amount $3.90 per call. Abramovich, 96.7 million for-profit calls in three-months, forfeiture amount $1.20 per call. Defendant, 4,959 political speech calls in three-months, forfeiture amount $2,000 per call. Additionally, calls attributed to Defendant were not described in Complaint as "telemarketing" as Response now uses in this same paragraph for "context".

## OVERLONG MOTION TO DISMISS

Only upon Plaintiff's Response was pro se Defendant first aware of a length requirement for the Motion to Dismiss of 20 pages or less, having submitted a Motion of 30 pages. If the Court has discretion to consider Defendant's Motion, Defendant asks that Court do so in the interest of justice, and judicial economy, while recognizing that length limit for motions was created in response to abuse of motions as tactic to overburden Court rather than prevail, and that Motion which is otherwise of proper margins, proper line spacing, with Table of Contents, Table of Authorities is clearly not such a tactic and was tendered in good faith. Defendant

requests that in the alternative, should Court not have that discretion or choose not to exercise it, that it issue a notice allowing filing of an amended Motion.

## SLAPP SUIT

Defendant asks Court to discern whole of Plaintiff's filing as a SLAPP suit, Strategic Lawsuit Against Public Participation, intended to suppress political speech deemed against the interests of some individuals in government roles behind the Complaint, via the mere process, regardless of verdict, namely, the negative publicity generated by the Forfeiture Proposal, again by Forfeiture Order, again by Complaint filing, by the process's granting the excuse of a taxpayer-funded fishing expedition via discovery, financial punishment for pro se Defendant in lost work, expense of a minimum of 7 hours round trip to Missoula multiplied by each step of the process, while the publicity at each step is also to dissuade speech of others of the public with similar views.

When the Court adds to the above the clear ideological hostility of the individuals acting on behalf of Plaintiff, demonstrated by: a) Response's reference to Defendant as "internet outrage merchant"[7], b) Plaintiff's Complaint repeatedly capitalizing the word "Black" despite being incorrect grammar, while neglecting to do so for "white", and whereas this is a very recent, (still incorrect) convention

---

[7] "Outrage" reveals the subjective position of the Plaintiff in this matter, not all among the public, many of whom share the views expressed in the recorded messages. Nor is "merchant" an accurate characterization for the dissemination of advocacy for public policies that affords no personal gain to the speaker, in fact, only risk of great cost.

being used by news media, that is because one private company, the Associated Press, chose to do this which then forces other media outlets to conform to this "AP style" if they wish their articles to be eligible for reproduction and payment by the AP. Complaint is not a news article and Plaintiff's choice to use this skewed anti-white convention reveals their hostility to the political messages at issue.

When Court further adds to the above, the repeated pattern of misstatements (not mere interpretations) of the content of Defendant's Motion by sufficiently experienced professional litigators, and at least one instance of careful and deliberate understatement in Plaintiff's Complaint such that statement is technically true but designed to deceive the Court to draw a false conclusion on a matter of relevancy[8], that overall, the Plaintiff has been acting in bad faith. In short, individuals ostensibly performing on behalf of Plaintiff "United States of America", are, in layman's terms, lying to the Court.

Defendant requests that beyond merely granting the Defendant's Motion to Dismiss for the reasons cited therein, that should Court also be able to discern the bad faith nature of the Complaint and conduct undertaken so far in its name, that the Court officially rebuke, admonish, or similarly chastise the Plaintiff if such a rebuke is an ability even granted to the Court by legal procedure and form.

DATED this 1st day of December, 2021

---

[8] See Defendant's Motion to Dismiss, IV B2(b), page 16

Respectfully submitted,

SCOTT RHODES

By: *s/Scott Rhodes*
Pro Se Defendant
6653 Main St.
Bonners Ferry, ID 83805

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of December, 2021, I electronically filed the forgoing document with the Clerk of Court using the CM/ECF system which will send notification of the filing to the Plaintiff.

By: *s/Scott Rhodes*
Pro Se Defendant
