IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>SCOTT RHODES,<br><br>Defendant. | CV 21–110–M–DLC<br><br><br><br>ORDER |

Before the Court is United States Magistrate Judge Kathleen L. DeSoto's Findings and Recommendation concerning Defendant Scott Rhodes's Motion to Dismiss. (Doc. 12.) Rhodes timely filed specific objections to the Findings and Recommendation. (Doc. 13.) Consequently, Rhodes is entitled to *de novo* review of those findings and recommendations to which he objects. 28 U.S.C. § 636(b)(1)(C); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Absent objection, this Court reviews the Findings and Recommendation for clear error. *McDonnell Douglas Corp. v. Commodore Bus. Mach., Inc.*, 656 F.2d 1309, 1313 (9th Cir. 1981). Clear error exists if the Court is left with a "definite and firm conviction that a mistake has been committed." *United States v. Syrax*, 235 F.3d 422, 427 (9th Cir. 2000).

1

## BACKGROUND

On January 14, 2021, the Federal Communications Commission ("FCC") issued a Forfeiture Order in the amount of $9,918,000 against Rhodes for "4,959 violations of 47 U.S.C. § 227(e)(1) and 47 C.F.R. § 64.1604." (Doc. 1 at 2.) The United States brought this action, pursuant to 47 U.S.C. § 504(a), to enforce the Forfeiture Order and "seek[] injunctive relief in the form of a writ of mandamus commanding [Rhodes] to comply with the Truth in Caller ID Act" (the "Act"). (*Id.*)

The Act makes it unlawful to "cause any caller identification service" in connection with any telecommunications service or IP-enabled voice service "to knowingly transmit misleading or inaccurate caller identification information with the intent to defraud, cause harm, or wrongfully obtain anything of value." 47 U.S.C. § 227(e)(1). The FCC's implementing regulation similarly provides that no person "shall, with the intent to defraud, cause harm, or wrongfully obtain anything of value, knowingly cause, directly, or indirectly, any caller identification service to transmit or display misleading or inaccurate caller identification information in connection with any voice service or text messaging service." 47 C.F.R. § 64.1604(a). The Act and operative rules authorize the FCC to impose a forfeiture of up to $11,766 for each spoofing violation.[1] *See* 47 U.S.C. § 227(e)(5)(A); 47

---

[1] The practice of knowingly transmitting misleading or inaccurate caller identification information is more

C.F.R. § 1.80(b)(4); Annual Adjustment of Civil Monetary Penalties To Reflect Inflation, 85 Fed. Reg. 2318-01 (Jan. 15, 2020).

Rhodes's Motion to Dismiss (Doc. 5) was filed in response to the United States's Complaint for Recovery of Civil Monetary Forfeiture and Injunctive Relief (Doc. 1). In his motion, Rhodes raised three arguments for dismissal: (1) 47 U.S.C. § 227 and 47 C.F.R. § 64.1604 violate the First Amendment; (2) the penalty imposed by the FCC violates the Eighth Amendment; and (3) the Complaint fails to properly establish a plausible claim for relief. (Doc. 5 at 9–10.) After considering each of these arguments, Judge DeSoto recommended that the Court deny Rhodes's Motion to Dismiss. (Doc. 12 at 24.) Rhodes raises two specific objections to the Findings and Recommendation, and the Court will address each of these issues *de novo*. Because Rhodes is a pro se litigant, the Court construes his filings liberally and affords him the benefit of any doubt. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).

For a more thorough discussion of the background and alleged conduct leading to this action, refer to Judge Desoto's Findings and Recommendation (Doc. 12 at 1–7) and the Complaint (Doc. 1).

## DISCUSSION

Federal Rule of Civil Procedure 12(b)(6) authorizes a motion to dismiss for

---

commonly known as "spoofing." (*See* Doc. 1 at 3.)

failure to state a claim. A Rule 12(b)(6) dismissal "is essentially a ruling on a question of law" and the purpose of Rule 12(b)(6) motions "is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 580–81 (9th Cir. 1983). "In order to survive a [R]ule 12(b)(6) motion to dismiss, a plaintiff must allege enough facts to state a claim to relief that is plausible on its face." *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017). "A claim has facial plausibility when the plaintiff pleads content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This Court must take a plaintiff's well-pleaded allegations as true by "drawing all reasonable inferences in the plaintiff's favor" before concluding whether "the allegations are sufficient as a legal matter" to state a cognizable claim for relief. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

I.     **The Court's Jurisdiction Over Constitutional Challenges**

In his Motion to Dismiss, Rhodes raised two constitutional challenges. First, he argued that the statutes upon which the Complaint is based are "substantially overbroad because they do not make exception for political speech," thereby violating the First Amendment. (Doc. 5 at 9.) Second, he argued that the $9,918,000 penalty imposed by the FCC and sought in this action are excessive under the Eighth Amendment. (*Id.*) The United States responded that the "Court lacks subject-matter jurisdiction to address these challenges to the extent that they

question the validity of FCC rules," and that the arguments are nonetheless meritless.  (Doc. 10 at 6, 11–15.)  Judge Desoto concluded that this Court lacks jurisdiction to consider Rhodes's constitutional challenges to 47 U.S.C. § 227(e)(1) and 47 C.F.R. § 64.1604.  (Doc. 12 at 16–17.)

In his objections, Rhodes argues that the Findings and Recommendation improperly concludes that this Court lacks jurisdiction to consider the statutes' unconstitutionality for overbreadth.  (Doc. 13 at 1.)  Rhodes points to the "divergent case law on whether a District Court has jurisdiction to rule on the unconstitutionality of an FCC order in a forfeiture case" and urges this Court to adopt the approach of the Sixth Circuit, allowing the Court to consider defenses of unconstitutionality.  (*Id.* at 4–5.)  Rhodes also argues that the Court's denial of jurisdiction "would have the practical effect of denying unrepresented citizens a critical defense of showing the unconstitutionality of the basis for the forfeiture attempt."  (*Id.* at 6.)  The Court will review Rhodes's arguments on this Court's subject matter jurisdiction *de novo*.

"The court of appeals . . . has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of – (1) all final orders of the Federal Communication Commissioner made reviewable by section 402(a) of title 27."[2]  28 U.S.C. § 2342.  However, Congress granted the district courts

---

[2] Section 402(a) of Title 27 states that "[a]ny proceeding to enjoin, set aside, annul, or suspend any order of the

subject matter jurisdiction over actions filed to enforce forfeiture orders issued under the Act—

> [t]he forfeitures provided for in this Act shall be payable into the Treasury of the United States, and shall be recoverable, . . . in a civil suit in the name of the United States brought in the district where the person or carrier has its principal operating office . . . : Provided, *That any suit for the recovery of a forfeiture imposed pursuant to the provisions of this Act shall be trial de novo* . . . .

47 U.S.C. § 504(a). This statutory scheme has resulted in divergent caw law regarding a district court's jurisdiction over challenges to FCC regulations.

In *Dougan v. FCC*, the Ninth Circuit held that it lacked jurisdiction over the appeal of an FCC forfeiture order that raised both jurisdictional and constitutional challenges because § 504(a) vested exclusive jurisdiction in the district courts. 21 F.3d 1488, 1490–91 (9th Cir. 1994). Yet, in a later case, the Ninth Circuit criticized its decision in *Dougan*, ultimately holding that the district court lacked jurisdiction to adjudicate constitutional challenges to the FCC's implementing regulations in the context of injunctive actions. *United States v. Dunifer*, 219 F.3d 1004, 1008 n.8 (9th Cir. 2000) ("*Dougan* relied too broadly on *Pleasant Broadcasting*, in which the parties did not challenge the underlying regulations, but merely asserted standard defenses to the validity of the FCC orders.").

The Court finds guidance from *United States v. TravelCenters of America*,

---

[FCC] under this chapter . . . shall be brought as provided by and in the manner prescribed in chapter 158 of Title 28." 47 U.S.C. § 402(a).

wherein the District of Oregon determined it lacked jurisdiction over constitutional challenges to an FCC forfeiture order, stating "actions which attack the legality of the [Communications] Act or its regulations are properly characterized as proceedings to enjoin, set aside, annul or suspend any order of the Commission under this Act and must be addressed by the appellate courts." 597 F. Supp. 2d 1222, 1226 (D. Or. 2007). The court's holding in *TravelCenters* is also consistent with holdings from the Fifth and Eighth Circuits. *See United States v. Stevens*, 691 F.3d 620, 622–23 (5th Cir. 2012) ("[T]o permit a [defendant] to challenge the legal validity of a forfeiture order as a defense to the government's enforcement action would permit it an end run around the courts of appeals' exclusive jurisdiction to determine the validity of final FCC forfeiture orders." (internal quotations and citations omitted)); *United States v. Any and All Radio Station Transmission Equipment*, 207 F.3d 458, 463 (8th Cir. 2000) ("*Radio Station*") ("[T]he district court is without jurisdiction to entertain a challenge to FCC regulations.").

The Court acknowledges that other courts have come to the opposite conclusion. For instance, the Sixth Circuit held that district courts do have jurisdiction to consider constitutional challenges to FCC regulations in forfeiture enforcement actions. *United States v. Any and All Radio Station Transmission Equipment*, 204 F.3d 658, 667 (6th Cir. 2000) ("Forfeiture actions, although nominally civil, are quasi-criminal in nature. . . . [T]his makes it even less likely

7

that Congress enacted a statute that allows the government to forfeit a person's property while denying the owner the right to defend himself by challenging the legal basis of the government's forfeiture case."). However, neither the Sixth Circuit's reasoning nor Rhodes's arguments to the same effect are compelling to this Court. Rhodes is not prevented from challenging the factual basis for the Forfeiture Order. *See TravelCenters*, 597 F. Supp. 2d at 1226 (stating "issues with regard to the facts underlying a forfeiture order, such as whether the conduct at issue violated the Act or its regulations, or which require the court to construe the regulations supporting a forfeiture order, . . . are properly resolved by the district court").

Accordingly, the Court holds that it lacks jurisdiction to consider Rhodes's constitutional challenges to 47 U.S.C. § 227(e)(1) and 47 C.F.R. § 64.1604.

## II. Challenges to the Sufficiency of the Factual Allegations

To state a plausible claim that Rhodes violated § 227(e)(1) and § 64.1604, the United States must allege facts demonstrating that Rhodes acted with the intent to defraud, cause harm, or wrongfully obtain anything of value. 47 U.S.C. § 227(e)(1); 47 C.F.R. § 64.1604.

In his Motion to Dismiss, Rhodes argued that the United States had not alleged sufficient facts nor produced sufficient evidence to support the requisite showing of intent. (Doc. 5 at 14–32.) Judge DeSoto addressed each of Rhodes's

arguments and concluded that "it is enough that the Complaint contains factual allegations demonstrating that Rhodes violated § 227(e)(1) and § 64.1604, as alleged by the United States." (Doc. 12 at 24.) Judge DeSoto also found that Rhodes's argument regarding the "intent to cause harm" is "based on an overly restrictive reading of the statutory and regulatory language," and his "argument that the FCC interpreted the phrase 'anything [of] value' too broadly . . . fails on the merits." (*Id.* at 20–22.)

Rhodes objects on the grounds that "[t]he Findings [and] Recommendation insufficiently applied the Motion's First Amendment arguments made for overbroadness [sic], to its prayer for relief under Federal Rule 12(b)(6)." (Doc. 13 at 4.) Rhodes argues that "even were the Court to deny itself jurisdiction on the overbroadness [sic] of the statute related to the First Amendment, [his] arguments and citations for overbroadness [sic] should be seen by the Court as also being sufficient grounds to satisfy failure to state a plausible claim for relief." (*Id.*) Rhodes further explains that "[t]he attempts by the Complaint to satisfy the two statute [sic] prongs of 'intent to...cause harm' and 'intent to...wrongfully obtain anything of value' should both be denied a cause of action due to First Amendment case law preventing political speech from being construed as either an intent to harm or to obtain value." (*Id.* at 7.)

To the extent Rhodes argues the Forfeiture Order is invalid because of First

9

Amendment principles, the Court is without jurisdiction as discussed above. To the extent Rhodes argues that the Complaint lacks a sufficient factual basis to support the action, the Court will address these arguments. Rhodes raises two arguments that can be liberally construed to fall into the latter category: (1) insufficient facts demonstrating an intent to harm two business entities whose caller IDs were falsely used by Rhodes (*Id.* at 8) and (2) insufficient evidence that Rhodes was seeking to obtain something of value through "political speech" (*Id.* at 9–10).

Rhodes's arguments construe the intent requirement of the statute too narrowly. First, the language of the statute does not require proof that the person intended for the spoofing of caller identification information to cause harm itself. The Complaint includes sufficient allegations that Rhodes intended to cause emotional harm to the recipients of his calls as a result of the content of those calls. (*See, e.g.*, Doc. 1 at 11, ¶ 33.) Second, the phrase "anything of value" was not defined in the statute and there is precedent from other, similar statutes that a thing of value can be non-tangible. *See, e.g., United States v. Schwartz*, 785 F.2d 673, 680 (9th Cir. 1986) (stating that a "thing of value is not limited in meaning to tangible things with an identifiable commercial price tag"). The Complaint includes allegations that Rhodes sought to promote his website "theroadtopower.com" while evading law enforcement. (*See* Doc. 1 at 6–11, ¶¶

10

19, 23, 26, 28, 30, 33.)  Accordingly, the Complaint has alleged sufficient facts from which the Court can reasonably infer that Rhodes acted with the intent to wrongfully obtain something of value, such as publicity for his website and political ideology along with protection from liability.

Reviewing the remainder of Judge DeSoto's Findings and Recommendation for clear error, the Court finds none.

Accordingly, IT IS ORDERED that Judge DeSoto's Findings and Recommendation (Doc. 12) is ADOPTED in full.

IT IS FURTHER ORDERED that Rhodes's Motion to Dismiss (Doc. 5) is DENIED.

DATED this 7th day of December, 2022.

*Dana L. Christensen*
Dana L. Christensen, District Judge
United States District Court