UNITED STATES DISTRICT COURT
DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SCOTT RHODES,<br><br>Defendant. | **Case No. 21-110-M-DLC-KLD**<br><br>**PRO SE DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404** |

## OPPOSITION'S LEGAL STANDARD

In the Legal Standard put forth (pg.2) Plaintiff's Opposition to Motion to Transfer Venue under 1404(a), tellingly, Plaintiff quotes only sparsely, two words, "strong showing" from the entire decision of *Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986)*. The entirety of that decision actually supports Transfer thusly, "court should consider private and public interest factors affecting the convenience of the forum.[1] Private factors include the 'relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling…witnesses. Public factors include….the local interest in having localized controversies decided at home'", which is reflected in events alleged in Plaintiff's Complaint, where it claims that one of the five "robocall campaigns"[2] was made specifically to recipients in the jurisdiction of the Coeur d'Alene Division by a resident of the Coeur d'Alene Division.

Presumably, the case chosen for the sparse two-word quote was so because that Court rejected Transfer, but did so because "Although the liability witnesses may be located in (the new venue), the damage witnesses primarily reside in (the old venue)." That does not apply. Here, Complaint names Defendant a resident of the new venue at the time of the event and alleges substantial call recipients in the

[1] Citing Piper Aircraft Co. v. Reymo
[2] Plaintiff's Complaint, para. 17

new venue, while none in Montana. Court noted in *Decker Coal* that witnesses in that case still being from both venues, "The transfer would merely shift rather than eliminate the inconvenience." In Complaint, there is no such splitting that makes it merely a shift. Complaint acknowledges Defendant as a resident of the Coeur d'Alene Division at the time, further alleges that 750 of the 4,959 total calls were received by people there, and none to Montana.

Plaintiff's Opposition Legal Standards then quotes sparsely from *Securities Investor Protection Corp. v. Vigman*, with "unless the balance of factors is strongly in favor of the defendants, the plaintiff's choice of forum should rarely be disturbed," a citation of *Gulf Oil Corp. v. Gilbert*, a case where the District Court granted the transfer, with transfer later reinforced as correct by the Supreme Court. Plaintiff neglected to include the first part of that sentence, "…the intent of the venue and jurisdiction provisions of the securities laws is to grant potential plaintiffs liberal choice in their selection of a forum…" Complaint does not involve securities laws.

**PLAINTIFF'S OPPOSITION ARGUMENT**

Plaintiff argues the Missoula Division is not an improper forum. That is irrelevant, but might have been necessitated by the pro se Defendant's improper use in his 1404(a) Motion of a legal term, "inconvenient forum" that has the specific meaning of an illegitimate forum. The argument and facts that accompany misuse

of that term by Defendant's Motion are still relevant, as Motion is nowhere arguing the case could not have been filed in Missoula. Court should understand it to mean "substantially less convenient forum", per the Supreme Court dictum to avoid unnecessary waste of time and expense by granting a 1404(a) motion.

Defendant trusts his error in language will not distract Court into subconsciously applying the higher standard of proof for a venue being improper, where the actual burden for 1404(a) is a "showing of the right to transfer"[3] (emp. added), a showing met in Defendant's Motion.

Plaintiff's Opposition falsely states, (pg.3), "(Defendant's) main argument about convenience boils down to…he will need to drive a bit farther…" The Defendant's Motion makes it clear the convenience issue applies to more than the Defendant's distance. Furthermore, that even when considering the Defendant, the unnecessary waste of time and expense is also difference in distance compounded by the differences in total needs between the two trips.

In citing *Peterson v. U.S. Steel Corp*. (pg.3) Plaintiff's Opposition attempts to improperly conflate Plaintiff characterization of a "short distance" in the *difference,* (here, 63 miles, see Motion pg. 3) with the decision language that was

---

[3] American Standard, Inc. v. Bendix Corp., 487 F. Supp. 254, 260 (W.D. Mo. 1980)

referring to the total distance between two venues, namely Chicago, Illinois vs. Hammond, Indiana, only 28 miles apart.[4]

Further, *Peterson v. U.S. Steel Corp.* is not analogous to the case at hand. In that one, the original venue was Chicago, IL (Cook County). Defendant moving to transfer had its plant, where the event occurred, a mere 30 miles away in Gary, Indiana, and likely witnesses related to this plant can be presumed to have been relatively local too.

This Defendant agrees with that Court that a mere 35-minute drive is not, itself alone, a substantial inconvenience warranting a 1404(a) change of venue. As stated in Defendant's Motion, Defendant is at least 192 miles away from the old venue, more than <u>six times</u> the distance in that decision. Motion cited that the difference between driving 6.5 hours round-trip to Missoula versus only 5 hours to Coeur d'Alene is more than just the extra 1.5 hours times every appearance. It's also the difference between being able to make a round trip in a single waking day, practically/safely, depending on the length of each proceeding and its start time, necessitating the additional expense of overnight lodging and additional day's car rental, multiplied by each step of the pre-trial process, plus trial.

Further, the 1404(a) issue for this case does not involve just the Defendant's demonstrated inconvenience of travel but it is also in the "interest of justice" per

[4] Exhibit A, US District Court Chicago, IL to Hammond, IN

1404(a) language, via the compounded effect on Defendant's ability to conduct his pro se defense, and other reasons detailed in Motion, such as the events are alleged to have originated in the Coeur d'Alene Division jurisdiction. Given that Plaintiff alleges Sandpoint, ID as the specific location at 187 miles distant from Missoula[5], presumable witnesses there are too far for Defendant to compel to appear in Missoula. Even were one, for argument's sake only, to pretend all witnesses would be voluntary attendees to trial, that then is a difference for them of 1 hour (46 miles) each way to Coeur d'Alene[6] versus 3.3 hours (187 miles) each way to Missoula[7].

Plaintiff says (pg.3) "convenience of party witnesses less significant than other facts", citing, but not directly quoting, *Saleh v. Titan Corp*, a decision that granted Defendant's 1404(a) motion, and which actually supports granting of this Defendant's Motion, "In addition, numerous courts have given less deference to the plaintiff's choice of forum where the action has little connection to the chosen forum.[8]" Not no connection, but "little connection" as here where the only connection alleged is Defendant's part-time residence in the Missoula jurisdiction after the alleged events. *Saleh* quotes *Cain v. New York State Bd. of Elections* thusly, "Court notes that, while it respects Fahy's right as a plaintiff to file suit in a

[5] Exhibit B, Sandpoint, ID to Missoula, MT
[6] Exhibit C, Sandpoint, ID to Coeur d'Alene, ID
[7] Exhibit B, Sandpoint, ID to Missoula, MT
[8] Itself citing Cain v. New York State Bd. Of Elections, 630 F. Supp. 221, 227 (E.D.N.Y. 1986)

forum of his choosing, this choice is not entitled to the weight *generally accorded* (emp. added) such a decision where there is lacking any material connection *or* (not "and", emp. added) significant contact between the forum and the *events allegedly underlying the cause of action.*" (emp. added)

That decision further said, " Section 1404(a) "displaces the common law doctrine of forum non conveniens" with respect to transfers between federal district courts.... By passing § 1404(a), Congress 'intended to permit courts to grant transfers upon a lesser showing of inconvenience than was needed for dismissal under the doctrine of forum non conveniens. This is not to say that the relevant factors have changed or that the plaintiff's choice of forum is not to be considered, but only that the discretion to be exercised is broader."

*Saleh v. Titan* goes on, "Since the *operative facts underlying the alleged cause of action* (emp. added) have no material connection whatsoever with this forum, plaintiff's choice of forum is a less weighty consideration."[9] "When the conduct and events giving rise to the cause of action did not take place in the plaintiff's selected forum, the plaintiff's preference has minimal value."[10]

Noticeably, Plaintiff's Opposition's attempt to infer from Saleh (with no direct quote) that convenience of party witnesses less significant than *other factors*

[9] *Saleh* quoting Chrysler Capital Corp. v. Woehling, 663 F. Supp. 478, 482 (D.Del. 1987)
[10] *Saleh* quoting Sierra Club v. Flowers, 276 F. Supp. 2d 62, 67

(emp. added) is false. *Saleh* says, "The relative convenience to the witnesses is often recognized as the most important factor to be considered in ruling on a motion under § 1404(a)"[11], then actually reads, "…[w]hile the convenience of party witnesses is a factor to be considered, the convenience of non-party witnesses is the more important factor."[12]

Plaintiff's Opposition (pg. 5, para. 2) presumes the alleged conduct to have taken place in the Coeur d'Alene Division's jurisdiction (Sandpoint, ID) by a Defendant resident of the Coeur d'Alene Division's jurisdiction. It in fact, specifies even more, "from his home", (while Plaintiff's filing also makes multiple references to Defendant's landlord there[13], an obvious potential witness). It seeks to nullify the obvious import of that by saying falsely that the calls (received in Idaho, but none to Montana) have "little current general connection" with Idaho. Of the five "robocall campaigns" enumerated in Complaint, one of those five is titled by Plaintiff as "Sandpoint, Idaho Campaign" (para. 24) and goes on that it "…targeted Sandpoint, ID" and that the subject of the call recording was local to that town, so there is very much still significant connection between the calls and the new venue.

Plaintiff's Opposition (pg. 6) claim that "the" (meaning Plaintiff's) witnesses are "nowhere near Missoula or Coeur d'Alene" (strangely ignoring Idaho call

[11] *Saleh* quoting State Street Capital Corp. v. Dente, 855 F. Supp. 192, 197 (S.D. Tex, 1994)
[12] *Saleh* quoting Aquatic Amusement Associates, Ltd. V. Walt Disney World Co. 734 F. Supp. 54, 57
[13] Plaintiff's Complaint, Exhibit A, para. 29, also citations 50, 97, 98

recipients) goes to Defendant's Motion that there is no prejudice to Plaintiff's case to transferring the venue, merely a prejudice against Defendant in not doing so. Witnesses, in the form of the call recipients, cited by Plaintiff on this page, specifically Virginia, Iowa, Georgia and Florida can travel at Plaintiff's expense to Coeur d'Alene just as easily as to Missoula. Plaintiff further has overstated "vast" majority of witnesses that are in neither state, implying perhaps only a few are in the new venue. Complaint alleges 750 of those 4,959 "witnesses" to be in Sandpoint, ID.

Opposition's citation (pg. 6) of "strong presumption" found in *Ctr. for Biological Diversity v. Lubchenco* should be seen as uncompelling since that is a quote from *Decker Coal* which has been dealt with already in this Reply.

Plaintiff's Opposition citation 1 about compulsion of witnesses is spurious. Sandpoint, ID (where underlying events originated) is not in "eastern Idaho" but in North Idaho, and is separated from Plaintiff's "Eastern Idaho" portion of the area by two large uninhabited National Forests in sequence. Plaintiff's Exhibit A shows the nearest "Eastern Idaho" community to be Wallace, ID as almost 100 miles away and thus its residents not to be assumed to have any significant connection to Sandpoint, ID, the Defendant, or the alleged "Sandpoint, Idaho Campaign".

Plaintiff's Opposition (pg. 7) claims it would "inconvenience all of the other witnesses" because the Spokane, WA airport is a 40-minute drive from Coeur

d'Alene. The Missoula airport is a 12-minute drive from the Federal Courthouse[14]; thus, the difference is only a negligible 30 minutes. Plaintiff's opposition has not shown that the difference in flight time all the way from say Florida or Georgia to Spokane, WA versus Missoula, MT is significant in a commercial jet or further, that said negligible flight distance difference would be an issue given that another factor for total flight time is the possible unavailability of non-stop flights to one destination versus another for very specific travel dates and the wide variation in the addition of significant layover time involved with connecting flights.

Plaintiff's Opposition (pg. 7) presumes a "modest number of live witnesses from the Sandpoint area." First, for whom? If for the Plaintiff, then 750 potential witnesses is not "modest". Further, Sandpoint area witnesses as to the local resident Defendant's whereabouts, actions, living situation, behavior related to the dates and times of events alleged by Plaintiff to have taken place there make a mere number comparison not the deciding issue but rather the nature and quality of the witness testimony and whether they can be compelled to testify, per *Hotel Constructors, Inc. v. Seagrave Corp.*, (see citation 17 of Defendant's Motion).

Plaintiff's Opposition claims inability to compel witnesses not to be relevant because "the government believes many witnesses would travel to share their stories…" Yes, witnesses for *Plaintiff*, cherry-picked by it because their particular

[14] Exhibit D, Missoula Airport to Missoula, MT Federal Courthouse

testimony is against the Defendant's interest, motivated by varying degrees of animus and hostility for an individual claimed by the government to be responsible (but denied by Defendant), or simply desirous of cooperating with the Federal government, may be willing to travel at Plaintiff's expense, but then are similarly motivated to appear in Coeur d'Alene as readily as in Missoula, MT.

The obvious potential witnesses from the Sandpoint, ID area with potentially exonerating testimony who otherwise have no connection with the case or underlying events have no such built-in motivation for pleasing (or being intimidated by) the Defendant to travel voluntarily to Missoula, MT. It is against the interest of justice to unnecessarily cripple the process by prioritizing the voluntary presence of Plaintiff's witnesses hostile to Defendant's interest, especially since they can appear in Coeur d'Alene as readily as Missoula, MT.

Plaintiff's Opposition (pg. 9) claims that the public interest factors "counsel against transfer" because the alleged calls from Sandpoint, ID were received in other states in addition to Idaho, (none Montana), and thus not a localized controversy. Of the five call campaigns alleged by Plaintiff, each targeting a different non-Montana state, one entire campaign and recording was indeed a "localized controversy" as it was localized "targeted"[15] to the Sandpoint, ID area, alleged to originate in Sandpoint, ID, by its resident, with the subject of the call

---

[15] Plaintiff's Complaint, para. 24

also being in Sandpoint, ID. The events being a localized controversy to the new venue are not a requirement of 1404(a) but to the degree that it is considered, the Sandpoint, ID community has more connection to the case than any other in the Complaint by far.

Plaintiff's Opposition (pg. 9) raises the issue of "judge shopping" citing (but not quoting) *Wireless Consumers Alliance, Inc. v. T-Mobile USA, Inc*. which does not use the terms "avoidance of forum" or "judge shopping". After a long unrelated paragraph, Opposition expands on that notion. It cites but does not quote *Torres v. The S.S. Rosario, 125 F. Supp. 496, 497*, inferring "Such belated forum-shopping is exactly what the transfer statute was designed to prevent. See *Torres*…" The actual words of Torres are "The statute was designed to remedy the evils of forum shopping." with said statute not being 1404(a), but rather the one appearing in decision's preceding paragraph, 21 U.S.C.A. 334, which relates to its mandate that "articles must be condemned in the district in which they are found", irrelevant here.

Plaintiff's Opposition, (pg. 10) makes a further point in support of the notion but it's moot, namely that the Motion to Transfer came only after an adverse decision on his Motion to Dismiss and adds a pejorative cliche about a "second bite at the apple". First, it is moot because Defendant had to make his Motion to Dismiss timely to the filing of the Complaint, and so a Motion to Transfer Venue

would, at the earliest, have only been an "in the alternative" option in his Motion to Dismiss, thus Transfer only ever being reviewed if and after an adverse decision for dismissal.

As to the "second bite" pejorative, if Plaintiff is alluding to a Motion to Reconsider a previously denied motion, such a reconsideration motion is only allowed upon permission of the Court after proving merit, in which case, it is de facto in the interest of jurisprudence and does not deserve a pejorative connotation. Further, that motion can also still be made in the Missoula Division and that option is not unique to the new venue.

Plaintiff's Opposition (pg. 10) states Transfer would waste "significant time and effort" from the Missoula Court and suggests that so far, having merely adjudicated a Defendant's motion is sufficient for denial of a 1404(a). Plaintiff cites no such precedence and, no doubt, Court can find examples of 1404(a) transfers granted with even more pre-trial effort than a motion adjudication, per the pro se legal standard that Court is to consider the principle raised even if cases for it are not cited. Next, it seems reasonable to assume that given the amount of time between prior consideration of Defendant's Motion to Dismiss and a projected date for jury trial, a conscientious Missoula judge would refamiliarize him/herself with the facts of the case anyway. The need for a judge in the Coeur d'Alene division to read the filing to be familiar with the facts is therefore not a duplication of effort,

but even if it were, is not such a crushing burden to rise to the level of the determining factor for a 1404(a).

In fact, minding the effort of the Missoula Court is exactly why Court should favor the Defendant's respectful request in his Motion to Transfer that it be granted now, before any further steps are taken in the pre-trial process, especially since it would be against the interest of justice if the Missoula Court, after a delay in deciding the Motion, at a later time reasons that interim steps taken since then are a factor not to grant the 1404(a).

In fact, even if judicial economy were the deciding factor, that favors the Transfer because Transfer robs Defendant the ability to use a 1404(a) denial as an argument in an appeal of final judgment. While an improper denial of a 1404(a) is by itself alone not an appealable order, such an order "maybe reviewed upon a subsequent appeal"[16], with the Court's previous denial of Motion to Dismiss already being such an appealable order, even aside from additional future pre-trial and in-trial Court decisions adverse to Defendant also supplying grounds to file an appeal of a final judgment.

As to Plaintiff's claim that it has any significant investment in bringing the case in Missoula rather than Coeur d'Alene, none of the alleged events nor

[16] Los Angeles Mem'l Coliseum Comm'n v. NFL, 726 F.2d 1381, 1399 (9th Cir. 1984) (involving appeal from jury verdict).

Plaintiff's presumed witnesses are in or relevant to Montana. No trial date has been set, so it cannot have made travel arrangements that need to be redone. It's hard to fathom any work Plaintiff has done thus far that is somehow specific to the old venue, (and it names none).

## CONCLUSION

Plaintiff has not contested the qualifying factor for 1404(a) that Complaint could have been brought in the new venue. Many of its unquoted or sparsely quoted case citations actually support Transfer and/or have specific qualifiers unique to their cases that are not present here. Defendant's Motion to Transfer meets the qualifiers stated in 1404(a) "convenience of parties and witnesses, in the interest of justice". It further meets the purpose elucidated by the Supreme Court to prevent waste "of time, energy, and money" and "to protect litigants, witnesses, and the public against unnecessary inconvenience and expense..."

DATED this 3rd day of January, 2023

Respectfully submitted,

SCOTT RHODES

By: *s/Scott Rhodes*
Pro Se Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on the 3rd day of January, 2023, I electronically filed the forgoing document with the Clerk of Court using the CM/ECF system which will send notification of the filing to the Plaintiff.

By: *s/Scott Rhodes*
Pro Se Defendant