UNITED STATES DISTRICT COURT
DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  v.<br><br>SCOTT RHODES,<br><br>  Defendant. | Case No. 21-110-M-DLC-KLD<br><br>**PRO SE DEFENDANT'S MOTION TO DISQUALIFY ARTICLE III JUDGE PURSUANT TO 28 U.S.C. § 455, 28 U.S.C. § 144** |

Pro se Defendant requests disqualification of Article III Judge Dana L. Christensen from this matter called for under 28 U.S.C. § 455 "in any proceeding in which his impartiality might reasonably be questioned" and/or 28 U.S.C. § 144 "personal bias or prejudice either against (a party) or in favor of any adverse party." The aforementioned two statutes may be referred to herein as 455 and 144.

## MOTION OVERVIEW

More details follow in the Legal Standard section of this motion which will be briefly touched on in this Overview. Case precedent holds that adverse decisions, in themselves, are *generally* not sufficient as a basis for disqualification, but that is not absolute. Still, this Motion is not predicated upon the mere fact of a total of 5 adverse decisions so far against Defendant between the jurist team of DeSoto-Christensen or upon disagreement with any of them by Defendant.

One, it examines statements from the opinion rendered in Magistrate Judge Kathleen DeSoto's Order reviewed and agreed with by Article III Judge Christensen or stated by him in his Order, both Orders relating to Plaintiff's Motion to Strike Defendant's Answer, Defendant's filings of Opposition to Motion, and Objection to Magistrate Judge's Order, thus rendering that content and related background facts material to this Motion and relevant to be quoted here.

Two, it draws upon statements written by J. Christensen regarding a different case, but not upon his adverse decision to that defendant.

## BACKGROUND

On Jan. 14, 2021 the Federal Communications Commission ("FCC") issued a Forfeiture Order seeking a forfeiture penalty of $9,918,000 against Defendant on allegations of violation of the Truth in Caller ID Act, 47 U.S.C. § 227(e) for a series of recorded political speech messages played by phone in a three-month period of August 28 to November 27, 2018. FCC did so after a detailed written response by Defendant to the FCC's Notice of Apparent Liability for Forfeiture or "NAL" which included Defendant's signed declaration that he did not make the calls alleged[1], a detailed showing that the calls alleged did not rise to the level of violation of the statute language, and assertion of 1st Amendment protection from the government's infringement of the political speech of the alleged call recordings, including but not limited to the phone numbers used.

Both the FCC's NAL, and the Forfeiture Order that followed it, alleged as part of the crux of their argument for qualification under the statute's prong of "with intent to cause harm", that anti-Jewish content in political speech recordings sent to thousands of recipients, was an intent to cause emotional harm to hearers that are Jews,[2] with two of the political call recordings being against political candidates for governor that said "It was the Jews who owned the slave trade what done brought us negroes to America…", "All the Jews gon' vote

---

[1] Plaintiff's Complaint, Exhibit B, pg. 30 of 31
[2] Plaintiff's Complaint, para. 33

me…Governor…", "[T]he Jews who own the American media saw something in me…"[3] Another recording included "[S]peak out against the Jewish agenda for the displacement of whites in America" and "[W]e're no longer going to tolerate a Jewish lying press and Jew corruption of the American legal system."[4]

Additionally, the first call recording which precipitated the FCC investigation and the NAL was an election campaign message for a candidate for U.S. Senator from California which included, "the Jews in our country got rid of that law", "To rid America of the traitorous Jews like Dianne Feinstein…", "…he's vowed to end Jewish control over America…", "He's going to get rid of all the nation-wrecking Jews from our country", and a sound bite from the film Schindler's List of a girl yelling "Goodbye Jews!" four times.[5]

On December 15, 2022, Defendant filed Answer to Complaint[6]. On January 3, 2023, Plaintiff filed a Motion to Strike Defendant's Answer over a single-sentence introduction that read:

"Defendant hereby answers Plaintiff's SLAPP suit (strategic lawsuit against public participation) regarding anti-Jewish political speech brought by the Jew-run DOJ (Merrick Garland) on behalf of the Jew-run FCC (Jessica Rosenworcel) based on a false report document by a Jew federal employee (Daniel Stepanicich) and

---

[3] Plaintiff's Complaint, Exhibit A, pg. 23
[4] Plaintiff's Complaint, Exhibit A, pg. 24
[5] Plaintiff's Complaint, Exhibit A, pg. 22
[6] *See* Pro Se Defendant's Demand for Trial by Jury, Request for Public Live Audio Streaming Coverage of Trial, & Answer to Complaint for Recovery

3

prosecuted by a Jew-run prosecution team (Patrick Runkle), in the captioned matter as follows."[7]

Defendant's Opposition to Motion opposed Plaintiff's wish for the Court to establish that the appellation of the common words "Jew" and "Jewish" to be "anti-Semitic"[8] and "scandalous"[9], and Opposition included citations for judicial notice of the Federal government's use of "black-owned", analogous to "Jew-run", and the Federal government's published use of the term "Jewish-run",[10] while Defendant's Objection added citation of Federal government's published use of "black-run"[11]. Defendant's Opposition cited that in seeking the "drastic"[12] action of striking a Defendant's Answer, Plaintiff had failed to claim or demonstrate any prejudice, and that a defendant's timely filed answer to a complaint is a necessary step and not a "document interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation" per F.R.C.P 11.[13]

Defendant's Opposition filed on January 9, 2023 was met same day by Order from Magistrate Judge Kathleen DeSoto granting the Plaintiff's Motion to Strike Defendant's Answer.

---

[7] Defendant's Answer to Complaint, pg. 1
[8] Defendant's Opposition noted the exception that when the word "Jew" is used **ungrammatically** as a verb, it can be considered derogatory.
[9] "The word scandalous…generally refers to any allegation that unnecessarily reflects on the moral character of an individual or states anything in repulsive language…" Plaintiff's Motion to Strike, pg. 2
[10] Page 5, Defendant's Opposition
[11] Defendant's Objection, pg. 4 and citation 10
[12] *Augustus v. Bd of Pub. Instruction, 306 F.2d 862, 868 (5th Cir. 1962)*
[13] A summary found in Conclusion of Defendant's Opposition

On January 12, 2023, Defendant filed timely Objection to Magistrate Judge Kathleen DeSoto's Order, seeking de novo review by the Article III judge.

On January 17, 2023, Article III Judge Dana L. Christensen issued Order containing his reasons for affirming Magistrate Judge Kathleen DeSoto's Order.

On November 14th, 2018, J. Christensen issued an Order denying a defendant's motion to dismiss in the case of *Gersh v. Anglin*, a tort for damages sought by a plaintiff from anti-Jewish publisher Anglin stemming from exhortations for readers to harass Gersh for conduct Anglin characterized as negative and Jewish, related to alt-right political figure Richard Spencer, and for which Anglin made Gersh's Jewish identity central to the motivation and content.

**LEGAL STANDARD**

28 U.S.C. § 455 reads: "(a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned. (b) He shall also disqualify himself in the following circumstances: (1) Where he has a personal bias or prejudice concerning a party." Disqualification under 455(a) is not an admission by the judge that he is impartial, nor it is necessary for a movant to prove such. Rather, it is the lower bar of showing that a reasonable person sees sufficient reason to raise it as a question, and such a recusal is done to preserve the public's trust in judges.[14]

---

[14] "Litigants can move for trial judges to recuse themselves on grounds of partiality or the appearance of partiality. Improper denial of these motions can deprive citizens of their right to a "neutral and detached judge," and

5

28 U.S.C. § 144 reads: "Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

Case precedent suggests that sources under 455 or 144 are usually to be extrajudicial, but Supreme Court in *Liteky v. United States*[15] qualified that, acknowledging that regarding a judicial source, "surrounding comments or accompanying opinion" can be used, and that even "opinions formed by the judge on the basis of facts introduced during current or prior proceedings" could be grounds if "they display a similar degree of favoritism or antagonism." And *Hamm v. Members of the Board of Regents*[16] held that another exception to the general expectation of requiring extrajudicial sources is "when a judge's remarks in a judicial context demonstrate such pervasive bias and prejudice that it constitutes bias against a party."

## ARGUMENT

**I. Bias For Plaintiff & Ramifications for Trial.** In J. Christensen's Order of January 17, 2023, he wrote, "Judge (Kathleen) DeSoto does not conclude that

---

diminish public trust in the judicial system." *U.S. Dept of Justice, Recusal: Analysis of Case Law Under 28 U.S.C. §455 & 144 NCJ Number 196379*
[15] *Liteky v. United States, 510 U.S. 540, 555 (1994)))*
[16] *Hamm v. Members of the Board of Regents, 708 F.2d 647, 651 (11th Cir. 1983)*

"Jewish" or "Jew" are de facto anti-Semitic. Rather, (her) Order states that in the particular context that the terms were used by Rhodes in his Answer, those terms are anti-Semitic and meet the definitions discussed above."

The "definitions" (plural) to which J. Christensen stated assent included "scandalous"[17], which DeSoto's Order defined as "repulsive language that detracts from the dignity of the Court."[18] J. Christensen did so assent after review of Defendant's Opposition and Objection which both cited instances of the Plaintiff using analogous terms in its publishing, namely "black-owned", "black-run", "Jewish-run".[19] It's hard for a reasonable person to discern what in the single sentence at issue provided such a context that Jew, Jewish, and Jew-run are "repulsive language", key because the words appear nowhere else in the Answer and J. Christensen's Order specifies that the nature of the alleged calls being anti-Jewish[20] as not providing that context[21] after it was challenged that J. Kathleen DeSoto's Order created said context by an improper determination of disputed facts.

Thus, if (per J. Christensen) the words alone are not "anti-Semitic", and no disputed facts were used to provide context for such a determination, then the

---

[17] J. Christensen's Order to Strike, pg. 3
[18] Judge Kathleen DeSoto's Order to Strike, pg. 2
[19] *See* page 4, this Motion
[20] The imprecise term "anti-Semitic" is used in this Motion only as it refers to the use of it in the specified Court Orders. Otherwise, the term anti-Jewish is being used as more precise. Semitic peoples comprise than more than just Jews, for instance, also Arabs (of whatever religion or no religion). Second, Semitic indicates neither race/ethnicity nor a religion, but is a language group.
[21] J. Christensen's Order, pg. 3

naming of the individuals as Jews or Jewish was judged "anti-Semitic", a not unheard of social phenomenon but a subjective personal value not universally held nor enshrined in law, and one that is not afforded to references to people as white, black, Catholic or Hindi, for example.

Aside from the show of bias for the Federal government (Plaintiff) which itself publishes using analogous terms, while deeming similar use by Defendant as a reason to take the drastic action of striking his Answer, are two other issues.

One, that such special deference to Jews as a group constitutes bias to the Plaintiff in this action because it is being brought by a DOJ run by Merrick Garland (Jewish), on behalf of the FCC run by Jessica Rosenworcel (Jewish), based on the claims in a document[22] authored by FCC attorney Daniel Stepanicich (Jewish) as a result of an investigation by the Plaintiff's named members of the FCC Enforcement Bureau, of which 67% (four of the six) are Jewish, i.e. Stepanicich, Lisa Gelb, Rosemary Harold, Shannon Lipp[23], where the lead attorney specifically chosen and appointed after the Complaint had already been filed, Patrick Runkle[24], also Jewish.[25]

Two, the legitimate impeachment issues, i.e., witness bias regarding the veracity of the evidence claimed by said individuals in a case predicated on anti-

---

[22] Plaintiff's Complaint, Exhibit A
[23] Plaintiff's Complaint, Exhibit A, pg. 26
[24] Notice of Appearance of Patrick R. Runkle, November 8, 2021.
[25] A remarkable odds-defying confluence given Jews are only 2% of the U.S. population, or 1 of every 50 people.

Jewish political calls being alleged of an anti-Jewish Defendant is obvious, but the power to decide what is allowed to be said in that regard during trial by a Defendant should not reside with a judge who has already gone on record in this case agreeing that naming people as Jewish, and using the terms Jewish and Jew-run are "repulsive language that detracts from the dignity of the Court."

**II. Bias Against Defendant & Ramifications for Trial.** On November 14, 2018, J. Christensen issued an Order after de novo review of Findings & Recommendation of Magistrate Judge Jeremiah Lynch denying that defendant's motion to dismiss in the Case of *Gersh v. Anglin* (*See* pg. 5 this Motion for description of relevance.) In it, he twice described the son of Montana resident Sherry Spencer, Richard Spencer, as a "neo-Nazi", (pgs. 3 & 5). The term "neo-Nazi" is a common pejorative and slur, and it can only be such a slur here when this is not language found in J. Lynch's F&R and there is no indication in the record (or anywhere else, frankly) of Richard Spencer identifying himself as either Nazi, neo-Nazi, national socialist[26], or derivatives thereof. A non-biased use of the term neo-Nazi can be argued when it's applied to those who identify so, such as the late George Lincoln Rockwell, founder of the American Nazi Party, or Jeff Schoep, longtime leader of the National Socialist Movement. Richard Spencer has

---

[26] "Nazi" is an elision of the German words for "National Socialist" from the National Socialist German Workers Party, abbreviated in German as the NSDAP.

identified himself and his politics as "alt-right", a term known to J. Christensen since he uses it four times in the Order, including in reference to Spencer.[27]

The hostility and prejudice embodied in the slur "neo-Nazi" introduced unnecessarily as such a pejorative cannot be minimized considering that Americans have endured 80 years of incessant movie and TV demonization of "Nazis" as the embodiment of evil[28], and endorsed and still endorses the post-war execution of "Nazis" in a mere tribunal without the benefit of a genuine trial, for crimes invented in London after the war's end (ex post facto law), which included Julius Streicher, who despite not having been part of the military, was executed for publishing an anti-Jewish newspaper on the theory that to do so facilitates war crimes.

That order's show of prejudice and hostility is relevant in this case where even if the Plaintiff fails to prove its disputed allegation that Defendant made the anti-Jewish calls, Plaintiff's Complaint relates them to "a website on which Defendant posts a video podcast"[29] and Complaint's Exhibit A cites those videos "providing similar commentary as the robocalls[30] thus qualifying Defendant for the same prejudice and vitriol exemplified in the unnecessary insertion of slur "neo-Nazi" by J. Christensen in his Order in *Gersh v. Anglin*.

---

[27] J. Christensen Order, pgs. 2, 10, 13, 14
[28] Even often raised to the level of the supernatural.
[29] Plaintiff's Complaint, para. 19
[30] *Id.* Exhibit A, para. 6

Next, Order (pg. 11), J. Christensen makes the most disturbing statement of all with the biggest implications and that lead a reasonable person to be able to at least question impartiality, all that's required under 455(a), "The Court cannot find that Anglin's speech is unprotected on the basis that it evinces a *morally and factually <u>indefensible</u> worldview*." (emp. added). Similar to his invocation of the slur "neo-Nazi", this language was inserted by J. Christensen, who is not here quoting from J. Lynch's F&R and those terms appear nowhere from J. Lynch. The case record shows Anglin's "worldview" to be anti-Jewish in his publishing generally, and also specific to the characterization of Anglin's speech at issue in *Gersh v. Anglin.*

Something that is "morally indefensible" is therefore immoral. When things are crimes, one could objectively call them immoral simply by virtue of being crimes. But when not a crime (such as a "worldview"), they are not de facto "immoral" and that determination is a subjective one, in other words, a bias.

Defendant could not find a definition of "immoral" in Federal law, but using Black's Law Dictionary, immoral includes that which is contrary to principles necessary for the public welfare, order, and decency. A personal bias that anti-Jewish speech (or even mere "worldview") is immoral, is not universally held. Further, an individual that arrives at an anti-Jewish worldview because he believes Jews and/or Jewish behavior to be detrimental to his society, has arrived at that

11

because to him, it is for the preservation of "public welfare, order, and decency", and thus morally correct.

What is more disturbing than that J. Christensen does not allow for such a possibility, is his explicit use of the word "indefensible", as in <u>there is no defense</u> and the clear correlation to a literal <u>defense</u> and <u>Defendant</u>.

In the case at hand, Plaintiff is alleging not merely anti-Jewish political speech by Defendant (*See* pgs. 2 & 3, this Motion) but to prevail, seeks to convince the Court it was the caller's *intent* to emotionally harm hearers that were Jewish[31]. It is predictable that Defendant will endeavor to show that the anti-Jewish political speech of the call recordings cannot be prima facie assumed as an intent to harm Jewish hearers. Further, while the Defendant has made clear he did not make the alleged calls, should Plaintiff convince the Court otherwise, then the judge's notions regarding Defendant's intent (and "worldview") become critical.

Additionally, just as it is predictable that the Defendant will seek to debunk the Plaintiff's claim by showing political call recordings critical of Jews do not prima facie represent an intent to harm Jewish hearers, is his showing of how the facts cited or alluded to in the call recordings buttress the reasoning referenced on the previous page of this Motion, that such calls are intended for the public good from the caller's viewpoint, by virtue of being true and related to the public good.

---

[31] Aside from the obvious conflict of the concept with the Supreme Court precedent of *Snyder v. Phelps*, as argued in Defendant's Motion to Dismiss, denied by J. Christensen.

But the power to prevent admission of such facts by outside sources or expert witnesses being introduced at trial should not rest with a judge who has deliberately crafted and inserted the explicit written statement that such a worldview is not just "morally…indefensible"[32] (which relates to intent), but to the point of the preceding paragraph, is also "<u>factually</u> indefensible"[33].

## CONCLUSION

Defendant moves the Court to recuse Article III Judge Dana L. Christensen from this matter under 28 U.S.C. 455 and/or 28 U.S.C. 144. Per the requirements of 28 U.S.C. 144, this Motion is accompanied by an Affidavit and by a Certificate that the Motion is made in good faith.

DATED this 30th day of January, 2023

Respectfully submitted,

SCOTT RHODES

By: *s/Scott Rhodes*
Pro Se Defendant

---

[32] Judge Christensen's Order, pg. 11, *Gersh v. Anglin*
[33] *Ibid.*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d)(2)(E), the attached Motion to Disqualify Article III Judge is proportionately spaced, has a typeface of 14 points, and contains 3,189 words, excluding caption and certificates.

DATED this 30th day of January, 2023

By: */s/Scott Rhodes*
Pro Se Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of January, 2023, I electronically filed the forgoing document with the Clerk of Court using the CM/ECF system which will send notification of the filing to the Plaintiff.

By: <u>*s/Scott Rhodes*</u>  
Pro Se Defendant