UNITED STATES DISTRICT COURT
DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  v.<br><br>SCOTT RHODES,<br><br>  Defendant. | Case No. 21-110-M-DLC-KLD<br><br>**PRO SE DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR RECUSAL** |

Plaintiff's Response, contrary to facts within judicial notice, falsely characterizes Defendant's Motion as "frivolous" so as not to have to substantially and/or convincingly address its arguments, predicated in part on a baldfaced lie told to the Court about a previous Order, which is addressed page 10 herein.

## ARGUMENT

**Background.** In Plaintiff's attempt to buttress his technique referred to in the introductory paragraph directly above, he starts his building of his false portrayal of Defendant's defense efforts as by some kind of vexatious litigant thusly (pg. 1), "(Defendant) filed an Answer where he did not delete the stricken language, but redacted it using black redaction boxes."

This is irrelevant to the Motion at issue and is merely the first of at least two instances in Plaintiff's Opposition where Plaintiff's Attorney Patrick Runkle presents false information to the Court by mischaracterizing previous filings, perhaps believing the Court will be swayed by his position at the Dept. of Justice into mistakenly assuming anything he claims to be true, without checking.

The Order never used the word "delete". Rather, it read, "shall file an Amended Answer that does not contain the stricken language identified above." However, even had Order used the word "delete", the Defendant's Amended Answer conformed to that definition, which according to the Oxford Dictionary

means, "remove or obliterate (written or printed matter), especially by drawing a line through it…"

Defendant's Amended Answer used redaction as the most expeditious way to comply, by avoiding the need to alter the document length requiring review of footnote content, and any self-referential page references, which further allowed Defendant to expeditiously file his Amended Answer on the very same day as the Order issuance, a fact which, incidentally, also shows false the Plaintiff's attempt to portray the Defendant's defense efforts as an attempt to delay. The change made for the Amended Answer was perfectly coherent and intelligible.

**Argument.** Page 3, Plaintiff writes, "The Court struck (Defendant's) Answer because his allegations about the purported religious affiliation of specific government employees are irrelevant and immaterial to this case and were clearly intended to provoke and scandalize the reader." First, Defendant at no time used the word "religious" or "religion". That was introduced (inaccurately) for the first time in Magistrate Judge's Order. Jew/Jewish are also an ethnicity, regardless of religion or no religion.[1]

---

[1] The U.S. Census Bureau does not provide data on the Jewish population that the Court could take judicial notice of, but the American Jewish Population Project by Brandeis University, page 6, has explicit separate categories for "Jewish by religion" (4.9 million) and "Jews of no religion" (1.2 million).
https://ajpp.brandeis.edu/documents/2020/JewishPopulationDataBrief2020.pdf Similarly, the Jewish state of Israel has no religious standard for its dual-citizenship Law of Return for Jews, merely a genetic one.

More significantly, in reference to the above, it continues (pg. 3), "Those allegations have nothing to do with whether (Defendant) caused the spoofed calls identified in the Forfeiture Order with wrongful intent." For anyone with a grasp of logic, it should not need to be mentioned that the Jewish ethnicity of the drivers of this Complaint have no material effect on a fact of whether or not Defendant made the calls alleged. Rather, the Defendant's reference to the Complaint as a SLAPP suit very much had to do with the 1st Amendment affirmative defense to the Complaint. The otherwise inexplicable coincidence the creators of the case and its evidence are overwhelmingly of a single 2% ethnic minority that was criticized in the speech at issue was included to support that characterization as a SLAPP suit, not to "provoke and scandalize the reader".

Plaintiff's Opposition (pg. 3) "…claiming that not only government counsel are biased against him but that the Court is too." Defendant never claimed counsel to be "biased against him". Rather, he alluded to the SLAPP suit nature of the Plaintiff's novel use of the wording of the Truth in Caller ID Act and subsequent Complaint, with the motivation then being provided as support of that characterization.

Plaintiff's Opposition (pg. 4) seeks to mollify the problematic slur-nature of J. Christensen's unnecessary and inaccurate epithet of "neo-Nazi" by insisting it was deserved, thusly, "…the Court's description of an individual alleged to have

3

made a racist speech to a gathering of white nationalists giving Nazi salutes as an alleged neo-Nazi." Neither that order nor that complaint alleged that the individual made a "racist speech", nor was that individual even a party or witness to the complaint, but only tangentially related. That individual's so-called "racist speech" invoked by Plaintiff here should be outside the Court's ability to take notice, but because Plaintiff is using it as part of the basis for its Opposition, Defendant will here address it when he otherwise had no intention to do so.

Although Plaintiff's Senior Counsel Runkle has neglected to include specifics about which "speech" he's referring to, if one assumes it was the widely publicized 30-minute speech in November 2016 about the election victory of President Trump, then Runkle's description is inaccurate. First, to call it "racist" is simply casting a pejorative, displaying Runkle's own bias similar to that which requires recusal of the Article III judge (very likely the reason for Runkle's vehement, invective-laden Opposition to recusal).

The speech was inarguably rac<u>ial</u>, airing a racial grievance about the modern phenomenon of anti-white hostility being adopted by our institutions, major media, and popular culture. But to apply the pejorative epithet of "racist" (and it is such an epithet, itself grounds for a motion to strike)[2], means so too are "racist" the many speeches espousing the racial grievances of black racial activists such as Black

---

[2] *Pigford v. Veneman*

Lives Matter. Runkle offers no evidence as to the attendees of the speech being specifically "white nationalists" or the speech attendance being screened by a test of political affiliation or membership. Of the so-called "Nazi salutes", only four or five individuals out of the entire audience are seen doing so, at least two of those five later shown to be *detractors* of speaker Richard Spencer and who made salutes as a form of criticism and to impugn him. Regardless, an audience's reaction to a speech, motivated by whatever their varied reasons, is not the definition of the speaker.

The fact remains that the use of the slur "neo-Nazi"[3] by J. Christensen was deliberate, intentional, and wholly unnecessary for the reasons detailed in Defendant's Motion.

Also Page 4, "the Court's accurate summary of the protections of the First Amendment provides even indefensible ideas…" Again, Plaintiff's Attorney Runkle displays his own prejudice. The fact his bias is the same as that at issue here for J. Christensen does not make it acceptable and transform it into impartiality, but just means they're two peas in a pod regarding said prejudice. No judge has any legitimate business opining in his orders unnecessarily about "indefensible ideas". There are actions (including mere speech) that are defensible or indefensible by law. The language used by impartial judges in 1st Amendment-

---

[3] And no accompanying word "alleged" as falsely stated by Plaintiff's Attorney Runkle.

5

related issues frequently refer to speech as "controversial", "provocative", "unpopular", and even "upsetting", all words available to J. Christensen to communicate that concept.

But he chose not to use those. Rather, he deliberately, consciously, and wholly unnecessarily inserted language that allows a "reasonable person" to question his ability to be impartial in this case, the standard for 455(a), i.e., "morally and factually <u>indefensible</u> worldview." Further, that a judge's decorum in that regard could so easily be overcome by an impulse to virtue signal betrays a sheer arrogance and hubris contrary to then-lawyer Dana Christensen's claims to U.S. Senator Grassley during the process to be made a Federal District Court Judge despite no prior judicial experience, when he stated to Sen. Grassly thusly, "I believe one of the most important attributes of a judge is humility, not just personal humility, but judicial humility which manifests itself in deciding only the narrow issue that is before the court."[4] Judicial humility in this case requires disqualification under the 455(a) standard of mere appearance, if not in fact.

Plaintiff cites (pg. 5) *US v. Rodriguez*, but it does not serve the purpose Plaintiff purports with the sentence that directly precedes it. Rather the quote referred only to 144, not 455(a), and specifically to the substance of the affidavit required for 144. But to address Plaintiff's possible implication that the appearance

---

[4] Responses of Dana Christensen to Written Questions of Senator Chuck Grassley

of bias detailed in Defendant's Motion does not sufficiently relate to this Defendant, if a judge had gone out of his way to craft and insert totally unnecessary language in an order describing a black racial activist with the slur "uppity n***er", any "reasonable person", per 455(a), would rightly at least question that judge's ability to be impartial in a subsequent case with a black racial activist as defendant, especially where the black racial activist's speech and intent of it were the critical issue.

 Again, page 5, "…the government does not accept the outrageous idea that (Defendant) is somehow entitled to a Nazi-sympathizing or Nazi-agnostic judge to decide his case." Motion did not demand such a judge and its argument is not predicated on that. Rather, it first referred to the improper antipathy of the wholly unnecessary use of the slur "neo-Nazi" where it wasn't called for nor accurate, where the judge was aware of better more accurate descriptors, and for an individual who wasn't even a party, but only tangentially related to the case. Second, it referred to the shocking and frightening deliberate insertion by a judge, not about a defendant's actions or speech but about a "worldview" for which "there is no defense", and how that relates to a case that hinges on <u>intent</u> of similar speech by a similarly-minded Defendant.

 Plaintiff's citation of *Liteky* naming Hitler as someone not entitled to a recusal for an appearance of bias is, in one sense, irrelevant because comments

made by the judge were not about Hitler, and the Defendant is not Hitler, but it actually proves the Defendant's argument that "neo-Nazi" is a slur revealing hostility and animus incompatible with the required appearance of impartiality[5].

Plaintiff's Opposition (pg. 5) falsely holds that "Nazi and white supremacist views are incompatible with our Constitution, our system of government, and the laws and principles upon which the United States and the federal courts are built." No <u>views</u> are incompatible with the U.S. Constitution. The fact that a Senior Litigation Counsel for the DOJ would put that in writing suggests that the Department of Justice's standards for its hiring of attorneys is inexcusably low.

Certain <u>acts</u> are prohibited or policies mandated by either the Constitution and its amendments or by Court decisions that derive from interpretations of same. While certain acts are currently incompatible, such as racial discrimination in hiring, racial segregation of public facilities, etc., ALL <u>views</u> (and political speech) are "compatible" with the U.S. Constitution, including those that advocate for currently prohibited acts to be made lawful.

At one time, chattel slavery of blacks was compatible with the Constitution. The act of depriving an owner of his personal property in slaves without justification was incompatible with it and the laws derived from it. Yet despite that <u>act</u> being incompatible, the views (and speech) of abolitionists advocating such an

---

[5] With the exception noted in Defendant's Motion, which does not apply here.

act be made public policy was not prohibited because it was entirely compatible with the 1st Amendment. Similarly, were one today to advocate for a return to chattel slavery (a sentiment which is actually nonexistent), said speech and views would be entirely compatible with the Constitution and "laws and principles upon which the United States (is) built." The sheer ignorance and degree of offensiveness of the argument made by Plaintiff on such a basic, middle school civics class-level issue should disqualify that person from holding a position as an attorney at the U.S. DOJ.

      Plaintiff's Opposition (pg. 7) asks the Court to disregard the entirety of Defendant's Motion for a flaw in the meet and confer requirement in Local Rules. Pro se Defendant has no legal background and was unaware of the requirement. Had either the Plaintiff or the Court brought it to attention for previous Motions, Defendant would have complied in any subsequent motion, including this one, just as similarly, Defendant was originally unaware of length restrictions, and upon Plaintiff's asking Court to use that as a reason to disregard his Motion to Dismiss, Defendant offered to file an Amended Motion if necessary, and has conformed to length requirements for all subsequent filings.  Now that pro se Defendant is aware of the confer requirement, and what motions qualify as non-dispositive, he can comply with it.

Also page 7, "And it includes irrelevant, inappropriate, and intentionally provocative passages." Provocative to whom? Defendant's Motion is not published by the Court and is read only by it and Plaintiff. Plaintiff is again demanding Court establish that simply naming someone as Jewish is forbidden, a privilege not afforded to other groups. Indulging that standard desired by Plaintiff's Attorney Runkle because of his own personal interest in the matter is a display of bias for him and the other key individuals behind the Forfeiture and Complaint, already done in granting his Motion to Strike, and now it is Plaintiff who is "doubling down" seeking to repeat this novel standard in his Opposition.

Still, page 7, "This, as the Court will recall, is exactly the type of thing that was ordered stricken from his Answer and that the Court cautioned (Defendant) not to do again." <u>Yet another flat out lie by Plaintiff's Attorney Patrick Runkle</u>, another in his pattern of inaccurate characterizations to the Court of language appearing in previous filings. Order makes no such reference to any "type" of thing, and further there was no "caution" (nor was one deserved). That is a figment of Attorney Runkle's imagination as it is what he merely *demanded* in his Motion to Strike but rightly did not get.

Also page 7, "Delay, annoyance, and waste of the government's and Court's time have been some of the results of (Defendant's) frivolous motion (sic)." For the second time, Plaintiff attempts to dishonestly portray Defendant as some kind of

10

vexatious litigant in order to snooker the Court into doing something Plaintiff cannot, i.e., prevent Defendant from fully employing the legal rights and defenses afforded to him by U.S. law, and to preserve all legitimate objections for review by the Appellate Court (which will with 100% certainty be filed for in the event of a final judgment adverse to Defendant). It was not the Defendant, but the Plaintiff who brought this novel Complaint (and its subject matter), and should have thought through the consequences of bringing the Complaint (or the assignment of certain attorneys) if the subject matter, related impeachment issues, etc. must be classified as taboo to preserve the unusual sensitivities of the government's participants.

    If Plaintiff seeks to evoke the cliché of an incarcerated criminal pro se defendant who has his room and board provided for him by the taxpayers, and thus has nothing but free time to harass a court out of spite, then Court can recognize this is a civil complaint, not criminal, and this non-lawyer pro se Defendant is not in custody and so still must provide for his daily living. Unlike Plaintiff's Attorney Runkle, Defendant does not get paid to research and write legal filings for this case, a task which presumably consumes much more of Defendant's time than it does an educated and trained Plaintiff's attorney, and Defendant does so each time at the cost of lost wages and thus, cannot afford to make "frivolous" motions, nor has he.

Plaintiff hasn't specified whose "annoyance" he is alleging, but if the Court's, then that would be counterproductive to the Defendant's interest. If Plaintiff's Attorney Runkle means his own, Defendant has no way to predict the heightened reactivity of Mr. Runkle to subject matter for which he seems to have a particular and peculiar sensitivity, an anxiety that he seeks to have the Court improperly adopt for itself.

Court is allowed to take judicial notice of the timing of the totality of Defendant's filings, which have been made often well before the allowed deadline, contradicting Plaintiff's attempt to dishonesty ascribe a motivation of "delay" to Defendant's efforts to defend against the $9.9 million forfeiture seeking to be imposed.

## LEGAL STANDARD

Pro se pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers."[6] If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or the litigant's unfamiliarity with pleading requirements.[7] The Court must liberally construe the pro se litigant's

---

[6] *Haines v. Kerner,* 404 U.S. 519, 520–521 (1972)

[7] *Boag v. MacDougall*, 454 U.S. 364 (1982); United States ex rel. *Montgomery v. Bierley*, 141 F.2d 552, 555 (3d Cir.1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance").

pleadings and "apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name."[8]

DATED this 19th day of February, 2023

Respectfully submitted,

SCOTT RHODES

By: *s/Scott Rhodes*
Pro Se Defendant

---

[8] *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), quoting *Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 247–48m, 3d Cir. 1999. See *Nami v. Fauver*, 82 F.3d 63,65 (3d Cir. 1996)

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d)(2)(E), the attached Reply to Plaintiff's Response is proportionately spaced, has a typeface of 14 points, and contains 2,914 words out of the 3,250 allowed, excluding caption and certificates.

DATED this 19th day of February, 2023

By: *s/Scott Rhodes*
Pro Se Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of February, 2023, I electronically filed the forgoing document with the Clerk of Court using the CM/ECF system which will send notification of the filing to the Plaintiff.

> By: *s/Scott Rhodes*
> Pro Se Defendant