```
 1    MARY R. SULLIVAN
      Registered Merit Reporter
 2    Certified Realtime Reporter
      Sullivan Court Reporting
 3    P.O. Box 18100
      Missoula, Montana 59808
 4    406/721-2588 office
      406/721-3904 fax
 5    scr@montana.com

 6    United States Contract Court Reporter

 7

 8

 9                  IN THE UNITED STATES DISTRICT COURT
                      FOR THE DISTRICT OF MONTANA
10                         MISSOULA DIVISION

11    UNITED STATES OF AMERICA,           )
                                          )
12                    PLAINTIFF,          )
                                          )
13            VS.                         )   NO. CV-00110-M-DLC
                                          )
14    SCOTT RHODES,                       )   PRELIMINARY PRETRIAL
                                          )        CONFERENCE
15                    DEFENDANT.          )
      _____)
16

17

18          HEARD BEFORE THE HONORABLE DANA L. CHRISTENSEN
                  UNITED STATES DISTRICT COURT JUDGE
                      FOR THE DISTRICT OF MONTANA
19

20             Russell Smith United States Courthouse
                        201 East Broadway
21                  Missoula, Montana 59802
                    Thursday, April 20, 2023
22                   1:29 p.m. to 2:41 p.m.

23

24

25            Proceedings recorded by machine shorthand
          Transcript produced by computer-assisted transcription.
```

```
1                       A P P E A R A N C E S

2     For the Plaintiff:          Michael Wadden
                                  Patrick Runkle
3                                 U.S. Department of Justice
                                  Consumer Protection Branch
4                                 450 5th Street NW, Suite 6400S
                                  Washington, DC 20001
5
      For the Defendant:          Scott Rhodes, Pro Se
6                                 6653 Main Street
                                  Bonners Ferry, ID 83805
7

8

9

10

11                              CONTENTS

12    Proceedings................................................  3
      Reporter's Certificate..................................... 42
13

14

15

16

17

18

19

20

21

22

23

24

25
```

P R O C E E D I N G S

     THE COURT:  This is Judge Christensen.  Can you hear me?

     MR. WADDEN:  Yes, Your Honor, we can.

     THE COURT:  It sounds like we've got Mr. Runkle and Mr. Wadden on the phone.  Is that correct?

     MR. RUNKLE:  That's correct, Your Honor.  Thank you.

     THE COURT:  Who just joined?

     MR. RHODES:  Defendant.

     THE COURT:  Okay.  Mr. Rhodes, so you're on the phone with us.  Can you hear me all right?  This is Judge Christensen.

     MR. RHODES:  Your -- Your volume is a little low, but it could be my device on my end, but I -- I can hear you.

     THE COURT:  Okay.  And my understanding, Mr. Rhodes, is we've got Mr. Runkle and Mr. Wadden on the phone as well on behalf of the plaintiff United States.

     Mr. Wadden, do you expect anybody else to join the call from the standpoint of the United States this afternoon?

     MR. WADDEN:  I don't believe so, Your Honor.

     THE COURT:  Okay.  We can proceed, then.  Normally I would do these -- Well, not normally --  typically I would do these preliminary pretrial conferences in person, but because everybody is some distance from Missoula, I decided we would go ahead and do this by phone, save everybody the expense and

1   time of travel.

2           The primary purpose for the conference is to get a

3   scheduling order in place in this case, and I have present

4   with me -- I'm sitting in the courtroom.  But I have present

5   with me my courtroom deputy and Judicial Assistant Amanda

6   Goodwin; and then my law clerk, Matt Bain; and then we have a

7   court reporter in here that's making a record of this

8   proceeding as well.

9           Let me indicate for purposes of the record that I've

10  read everything that you all have submitted in the case, I'm

11  obviously familiar with it, having already dealt with some

12  preliminary motions.  But I have read the complaint, I've read

13  Mr. Rhodes' answer to the complaint, I've read the joint

14  discovery plan that's been submitted and the preliminary

15  pretrial statements so I'm up to speed in terms of where we

16  are procedurally in the case.

17          It appears to me that there was some effort made to

18  reach some agreement as to dates to complete certain tasks in

19  the case, although it's unclear to me whether these dates that

20  have been proposed through the discovery deadline have been

21  agreed to or whether or not there's some dispute as to what

22  the deadlines are to be.  So maybe somebody could sort of

23  enlighten me on where we are in terms of agreement as to

24  deadlines.

25          MR. RUNKLE:  Yes, Your Honor.  This is Mr. Runkle

1   for the government.  There -- There -- The dates that you're

2   referring to, I believe, are proposed dates that we offer --

3   that the government offered.  We did have a conference about

4   that, and the conference was cordial, but Mr. Rhodes believed

5   that the discovery schedule should be, I believe, a bit faster

6   than that, so he didn't offer -- he didn't offer alternatives,

7   but I believe on that call he said something like 60 to

8   90 days.  We believe something more along the lines of nine

9   months was appropriate, and those were the dates that

10  we -- that we put in the pretrial filing in the proposed

11  filing.

12          Today we would actually -- since it's been about a

13  month since we thought discovery might get off the ground, we

14  actually would like nine months from -- we're proposing today

15  nine months from -- from around now, so we would actually like

16  to move those dates back a month or so.  But obviously it's

17  the -- it's the court's discretion as to how the court wants

18  to set a schedule.

19          THE COURT:  Okay.

20          MR. RUNKLE:  But that's -- that's the lay of the

21  land.

22          THE COURT:  All right.  Thank you, Mr. Runkle.

23          Mr. Rhodes, explain to me what your concern is about

24  the discovery -- the period of time for discovery.

25          MR. RHODES:  My concern about the period of time for

1    discovery is that discovery is being done as a legitimate

2    interest for the purposes of the trial.  I've been led to

3    understand that the average federal civil trial period is

4    about 60 to 90 days, and here I would argue it should be the

5    shorter end of that spectrum because that average includes

6    private parties, and this plaintiff is not a private party,

7    it's the federal government which did not need to wait for a

8    complaint to be filed, it began using subpoena power to do its

9    discovery.  And, in fact, it's been doing discovery using

10   subpoenas since five years ago in 2018 according to the

11   plaintiff's own complaint Exhibit A.

12           According to that exhibit, it's been five years

13   since they subpoenaed the records, the Internet calling

14   platform from which the calls are supposed to have been made

15   in order to obtain a list of all numbers dialed, the account

16   holder's name, and other record information.

17           The plaintiff has already stated on page 3 of the

18   discovery plan that the case doesn't involve complex

19   discovery, so what discovery is left that's actually necessary

20   and relevant to the specific claim underlying their complaint?

21   I mean, obviously they're going to depose the defendant.

22   Fine.  That doesn't take anywhere close to nine months.

23           THE COURT:  Okay.  Were you finished, Mr. Rhodes?

24           MR. RHODES:  I am.

25           THE COURT:  Okay.  Well, I don't know where you got

1    the information on the 60 to 90 days, that probably wasn't

2    information that you gathered as it relates to the discovery

3    orders that I issue, but I understand the point that you're

4    making.

5          Typically what I like to do in terms of the

6    scheduling order, the most important date for me is when we

7    set the case for trial, and it's my practice to set cases for

8    trial somewhere between 10 and 14 months from the date of this

9    conference -- the preliminary pretrial conference -- which

10   is -- I'm going to propose a trial date here shortly to all of

11   you to see if it works which falls within that timeframe.  And

12   then I simply back the dates up in terms of things that I

13   expect to be done to prepare the case for trial.

14         As far as when you all complete discovery, as long

15   as it's a time within the schedule that -- that we set in

16   terms of the trial and the final pretrial conference, really

17   doesn't matter to me that much, particularly since, as I'm

18   going to indicate shortly, I provide the parties with

19   considerable flexibility to modify some of these dates without

20   having to come to me to seek permission.

21         So what I intend to do, then, although -- I mean, I

22   understand, Mr. Rhodes, your point, you -- you do not believe

23   this case requires extensive discovery.  Well, let me ask

24   this.  Mr. Runkle, Mr. Wadden, what -- what -- what sort of

25   discovery do you anticipate needs to be accomplished here in

1   this case to get ready to be tried?

2          MR. RUNKLE:  Yes, Your Honor.  There are -- There

3   are a whole host of problems with discovery, essentially.

4   There are -- We have subpoenaed now some of the corporate

5   entities involved just in -- in an attempt to make sure that

6   we get all the records from them directly even though the FCC

7   already got a lot of those records, as Mr. Rhodes pointed out.

8          The second problem would be discovery of Mr. Rhodes.

9   As -- As he points out, yeah, he -- he sort of holds the key

10  to how long that may take.

11         The third prong is the one that concerned us a

12  little bit more, which is discovery of third-party witnesses

13  who receive these calls around the country.  And so, you know,

14  we've identified some of them, but there are questions about

15  who -- who may be able to travel to trial.  Obviously the

16  court's scheduling order will help us with that, but -- and

17  whether we need to move the case testimony at trial

18  telephonically, whether we want to depose these people, how

19  that goes.  So that -- that is the issue in addition to if

20  there's any motions practice around some of the other

21  subpoenas or the other discovery that goes out that we think

22  they're -- they're -- that while it's not a completely complex

23  case and we're not advocating that it is complex, I -- I think

24  some of that stuff will take longer than the timeframe that

25  Mr. Rhodes was -- was discussing.  That's -- That's our point.

1          THE COURT:  Okay.  Well, let me ask -- let me ask

2     another question, and then we'll get -- get some dates in

3     place here.

4          Mr. Rhodes, you have requested a -- a jury -- a jury

5     trial.  There was not a jury demand contained within the

6     original complaint -- at least I didn't see one -- and my

7     question is whether or not this case is appropriate for a jury

8     trial, and if so, what issues would the jury be called upon

9     to -- to resolve in this case, what factual issues?

10         Now, let me indicate that I did do a little bit of

11    research on this subject, and I would concede that my research

12    on the subject is limited, but it was directed to the

13    threshold issue of whether a jury is available in a case of

14    this kind.

15         And the cases that I read, there were two cases that

16    I read, Tull, T-u-l-l, vs. United States.  That's, admittedly,

17    an older U.S. Supreme Court case from 1987, found at 481 U.S.

18    412.  I read a United States District Court case from the

19    district of New Jersey from 1981, United States Nuclear

20    Regulatory Commission vs. Radiation Technology, Inc.  That

21    case is found at 519 Fed. Supp. 1266.  Neither of those cases

22    involved the FCC, but they did involve issues associated with

23    the government seeking civil penalties and injunctive relief

24    under various statutory schemes, and those cases led me to the

25    conclusion that a jury trial would be available as to certain

1   aspects of this case, but not necessarily every issue in the

2   case.

3          So let me -- let me just start, Mr. Rhodes, with

4   you.  You asked for a jury trial, I assume you are of the

5   opinion you are entitled to one.  Did you do any research on

6   this subject or is there anything you can share with us as it

7   relates to your request?

8          MR. RHODES:  Simply that I'm affirming that, yes, I

9   believe that the defendant is entitled to a jury trial, and I

10  would understand or I would like to understand that a jury is

11  not going to be able to decide matters of law, but that it

12  certainly can decide matters of fact.

13         I'd -- I'd also like to go back to talking about

14  discovery and the discovery period, if I may, and I'd like to

15  either do that now or if you'd like me to address that later,

16  I will.

17         THE COURT:  No, you can go ahead 'cause we're

18  talking here about the schedule.

19         MR. RHODES:  Okay.  So relative to the three prongs

20  of discovery that's expected by the plaintiff that attorney

21  Runkle outlined, as far as the defendant being the key and to

22  depose him, as I said, the defendant expects that, and as to,

23  you know, it's up to the defendant how long that takes, I'm

24  not sure what's implied there, but the defendant has no

25  intention of evading a subpoena for -- or just evading

1    deposition.  I don't see how that would even be practically

2    possible since ultimately the plaintiff who just now -- or the

3    court would publish in a newspaper or something the

4    requirement for the -- for the defendant to sit for it, and

5    the defendant has no intention of letting this go to default

6    judgment.  So the defendant's not going to avoid the

7    deposition, so there shouldn't be any reason why that would

8    take a long time.

9            As far as third-party witnesses, I would point out

10   to the court that in terms of the recipients of these calls,

11   the value of the testimony of multiple witnesses is relatively

12   small in that it is cumulative.  According to the plaintiff's

13   complaint, these 5,000 prerecorded messages that were made by

14   phone, you know, they consisted of five different recorded

15   messages, but that essentially the part -- the complaints

16   claim that all these people received the same message.

17           So what these witnesses are testifying to that's

18   relevant is "Yes, I got a call," "Yes, that was the message I

19   heard," and "Yes, that's the number it came from," for

20   example.  So how many of those witnesses are really necessary

21   to make that point?  It's certainly not a hundred of them.

22   So, yeah, this conjures up a whole bunch of potential

23   witnesses to go through that need -- to -- to have gain -- to

24   get their attendance and, you know, excuses, scheduling needs

25   to be made for their -- for their travel.  You know, I -- I'd

1    say that the weight of that seems -- seems pretty light.

2           In terms of the window of time for discovery, you

3    know, there's two concerns, one of which I already alluded to

4    which is that the discovery in this case is being done for the

5    legitimate purposes of the -- the plaintiff seeking to prove

6    this case rather than getting discovery for the defendant

7    for -- for ulterior motives for the purposes of compiling

8    information on what some individuals in the Department of

9    Justice or the FCC consider a political enemy, and I don't

10   think that that's entirely out of the realm of possibility.

11          I alluded earlier to the involvement of the ADL as

12   part of the litigation to this case --

13          THE COURT REPORTER:  I'm sorry, Judge --

14   A.   -- the background --

15          THE COURT REPORTER:  I need --

16   A.   -- facts --

17      [Court reporter clarification.]

18          THE COURT:  Mr. Rhodes, you're going to have to

19   speak a little slower because we're making --

20          MR. RHODES:  Okay.

21          THE COURT:  -- we're making a record of all of this.

22          MR. RHODES:  All right.  I didn't have that in mind,

23   so, okay, that's fine.

24          In any case, the final issue -- concern right now

25   that I can think of regarding the window for discovery is that

1   the defense intends or expects to call an expert witness,

2   which I have a question of the court later.  But in any case,

3   this particular expert witness who's in his 80s.  So I'm

4   trying to depend on him being alive and/or helping, be able to

5   attend and to be able to travel to Montana, and, you know, any

6   cognitive issues because of advanced age is a concern.  So

7   that's the reason the defense seeks to have the trial sooner

8   than later and to shorten that period.

9         THE COURT:  Okay.  All right.  Okay.  I understand

10   all of that, Mr. Rhodes.  I understand your point as it

11   relates to all of this, and I -- I do not anticipate -- and I

12   shouldn't speak for the plaintiff, and I certainly don't

13   intend to do so -- but I do not anticipate that they intend to

14   try to depose everybody that allegedly received a call.  I

15   think they're seeking to probably conduct representative

16   depositions of groups that have been identified in the

17   complaint.

18         But having said that, the question is what's a

19   reasonable length of time to complete discovery in a case of

20   this kind.  Quite frankly I don't view the original request of

21   a discovery deadline of December 15th as being unreasonable.

22   It fits within the time period within which I'd like to get

23   this case tried, and so I'm going to adopt as the initial

24   deadlines in the case the deadlines that have been proposed by

25   the government, and that would be May 4 as the deadline for

1  amending pleadings.

2          Now, there will be an order issued following our

3  conference today that will contain all of these dates and

4  everything that I'm going to discuss with you.  But in any

5  event, that May 4, 2023 deadline for amending pleadings, that

6  is a deadline to amend without the need to seek leave of court

7  under Federal Rule of Civil Procedure 15.  After this

8  deadline, if a party seeks to amend, then that party will need

9  to file a formal Rule 15(a)(2) motion.

10         In terms of expert disclosures, there was proposed a

11  disclosure of plaintiff's damage experts and simultaneous

12  disclosure of liability experts of October 15, 2023, and then

13  a disclosure of defendant's damage experts of November 14,

14  2023.  Those dates are perfectly acceptable to me, so we'll go

15  ahead and include those dates.  And then the originally

16  proposed discovery deadline, that being proposed by the

17  plaintiff, the United States, of December 15, 2023, that's

18  also fine with me.  So we'll go with those starting dates.

19         Now, let's fast-forward to a trial setting.  I have

20  available a No. 1 trial setting on April 22 of 2024, almost

21  exactly a year from now.

22         Mr. Rhodes, does that date work for you?

23         MR. RHODES:  I see no reason why it doesn't.

24         THE COURT:  And Mr. Runkle, Mr. Wadden, does that

25  date work for the United States?

1          MR. RUNKLE:  Yes, that -- that is acceptable, Your

2     Honor.

3          THE COURT:  All right.  So let me ask attorneys

4     Runkle and Wadden, the question of whether there's a jury

5     available in this case or not, what's the government's

6     position on that?

7          MR. RUNKLE:  Yes, Your Honor.  We'd have done some

8     of the same research as the court, and we have some experience

9     in this realm doing civil penalty cases for the federal trade

10    commission.  We believe Tull is the correct precedence, and so

11    our position is that there is a jury trial right along the

12    question of liability but not -- but that the court will set

13    the amount of damages.

14         THE COURT:  Okay.

15         MR. RUNKLE:  There would be -- Yeah, that's --

16    that's generally our position, so -- and we can brief that, if

17    necessary, but that -- that is our position, Your Honor.

18         THE COURT:  All right.  And your -- your view of

19    this -- When you speak, be sure to let us know who it is, and

20    I assume that was Mr. Runkle?

21         MR. RUNKLE:  I apologize, Your Honor, yes, that was

22    Mr. Runkle.

23         THE COURT:  Okay.  Thank you.

24         Okay.  So we're all -- it sounds like we're on the

25    same page that a jury is -- will -- will decide liability

issues in the case.

And so the trial setting, then, on April 22nd, 2024, that would be a jury trial setting.  We will have a seven-person jury.  As you all know, I'm sure, I'm required by law to have at least six jurors for a civil case, in this case I will seat seven.  The seventh will not be denominated as an alternate, so that individual, he or she, will deliberate at the end of the case.

Now, how long -- and let me start with the government -- how long do you think it would take to try this case?

MR. RUNKLE:  Your Honor, we believe we can try the case in about a week.  We think it would take a week on our part.

THE COURT:  And is that -- is that to present the government's case in chief or are you anticipating the defense as well in that time period?

MR. RUNKLE:  We -- Your Honor, this is Mr. Runkle.  We don't know what Mr. Rhodes is planning to put on, and so we can't prognosticate that, with respect, but I -- I anticipate we could get our case in chief done within three to five days, let's -- let's put it that way.

THE COURT:  Okay.  And Mr. Rhodes, you probably don't know yet exactly what your case looks like from a defense standpoint, but do you have any -- any idea at all how

1   long it would take you to present your case?

2          MR. RHODES:  This is the defendant.  I'm not an

3   attorney, I've actually got no court trial experience or legal

4   experience so I have no -- no way to professionally judge.  I

5   imagine a few days total, but, you know, I have -- I have no

6   reason to contradict the -- the plaintiff's claim that it will

7   take a week to put on the case.

8          THE COURT:  Okay.  Here's what I'm going to do.

9   It's simply for my own planning purposes.  I'm going

10  to -- This order will indicate that the court estimates that

11  it will take five to seven days to try this case, and that

12  includes from beginning to end.

13         Now, having said that, once we start the trial, we

14  will continue with it until we are done, whether it takes four

15  days, five days, seven days, eight days, whatever.  In other

16  words, I'm not going to put any of you on a clock, and I'm not

17  going to impose any drop-dead date by which this case needs to

18  be completed.  I will say this, however.  We try a lot of

19  cases in my court, and cases -- everybody, I think, is always

20  surprised how quickly things go.  And so my impression is that

21  you can usually take lawyers' estimates and take about 75 --

22  50 to 75 percent of that is how long the case will actually

23  take to try.  Now these are all matters that we'll discuss in

24  detail when we get the final pretrial conference.

25         But the other thing I want to tell you about this

1    April 22nd date is that this is a No. 1 trial setting.  The

2    only thing that could potentially interfere with it would be a

3    criminal trial.  And, of course, in federal court we're

4    subject to a speedy trial clock, so on any given Monday I've

5    usually got at least one, sometimes four or five cases, set

6    for criminal trials.  98 percent of those end up in plea

7    agreements, so we never try those cases.

8           If, for some reason, I have a criminal trial that

9    ends up having to proceed on April 22nd, I would ask one of my

10   fellow Article 3 judges to take the criminal trial, and I

11   would reassign the criminal trial to one of my colleagues.  I

12   will not, under any circumstance, be reassigning your case, so

13   you're all stuck with me until the end.

14          So this case will be trialed -- tried on April 22nd.

15   We'll have the final pretrial conference -- and again, all of

16   these dates will be spelled out in the order that I will be

17   issuing this afternoon -- we'll have the final pretrial

18   conference on April 11th, 2024 at 2:30 p.m., and that will be

19   here in Missoula in the courthouse here, and I will expect the

20   parties and counsel to be present in person for the final

21   pretrial conference.

22          Now, on April 4th, a number of things will need to

23   occur.  First you'll need to file the final pretrial order,

24   proposed jury instructions, proposed voir dire questions, and

25   trial briefs.  If you want to have realtime available to you

1    at counsel table, you'll need to give the court reporter

2    notice of intent to use realtime also on April 4th.

3            Now, Mr. Rhodes, do you know what "realtime" is?

4            MR. RHODES:  This is the defendant.  No, I do not.

5            THE COURT:  Okay.  So what realtime is, as you

6    know -- as I'm sure you know, the court reporter will be

7    taking a -- making a record of everything that occurs during

8    trial.  In our courtroom we have lots of screens, we have a

9    lot of electronics everywhere, including at counsel table.  If

10   you elect to have realtime, what that means is you would be

11   able to have available to you at counsel table the same

12   transcript of the proceedings being taken by the court

13   reporter that I'm seeing up here on the bench.

14           So, in other words, while things are happening in

15   the courtroom, the court reporter obviously is transcribing,

16   and that appears -- I have, for instance, an iPad up here on

17   the bench where I'm able to read virtually simultaneously

18   what's being said in the courtroom.  You would have the same

19   ability to have that technology available to you at counsel

20   table if you elected to have realtime.

21           Now, having mentioned this, there's a charge for

22   that, and I don't know what it is, but you would need

23   to -- that's why I would ask you to give notice on April 4th

24   and -- to the court reporter -- to our court reporter here in

25   Missoula your intent to use realtime, and then she would

1  contact you directly in terms of what the cost of that is,

2  whether or not, in fact, you really want it.

3         The name of our court reporter here in Missoula is

4  JoAnn -- that's capital J, small o, and capital A, double n

5  Corson, C-o-r-s-o-n.  So you would need to give notice to her.

6  And the other thing you will need to do on April 4th is if you

7  want to call witnesses live but by videoconference, then you

8  need to give notice to our IT supervisor on April 4th of

9  our -- of your intent to call witnesses live but remotely

10 through video.

11        And the name of that individual is?  Do we give him

12 Bob Mund's name?

13        THE CLERK:  Yes.

14        THE COURT:  Yeah.  Bob Mund, M-u-n-d.  And the best

15 way to handle this is -- is just probably to serve notice in

16 -- in terms of the pleading that you would file on April 4th

17 or you certainly could contact them directly.

18        On the subject of calling witnesses remotely but

19 live, I have absolutely no objection to that.  And, in fact,

20 my experience has been that jurors do not attach any less

21 significance to the testimony that's provided by a witness

22 speaking to them on a large television screen than they do to

23 that witness under oath sitting in the witness stand.  And we

24 have, as I indicated, a lot of technology in this courtroom,

25 so the ability to -- to have examinations and, course,

1    pandemic, Zoom, everything else, we've gotten pretty good at

2    this.  So if you wish to call witnesses live but by

3    videoconference, no objection from me.  You'll just simply

4    need to make sure on April 4th that you let our IT person know

5    that you want to do that and then he will begin the process of

6    working with you to coordinate between the remote location and

7    our court to make sure that our technology is all compatible

8    and everything will come off seamlessly.

9            So those are the things that need to happen on

10   April 4th.  Which means, then, on March 28th, the week of

11   March 28th, you'll need to get your heads together to come up

12   with the final pretrial order and then we will have two

13   separate motions deadlines.

14           So discovery ends on December 15th, then there will

15   be a fully briefed motions deadline -- that's all motions

16   except motions in limine -- of January 16th, 2024, and then

17   the motions in limine deadline, also fully briefed, will be

18   March 8, 2024.

19           Now, "fully briefed" is defined in this order, but

20   what it means is is that the opening brief and the response

21   brief need to be filed by that date.  So if you are the moving

22   party, you need to count back and make sure that you provide

23   the other side sufficient time to get the response brief filed

24   by the deadline.  Reply briefs are optional, they can come in

25   provided they're timely under the rules.  Those can be filed

1    after the deadlines.  So that's the scheduling order which

2    will be contained in the order that I issue -- or the

3    scheduling deadlines that'll be contained in the order that

4    I'm going to send out to you.

5           Now, just because there's a motions deadline does

6    not mean that you have to wait until that motions deadline to

7    file substantive motions.  If you've got your substantive

8    motions ready and you want to file them earlier, all the

9    better, gives me more time to read everything and get a ruling

10   out before the final pretrial conference.

11          At the end of paragraph 1 of the order that you're

12   going to get, which will contain these deadlines, you will

13   read the following in bold type.  "The parties may stipulate

14   to the extension of any of the above deadlines that precede

15   the motions deadline without a court order.  However, parties

16   seeking a continuance of the motions deadline or any

17   subsequent deadline must file a motion with the court.  Such

18   motions will not be granted absent compelling reasons, which

19   do not include delay attributable to the party's stipulated

20   extensions."

21          So if you want to extend a deadline to amend

22   pleadings without leave of court, the deadlines to disclose

23   experts or the discovery deadline and you're able to reach an

24   agreement between yourselves that you memorialize in some

25   fashion, letter, email, I don't care, then you do not need to

1  come to me and ask that the scheduling order be modified

2  consistent with your stipulated extensions of those deadlines.

3  In other words, whatever you agree to up to the motions

4  deadline is fine with me.  When we get to the motions

5  deadlines, I start to get -- I start to get a little anxious

6  because I need to have enough time to get rulings out on your

7  various motions, ideally before the final pretrial conference,

8  so that you all know what this case will look like in terms of

9  trial.

10         Any questions about anything we've talked about so

11  far?  Mr. Rhodes?

12         MR. RHODES:  Yes, I have a couple of questions.

13  This is the defendant.

14         Regarding the conference that is being scheduled for

15  April 11th, the in-person conference, is that an issues

16  conference?

17         THE COURT:  It's the final pretrial conference, and

18  at that time what I will do -- I mean, that's the conference

19  where we -- No. 1, I will -- you will have -- you will have

20  filed with me the final pretrial order, and so at that time I

21  will make sure that there isn't any further amendments to the

22  final pretrial order and I will sign it, and then we're gonna

23  talk about the rules of engagement as it relates to the trial.

24         Now, it may be that -- I mean, in connection with

25  the final pretrial order I'll have lists of witnesses, I'll

1   have lists of exhibits, it may be that we could pre-admit some

2   exhibits, although generally I don't do that because in a jury

3   case the only exhibits I allow to go to the jury are those

4   that are actually admitted during trial and the subject of

5   trial testimony, so I'm a little hesitant to sort of blanket

6   admit a whole bunch of exhibits that may not see the light of

7   day during trial.

8          But in any event, we'll talk -- we'll talk about,

9   you know, the witnesses, we'll have a better idea how long the

10  trial will take, we'll probably have some discussion about

11  exhibits, there may be some legal issues, evidentiary issues,

12  matters that we need to discuss, we'll talk about jury

13  selection.  In other words, we'll -- we'll do all the work

14  that we need to do in order to get the case prepared to try it

15  on the 22nd of April.

16         Does that answer your question, Mr. Rhodes?

17         MR. RHODES:  This is the defendant.  I believe it

18  answers my question.  Let me just go ahead and be more

19  specific with it.

20         So it sounds like you're saying that, yes, that is

21  the time at -- which it's appropriate to bring up issues of

22  limiting testimony to that which is relative to the complaint.

23  Is that correct?

24         THE COURT:  Well, not exactly.  I indicated that

25  there would be a motions in limine deadline on March 8, 2024.

1  My experience has been that the best time to raise issues

2  where you seek to limit evidence in trial would be in the form

3  of a motions in limine, and --

4       MR. RHODES:  All right.

5       THE COURT:  -- and that would be the best time for

6  you, probably, to raise that issue.  Now, I will tell you that

7  with some frequency sometimes I reserve ruling on motions in

8  limine until trial, until I've heard the evidence, until I've

9  got some sense as to where we are, but the time to raise

10 issues that you have regarding evidence, the first opportunity

11 that you will have to do so, Mr. Rhodes, is on March 8th, and

12 I would suggest that's probably the best time to key those

13 issues up so that I'm aware of them, the government can

14 respond, and they may file motions in limine of their own.

15 And then if necessary I can have a hearing, but -- to the

16 extent that I can issue rulings on evidentiary issues before

17 trial so that you all know what you can and can't do as it

18 relates to certain evidence, then I endeavor to do so.  But

19 the best way to tee that up would be to file a motion in

20 limine.  Although you are certainly free to object to any

21 evidence --

22       OPERATOR:  Good-bye.

23       THE COURT:  Did I lose everybody?

24    (Recess taken from 2:09 p.m. to 2:11 p.m.)

25       THE COURT:  This is Judge Christensen again.  Do I

1   still have everybody on the phone?

2          MR. WADDEN:  Michael Wadden's here.

3          THE COURT:  And Mr. Runkle?  Is Mr. Runkle on the

4   phone?  How about Mr. Runkle?  How about Mr. Rhodes?

5          MR. RHODES:  The defendant is here.

6          THE COURT:  Oh, okay, good.  So we've got two out of

7   three.  I don't know what happened there, but let's -- do we

8   need to wait for Mr. Runkle, Mr. Wadden?

9          MR. WADDEN:  No, this is Mr. Wadden.  That's no

10  problem.  He may be joining shortly, but I -- I can handle it

11  while he's off.

12         THE COURT:  Okay.  I was answering Mr. Rhodes'

13  question about evidentiary motions to limit evidence.  I think

14  I answered that, and I think Mr. Rhodes, you had another

15  question.

16         MR. RHODES:  I did.  I believe I asked two

17  questions.  And this -- this is the defendant, and I believe

18  that you did answer my -- my first question.

19         My second question has to do with the court's

20  offer -- potential offer of using what you describe as

21  realtime.  I understand the deadline for contacting the court

22  reporter about that, but I have a question about whether

23  that -- I -- I have a question about whether that would

24  satisfy the defendant's need, and I'll explain what that is.

25         I anticipate or I -- I should say as a pro se

1    defendant I'm at a disadvantage -- a substantial disadvantage

2    when it comes to my testifying on the stand.  Particularly

3    it's anticipated that the plaintiff will call the defendant as

4    a witness.  And as the witness is answering the plaintiff's

5    questions, he has no attorney that is able to take notes on

6    what has been asked so that he can then be addressed in

7    cross-examination, because the defendant is cross-examining

8    himself.  I'm assuming the defendant does not have the ability

9    to take notes while he's on the stand or would not be allowed

10   to take notes on the stand.  So my question becomes does the

11   realtime transcription then provide the defendant with a

12   record immediately after conclusion of the plaintiff's

13   questioning that he would be able to then refer to in his

14   cross-examination of himself?

15            THE COURT:  Well, Mr. Rhodes, let me -- let me

16   attempt to answer that question.  What you get with realtime,

17   as I understand it, is you get -- you are able to read while

18   you're sitting at counsel table the words that are being

19   communicated in the courtroom virtually simultaneously and

20   they scroll across a screen.  What you seem to be referring to

21   is whether or not you would get a hard transcript, a paper

22   transcript.  And I believe, and here I may -- I -- I -- I

23   would suggest that the best person to answer this question

24   would be the court reporter -- but I believe you could have

25   available to you -- at the end of the day you could get a

1    transcript of the day's proceedings if you have realtime.

2              Now, what you're talking about -- what you're

3    talking about is what happens if you're called as an adverse

4    witness in the government's case in chief and you're subjected

5    to direct examination and then you wish to conduct

6    cross-examination of yourself, as you describe it.  Would you

7    have available to you then through realtime something that

8    would be a hard copy transcript, et cetera, et cetera?  I

9    don't know, but I don't think so.  I think what you would have

10   to do is conduct your examination of yourself following direct

11   exam based upon either -- you know, based upon your

12   recollection.  Or if you wanted to take some notes while

13   you're being examined, provided it wasn't -- it didn't really

14   interfere with the flow of what we were doing but just jot

15   things down to -- to -- for memory purposes, I probably would

16   allow that while you're on the witness stand.

17             So what I would suggest is this.  Think about what

18   your needs are, and -- and then if you wish to contact the

19   court reporter and discuss these things with her, you could do

20   so, but the time for us to resolve these kinds of issues and

21   how we're going to mechanically proceed with testimony would

22   be at the final pretrial conference, which is set for

23   April 11th.

24             Anything further -- Go ahead.

25             MR. RHODES:  This is the defendant.  I believe you

1    answered my question.  It wasn't necessarily I would have a

2    hard copy available in realtime, but it was sort of really

3    intuitive the broader question about how to mitigate the

4    disadvantage of not having an attorney to take notes while I'm

5    under direct examination so that I can address each of those

6    issues, if desired, under my own cross-examination, which I'm

7    assuming would be so lengthy, the questioning by the

8    plaintiffs, that I don't suspect that my memory would be

9    sufficient.  And so your suggestion of one possibility of

10   being allowed to take notes on the stand, provided they don't

11   interrupt the flow of testimony, I believe, seems acceptable,

12   but I'm also open to other suggestions by the court if it has

13   experience with other potential solutions.

14           So I have that third and final question, if I may?

15           THE COURT:  You may.

16           MR. RHODES:  In a previous filing -- I forget -- I

17   believe it was my answer to the complaint -- the defendant

18   requested live streaming of the proceedings which defense

19   understands does not involve testimony, but the other

20   potential part of the proceedings such as opening and closing.

21   Do I -- Does the court require the defendant to make that

22   request via some other method?

23           THE COURT:  Well, generally -- I mean, this is an

24   open courtroom, Mr. Rhodes, it's a public proceeding.  Anybody

25   that wants to come into the courtroom and observe the

1  proceedings is more than welcome.  It's not our practice to

2  livestream trials, and, in fact, I haven't done so in 12 years

3  and I'm unaware of any case that's been livestreamed out of

4  this courtroom, so that's not something that we typically do.

5          MR. RHODES:  My understanding is that

6  Missoula -- the district court there was one of the courts for

7  that pilot program, so I believe that you haven't done it

8  before, but I was led to believe that it was available, at

9  least up until recently.  And while I understand that it is an

10 open courtroom, that obviously is restricted to people that

11 are either in the Missoula area who are willing to incur the

12 expense of traveling there.  And based on the public interest

13 involved in the trial, especially given that we're talking

14 about the FCC, public agency that -- that is the plaintiff,

15 I -- I thought that there would be value or -- or that I'd be

16 able to -- to request it.

17          So is that still -- is the Missoula District Court

18 still part of that pilot program --

19          THE COURT:  You know --

20          MR. RHODES:  -- of livestreaming a trial if

21 available?

22          THE COURT:  -- that's a good question, Mr. Rhodes, I

23 don't know, and I'm not gonna be able to answer that question

24 this afternoon, but let's -- let's do this.  Let's keep the

25 issue of livestreaming on the table, and -- and we can

1   decide -- and we can further discuss it when we get closer to

2   trial and see if we can't reach some sort of accommodation.

3   All right.

4          MR. RHODES:  This is the defendant.  That sounds

5   acceptable.

6          THE COURT:  All right.  Thank you.

7          Let's talk -- Mr. Wadden, Mr. Runkle, did you have

8   any questions about anything we've discussed so far?

9          MR. RUNKLE:  No questions from the government, Your

10  Honor.  Thank you.  That was Mr. Runkle.

11         THE COURT:  Okay.  Let's -- Let's talk about a

12  couple of other things here that are the subject of the order

13  that you're going to receive from me.  Has there been any

14  exchange of discovery in terms of documents at this point in

15  time?

16         MR. RUNKLE:  This is Mr. Runkle, Your Honor.  There

17  has not been -- There's been preliminary disclosures and we

18  are preparing a document production that is not quite ready

19  yet, so there will be a document production from the

20  government and we will soon take some document discovery from

21  Mr. Rhodes.  But the -- the specific answer to your question

22  is no, there hasn't been documents in discovery exchanged yet.

23         THE COURT:  Okay.  Let me -- Let me tell you why I

24  asked that question.  You're going to see that there is

25  language in the scheduling order that I'm going to issue this

1    afternoon on numbering of documents produced in discovery.  It

2    basically covers two areas.  The first -- Or two issues.  The

3    first issue is whatever numbering system you arrive at in

4    terms of how you paginate or number documents produced in

5    pretrial disclosure and in discovery, utilize the same

6    numbering system throughout the case so that we don't have

7    different numberings for the same exhibit -- in the document

8    in depositions or in whatever, and so use the same numbering

9    system throughout the case including when you number these

10   documents as exhibits for your -- for the trial exhibits.

11        The reason for this is obvious.  I don't want to

12   have to sort out different numberings for exhibits.  Let's

13   assume, for example, that you perpetuate somebody's testimony

14   through a deposition so that they don't need to be called live

15   at trial, and you use certain documents in connection with

16   that process.  And if those documents are numbered

17   differently, then the same document is numbered as a trial

18   exhibit, then we've got a translation and confusion issue.  So

19   that's -- you'll see language on that.

20        The second thing that we ask you to do, we don't

21   mandate it, but we use our electronics extensively in this

22   courtroom, particularly for exhibits, and so we -- and -- and

23   at the end of the trial we utilize what's called the Jury

24   Evidence Recording System, acronym is JERS, JERS, and this is

25   a system that we utilize whereby my courtroom deputy, when

1   documents are -- when exhibits are admitted, they find their

2   way into JERS, and then when the jury goes back to deliberate,

3   we do a brief tutorial with them, our IT supervisor goes in,

4   spends about two minutes with them and gets them up to speed,

5   and then they are able to electronically retrieve all of the

6   documents that have been admitted as exhibits at trial and

7   look at them simultaneously together on a large flat screen in

8   the jury room.

9          So we use JERS, we love JERS, and so we ask when you

10  paginate or number the documents that you are producing in

11  discovery, that you endeavor to utilize a numbering system

12  that is compatible with JERS.  Now, most of the numbering

13  systems that you use are compatible with JERS, but you will

14  see a reference in the order to the court's website

15  specifically where there's a discussion regarding JERS and the

16  specifics.

17         An alternative is if you want to shortcut that whole

18  process is whoever's gonna -- whoever's concerned about this,

19  Mr. Rhodes or whoever in the government's office that would be

20  concerned about this is you can contact Amanda Goodwin, again,

21  my courtroom deputy, judicial assistant, and ask her which

22  number -- ask her about numbering systems that are compatible

23  with JERS.  Again, it's not a mandate, it's a -- it's a

24  request.

25         The other issue -- One of the other issues I wanted

1   to talk to you about is protective orders.  I have a -- I have

2   pending some -- a motion that's been made by the government to

3   adopt a particular protective order in this case.  I

4   understand that there were objections to some language in that

5   protective order which it's been described in the -- in the

6   filing that's been made by the government.  And then

7   yesterday, Mr. Rhodes, you filed your opposition to the motion

8   to enter a protective order, and unfortunately I haven't had

9   an opportunity to study that or to read it, even.  So what I'm

10  suggesting to both of you is I understand that there's a

11  request for a protective order, I understand there's some

12  issues about the -- the substance of that order, and I'll

13  read -- I'll read the briefs and I'll get an order out on

14  that, so we can address -- I'll address that here after we get

15  done with this conference today, in the next couple weeks, so

16  that you can start with your discovery.

17          The other matters that I wanted to discuss with you

18  that are identified in -- in the order that you're going to

19  receive from me today setting this case for trial, the -- the

20  primary substantive area that the order discusses that I

21  haven't yet addressed with you this afternoon is the subject

22  of experts, and we follow -- I follow Rule 26 as it relates to

23  experts.  So anything that's said in this scheduling order

24  that you'll receive is simply a reframing of what's expected

25  and required under Rule 26.  As long as you comply with

1    Rule 26(a)(2)(B) for retained experts, (a)(2)(C) for

2    nonretained experts, you're gonna be in good standing with me.

3    My policy and practice is if an opinion is appropriately

4    disclosed in an expert's report, then that opinion is

5    admissible at time of trial.  If an opinion is not disclosed

6    in the expert's report and is objected to by the opposing

7    party, then it is unlikely that that opinion will see the

8    light of day at trial.

9         So here's how this plays out.  Let's assume for

10   purposes of discussion that the United States calls an expert,

11   they elicit a particular opinion from that expert.

12   Mr. Rhodes, you object, and the objection is, "Your Honor,

13   this is an undisclosed opinion."  At that time I will ask the

14   counsel for the government to tell me where in the expert's

15   report the opinion is found or reasonably contained within

16   opinions in the report, and if the opinion is in the report,

17   it will be admissible.  If it's not in the report, it will not

18   be allowed and will not be admitted.  Pretty straightforward.

19   I got a little wiggle room, and that is whether or not it's an

20   opinion that's reasonably contained within opinions expressed

21   in the report, but usually this is fairly straightforward, but

22   I just wanted to alert you to the fact that I do not view

23   experts expanding their opinions in the course of their

24   depositions beyond opinions contained in the report -- I do

25   not view those expanded oral opinions in depositions as being

1    appropriately disclosed under Rule 26.

2            Any questions about that?

3            MR. RUNKLE:  None from the government, Your Honor,

4    although I -- I assume if there's a Rule 702 objection, that

5    the court would be amenable to hearing that as well.

6            THE COURT:  Oh, of course.  I mean, any other -- I

7    mean, all objections are reserved as it relates to -- to

8    experts, but I was speaking specifically about the objection

9    that may come up that it's undisclosed opinion, and I just

10   wanted to make sure that you understood what my view of that

11   is on that subject.

12           Now, one of the other paragraphs in this order that

13   you're going to receive from me, which is paragraph 7, and I'm

14   just going read it to you and then we can talk about it.

15           This paragraph is entitled [As Read]: "Foundation &

16   authenticity of discovery items.  Pursuant to Federal Rule of

17   Civil Procedure 16(c)(2)(C), the parties stipulate to the

18   foundation and authenticity of all discovery items produced in

19   pretrial disclosure and during the course of discovery.

20   However, if counsel objects to either the foundation or the

21   authenticity of a particular discovery item, then counsel must

22   make a specific objection to opposing counsel in writing prior

23   to the deadline for the close of discovery.  If a discovery

24   item is produced and the producing party objects either to its

25   foundation or authenticity, the producing party shall so state

1    in writing at the time of production.  This stipulation

2    extends only to the document itself, not to foundation for

3    witnesses discussing the document at trial.  All other

4    objections are reserved for trial."

5           Now, that's a lot to absorb, particularly,

6    Mr. Rhodes, for a nonlawyer.  So let me see if -- Maybe you

7    understood this completely, but let me sort of break it out.

8           So what this -- what this paragraph says is that you

9    all are agreeing that anything you produce in discovery, that

10   it is -- that you're stipulating to the foundation and

11   authenticity of the document.  In other words,

12   you're -- you're waiving any objections you have that what is

13   being produced is, in fact, not an authentic copy of the

14   particular document or that it doesn't purport or state what

15   it represents to state, in effect.  And it provides a

16   procedure if, in fact, you do object to the foundation or

17   authenticity of the document what you need to do, and then it

18   goes on to state that this -- this provision applies only to

19   the document itself, not to foundation for witnesses

20   discussing the document at trial.

21          So even though a document is deemed authentic and

22   for which no foundation needs to be laid for the document

23   itself, my expectation is at trial that before a document is

24   admitted, that there needs to be a witness that has the

25   requisite knowledge about the document in order to lay

1   foundation for it to be admitted as a trial exhibit.  And then

2   any other objections, of course, are reserved for purposes of

3   trial.

4          The most typical example that I can give you is

5   frequently in cases -- probably not in this one -- but

6   frequently in cases there are medical records that are

7   admitted as exhibits at trial.  This paragraph provides that

8   the medical record itself is deemed authentic.  In other

9   words, there's no challenge to the content of the record as to

10  whether or not it's truthful and an accurate representation.

11  In other words, it's not a forged document, it hasn't -- it

12  isn't a document that's been doctored or manipulated digitally

13  or something of that sort.  It is, in fact, the authentic

14  document.  And that avoids the need for the parties to have to

15  go to every doctor's office where these records came from and

16  depose somebody in the office who would testify that, in fact,

17  these are true and accurate copies of the medical records, so

18  it's a timesaver for everybody.  It also is a -- is an

19  objection that's being waived pursuant to this paragraph, that

20  being the objection of authenticity as it relates to the

21  document.

22          I don't know if this is going to be an issue in this

23  case, I can't predict that, but if -- bottom line is this,

24  Mr. Rhodes.  In terms of documents that are produced to you by

25  the government in discovery, if in the course of going through

1   those you believe that a particular document has been

2   manipulated, it's been doctored, it is not, in fact, a true

3   and accurate copy of the document itself, then you need to

4   object, in writing, specifically as to the document -- you

5   need to object in writing specifically as to the document to

6   the government within the time to complete discovery so that

7   if necessary a deposition could be taken of some recordkeeper

8   somewhere that could establish that, in fact, it is an

9   authentic -- the document is authentic.

10          Mr. Rhodes, did that make sense to you?

11          MR. RHODES:  This is the defendant.  Yes, that seems

12   well explained, and I believe that I understand.

13          THE COURT:  All right.  Okay.  And I assume,

14   Mr. Runkle and Mr. Wadden, you understood what I was talking

15   about there as I referenced paragraph 7.

16          MR. RUNKLE:  Yes.  This is Mr. Runkle.  We -- We

17   understand.  Thank you, Your Honor.

18          THE COURT:  All right.  Now, I -- as I indicated to

19   you, you have a No. 1 trial setting.  My view of this case

20   is -- and my role in this case is obviously to rule on any

21   motions that you file, sort out any discovery disputes that

22   you might have, and otherwise prepare this case so that it can

23   be tried efficiently and fairly on April 22nd of 2024.

24   There's nothing about the scheduling order in this case,

25   there's nothing about the trial setting that requires that you

1  participate and engage in any sort of mediation or settlement

2  process.  I don't know if there's any possibility that the

3  parties could reach common ground and resolve this case.  I

4  don't need a representation from anybody this afternoon as to

5  the prospects of that possibility.

6          I just want to make two points.  The first one is,

7  your No. 1 trial setting is not contingent upon you engaging

8  in mediation or settlement.  Having said that, if you wish to

9  engage in a mediation or settlement and you want the

10  assistance of this court, all you need to do is file a joint

11  motion for a settlement conference.  If I get such a motion, I

12  would refer this case to one of our United States magistrate

13  judges to conduct a mediation.  Typically I would refer the

14  case to our magistrate judge here in Missoula, but because

15  Judge DeSoto already has had some involvement in this case, I

16  would not refer it to her.  So it would go to one of our other

17  two magistrate judges:  Judge Johnston in Great Falls or

18  Judge Cavan in Billings.  If you do not otherwise request a

19  particular magistrate judge, I would probably refer to

20  Judge Johnston since he conducts more mediations than

21  Judge Cavan.  They both do an terrific job, but Judge Johnston

22  also, if it's a Missoula case, which this one is, he's more

23  than willing usually to travel to Missoula for the mediation.

24          Now, that's all I'm gonna say about that.  And I

25  just wanted you to know that we have resources that are

1    available to assist you in that process, they're free of

2    charge to you, you don't have to pay the magistrates anything

3    to conduct settlement conferences, they do a terrific job, and

4    all you need to do if you want to engage in that process is

5    file a motion with the court and I will assign the case to the

6    magistrate judge for mediation and then I'm -- I don't -- I'm

7    not involved in that process.  He sets the schedule, he sets

8    the rules of engagement as it relates to mediation, and I

9    simply find out whether the case settled or it didn't.  And

10   again, I don't care if you want to mediate the case or if you

11   want to have a trial, it doesn't make any difference to me.

12          So I think I have covered pretty much everything I

13   want to cover.  Mr. Runkle, Mr. Wadden, do you have any

14   questions of me?

15          MR. RUNKLE:  This is Mr. Runkle.  I don't believe we

16   have any questions at this point, Your Honor.  Thank you for

17   your thoroughness today.

18          THE COURT:  Okay.  And Mr. Rhodes, do you have any

19   questions -- additional questions of me?

20          MR. RHODES:  This is the defendant.  I have no

21   further questions.

22          THE COURT:  All right.  Well, folks, well, you'll be

23   getting an order from me here in the next hour or so outlining

24   all of this information, and -- and more, and I thank all of

25   you, and we'll -- we'll proceed here according to the court's

1    scheduling order.  Thank you very much.  We're in recess.

2              (Court adjourned at 2:41 p.m.)

REPORTER'S CERTIFICATE

1

2          I, Mary R. Sullivan, a Registered Merit Reporter and

3    Certified Realtime Reporter, certify that the foregoing

4    transcript is a true and correct record of the proceedings

5    given at the time and place hereinbefore mentioned; that the

6    proceedings were reported by me in machine shorthand and

7    thereafter reduced to typewriting using computer-assisted

8    transcription; that after being reduced to typewriting, a

9    certified copy of this transcript will be filed electronically

10   with the Court.

11          I further certify that I am not an attorney for, nor

12   employed by, nor related to any of the parties or attorneys to

13   this action, nor financially interested in this action.

14          IN WITNESS WHEREOF, I have set my hand at Missoula,

15   Montana on July 9, 2023.

16

17

18                    /s/ Mary R. Sullivan

19          _____
                    Mary R. Sullivan
20                  United States Contract Court Reporter

21

22

23

24

25

43