**BRIAN M. BOYNTON**
Principal Deputy Assistant Attorney General
**ARUN G. RAO**
Deputy Assistant Attorney General
**AMANDA N. LISKAMM**
Director, Consumer Protection Branch
**LISA K. HSIAO**
Assistant Director
**PATRICK R. RUNKLE**
Senior Litigation Counsel
    450 Fifth Street, NW, Suite 6400S
    Washington, D.C. 20001
    Telephone: (202) 532-4723
    Email: Patrick.R.Runkle@usdoj.gov
**MICHAEL J. WADDEN**
Trial Attorney
    450 Fifth Street, NW, Suite 6400S
    Washington, D.C. 20001
    Telephone: (202) 305-7133
    Email: Michael.J.Wadden@usdoj.gov
**SHANNON L. CLARKE**
Assistant U.S. Attorney
    U.S. Attorney's Office,
    P.O. Box 8329,
    Missoula, MT 59807
    Telephone: (406) 542-8851
    Email: shannon.clarke@usdoj.gov
**Attorneys for Plaintiff United States of America**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>SCOTT RHODES,<br><br>    Defendant. | CV 21-110-M-DLC-KLD<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT** |

Defendant Rhodes' summary judgment opposition is substantively and procedurally infirm. Among other things, Rhodes' response to the overwhelming, uncontroverted evidence against him is a series of threadbare, conclusory, and unbelievable denials not sufficient to generate any issues of fact for trial. As described in the government's opening brief and herein, partial summary judgment should be granted to the government.

## LEGAL STANDARD

Once the plaintiff has made a *prima facie* case for summary judgment, the defendant cannot rely on general denials; he must produce significant probative evidence that demonstrates that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 256–57 (1986).

## ARGUMENT

The government is entitled to summary judgment as to liability and entry of the proposed injunction. In his L.R. 56.1(b) statement, Rhodes does not dispute 203 of the 249 facts proffered by the government, and he raises only trivial disputes as to many of the remaining 46 facts. (*See* Doc. 80; *see also* Ex. 1, Government's L.R. 56.1 Summary.[1]) He does not effectively dispute that the records, witness accounts,

---

[1] Because Rhodes' statement (Doc. 80) does not comply with L.R. 56.1(b), the government has attached for the Court's convenience a document identifying the facts in the government's Statement of Undisputed Facts that Rhodes did not dispute, as well as the facts he did dispute, and bases provided. *See Sturdevant v. Nat'l W. Life Ins. Co.*, Civ. No. 20-118-M-DLC-KLD, 2021 WL

1

and recordings submitted by the government are accurate and that the calls described by the government occurred. He does not contest the bulk of the evidence establishing that he is responsible for the violations at issue, nor does he introduce any competent contradictory evidence in rebuttal. Accordingly, on the record before the Court, no reasonable jury could find in Rhodes' favor, and his arguments to the contrary are unavailing.

## I. Rhodes' Conclusory Declaration Does Not Create Genuine Issues of Material Fact

Rhodes primarily attempts to avoid summary judgment by filing a new declaration containing a series of general denials. (Doc. 79–1.) But Rhodes' declaration fails to create a legitimate dispute of material fact: his assertions, which are not supported by any substantial evidentiary foundation, are not enough to rebut the overwhelming evidence the government has marshaled. Ninth Circuit law is clear that a conclusory, self-serving declaration "lacking detailed facts and any supporting evidence" is "insufficient to create a genuine issue of material fact." *FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997); *CFPB v. Gordon*, 819 F.3d 1179, 1194 (9th Cir. 2016); *Alexander v. Falk*, 828 F. App'x 350, 353 (9th Cir. 2020).

---

3519708, at *11 (D. Mont. May 12, 2021), *report and recommendation adopted*, Civ. No. 20-118-M-DLC, 2021 WL 3677722 (D. Mont. Aug. 19, 2021) (facts are deemed admitted when not disputed under L.R. 56.1).

Rhodes' parched declaration is exactly the type of declaration "lacking detailed facts and any supporting evidence" described in the cases above. In other words, the new declaration does nothing to meet or answer the government's *prima facie* case, and it provides no evidentiary explanation or support for its bald denials.[2]

As one important example, Rhodes' declaration states in a conclusory fashion that he is not responsible for the spoofing at issue (Doc. 79-1 ¶¶ 12–14, 17). But Rhodes does not point to any record evidence that would enable a reasonable factfinder to credit his blanket denial over the government's evidence. And as noted above, the record evidence establishes facts based on which any reasonable fact finder would find Rhodes responsible, including:

- that the calls in question came from his Power Dialer account, which could only place calls from one computer at a time, and which required the user to select the caller ID displayed to recipients (Ex. 1 ¶¶ 32–38);

- that Rhodes paid for that Power Dialer account (*id.*);

- that Rhodes used the Power Dialer and failed to identify anyone else who used his account (Ex. 2 (Rhodes Depo) at 65:11–65:13, 68:1–68:18);

- that the first thousand calls made from Rhodes' account displayed his registered caller ID (Ex. 1 ¶¶ 25, 38–56);

---

[2] This is even more true of the one-sentence declaration Rhodes previously submitted to FCC, which cryptically asserts only that Rhodes "did not make the automated phone calls and spoof caller identification as alleged in [the] FCC Notice of Apparent Liability[.]" (Doc 1-2 at 30.)

3

- that the prerecorded messages played in many of the Power Dialer calls said the calls were "paid for by theroadtopower.com"—Rhodes' website, which links to a podcast of the same name on which only he ever appeared (*id.* ¶¶ 8–11, 50, 77, 94, 164, 176, 208);
- that the prerecorded message played in other Power Dialer calls accused a local journalist—whom Rhodes blamed for causing his landlord to end Rhodes' lease—of blackmailing a landlord to evict his tenant (*id.* ¶¶ 112–35);
- that posts on the social media account for Rhodes' podcast took credit for many of the Power Dialer calls (*id.* ¶¶ 21–24, 40–45);
- and that Rhodes devoted lengthy podcast segments to discussing many of those calls and highlighting publicity they garnered (*id.* ¶¶ 61, 80–82, 109, 140–45, 157–66).

Given these uncontested facts and his failure to proffer a coherent alternate explanation, Rhodes' declaration and brief seek to manufacture "metaphysical doubt" that some other person placed the calls, while not describing how or why that could have happened given the evidence in the record. Creating "metaphysical doubt" about some of the facts is exactly what the Supreme Court has said is not enough to defeat summary judgment. *Borges v. Cnty. of Mendocino*, 598 F. Supp. 3d 846, 858 (N.D. Cal. 2022) (*quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

4

## II. Rhodes' Other Attempts to Create Genuine Factual Disputes Fail

Rhodes asserts that there are several other material factual disputes not dependent on his new declaration. But these supposed disputes disappear upon inspection.

### A. There Is No Material Factual Dispute About Intent

Rhodes denies that he acted with the intent required by the Truth in Caller ID Act and asserts he has never admitted such intent (Doc. 79 at 4–6). These assertions fail to contradict the government's evidence—including Rhodes' own statements as recorded in his podcast and posts on social media. Intent is a proper subject for summary judgment when, as here, the evidence points in only one direction and no reasonable factfinder could find for the non-movant. *See Multiven, Inc. v. Cisco Sys., Inc.*, 725 F. Supp. 2d 887, 894 (N.D. Cal. 2010). On his podcast, Rhodes discussed reports detailing how upset the illegal spoofed robocalls made the people who received them. (Ex. 1 ¶¶ 61, 80–82, 109, 166.) He also described how his 415-295-4776 phone number was "shut down" shortly after the first campaign of illegal "theroadtopower.com" robocalls displaying that caller ID. (*Id.* ¶¶ 56–57.) Moreover, Rhodes displayed a keen awareness of the legal consequences faced by White

5

Nationalists who engage in harassment campaigns, as well as awareness of the laws governing abuse of the phone system. (*Id.* ¶¶ 238–49.)[3]

Given his statements and the timing of the robocalls, there is simply no factual dispute that Rhodes intended to use spoofing to cause harm through illegal robocalls and to avoid the negative consequences of his actions—including deactivation of his phone numbers and legal liability.

### B. Rhodes Has Not Created a Factual Dispute Over Whether the Phone Numbers at Issue Were Assigned to Him

To establish that the calls at issue in this case were spoofed—*i.e.,* transmitted with inaccurate or misleading caller ID information—the government has presented evidence proving that the caller IDs displayed in the offending calls were not assigned to Rhodes. Rhodes offhandedly contests this evidence and disputes that the government proved that the caller IDs used in the Iowa, Idaho, and Florida call campaigns were not assigned to him. (Doc. 80 ¶¶ 87, 121, 147.) But Rhodes himself established this in his interrogatory response about what phone numbers he used at various times, listing his phone numbers and the dates he used them. (Doc. 65–2, Responses to First Interrogatories, at Response 8.) That response did not identify

---

[3] Though Rhodes correctly notes that the government misidentified the NPR report displayed on his podcast in its Statement of Undisputed Facts (*see* Ex. 1 ¶¶ 144, 249; Doc. 83 at 5), that inadvertent mistake was immaterial; the report actually displayed, which is filed herewith as Mallory Decl. Ex. 3, also highlights the "theroadtopower.com" robocalls' non-compliance with the law, stating: "FCC regulations say robocalls must clearly state the identity of the entity behind the call at the beginning of every message, which The Road to Power failed to do." (Ex. 3, Corrected NPR Report; Mallory Decl. ¶ 6.)

6

any of the spoofed phone numbers at issue or claim they were assigned to Rhodes. (*Id.*) Nevertheless, to ensure a clean record on the point, the government has obtained declarations that further prove that the phone numbers at issue were not assigned to Rhodes, and thus that he engaged in spoofing when making calls that displayed those caller IDs. (*See* Exs. 4–6.)

### C. Rhodes Has Not Created a Material Factual Dispute Over "Robocalls"

Rhodes asserts on several occasions that the government has not proven that the Power Dialer software placed "robocalls." (Doc. 79 at 10–11.) This is irrelevant legally and wrong factually.

Legally, the Truth in Caller ID Act prohibits spoofing any telephone call, not just robocalls, with the intent to cause harm or wrongfully gain. 47 U.S.C. § 227(e). Spoofing with the intent to subject a recipient to an upsetting and illegal experience—whether an outrageous prerecorded message lacking legally required disclosures, or a harassing live call—violates the Truth in Caller ID Act. It is also irrelevant whether the recipient actually hears the intended message; it is the spoofer's intent that controls. *Id*.

Factually, the government has set forth undisputed facts showing that EVS's Power Dialer enabled the user to play prerecorded messages during phone calls (Ex. 1 ¶ 33). Prerecorded messages played over the phone are commonly referred to as "robocalls," *see Loyhayem v. Fraser Fin. & Ins. Servs., Inc.*, 7 F.4th 1232, 1233 (9th

Cir. 2021),[4] and the record evidence—including Rhodes' own statements and numerous facts he failed to contest—establishes that the spoofed calls at issue were made in campaigns to shock recipients with outrageous prerecorded messages that violated federal law. Whether these prerecorded messages are referred to as "robocalls" is immaterial.

In sum, on the facts, the overwhelming undisputed evidence—especially in light of Rhodes' admissions and threadbare denials—leaves only one conclusion that any reasonable factfinder would reach: Rhodes is responsible for the calls reflected in the EVS records and FCC's Forfeiture Order, they were in fact spoofed, and they were made in illegal robocall campaigns, with the intent to cause harm and wrongfully gain.

### III.   Rhodes' Legal Arguments Are Meritless

Rhodes discusses several issues in his brief that are more properly characterized as issues of law. None of those arguments is persuasive.

**A. Rhodes Received the Notice Required by Law**

In certain types of forfeiture proceedings, the FCC is required by statute to send a "citation" and give a person an opportunity to cure their violations of the Communications Act prior to instituting an administrative forfeiture action. 47

---

[4] Indeed, Rhodes himself referred to calls at issue in this case as "robocalls" on his podcast. (*E.g.* Conventionally Filed Ex. to MSJ B20 (3/29/20 RTP) at 44:30–47:00.)

U.S.C. § 503(b)(5). Rhodes argues that he was entitled to receive such a citation along with an opportunity to cure. (Doc. 79 at 13–14). But no citation was required here for several reasons.

The primary reason is that the Truth in Caller ID Act contains a standalone forfeiture provision, 47 U.S.C. § 227(e)(5)(A), that does not (and never has) required compliance with the citation requirement in 47 U.S.C. § 503(b)(5). Rather, Congress stated when it passed the Truth in Caller ID Act that the notice required when instituting a Truth in Caller ID Act forfeiture is prescribed by Section 503(b)(3) or 503(b)(4). (Rhodes received the notice required by Section 503(b)(4) and does not argue otherwise.) As a straightforward statutory interpretation matter, therefore, Rhodes received the very notice that Congress required—nothing more and nothing less.

Moreover, the FCC made clear in a notice-and-comment rulemaking soon after the Truth in Caller ID Act was passed that citations under Section 503(b)(5) were not required when instituting administrative forfeiture proceedings under the Truth in Caller ID Act. *See Implementation of the Truth in Caller ID Act of 2009*, 76 Fed. Reg. 16367, 16371 ¶ 22 (Mar. 23, 2011); *Implementation of the Truth in Caller ID Act*, 76 Fed. Reg. 43196, 43202 ¶ 36 (July 20, 2011) (The Act authorizes FCC "to proceed expeditiously to stop and, where appropriate, assess a forfeiture penalty against, any person or entity engaged in prohibited caller ID spoofing without first

9

issuing a citation."). Rhodes does not make any argument that the FCC's well-considered ruling is incorrect or not entitled to deference. *See Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 878 (9th Cir. 2014) (discussing deference to FCC's interpretations of Section 227).

Furthermore, Congress amended Section 227(e) in 2019 to expressly clarify that the Section 503(b)(5) citation requirement does not apply in Truth in Caller ID Act forfeiture proceedings—in part to foreclose defendants from making the exact argument that Rhodes is making here. This "statutory clarification" served simply to confirm existing law and practice. H.R. Rep. No. 116-173, 2019 WL 3401851, at *17 (2019) (noting Amendment provided "an additional statutory clarification that no citation is needed to bring enforcement against a violation of the Truth [in] Caller ID Act, as is current FCC practice"). Rhodes' forfeiture proceeding began after Congress made this clarifying amendment, rendering his argument even more meritless. *See ABKCO Music, Inc. v. LaVere*, 217 F.3d 684, 689–90 (9th Cir. 2000).

### B. Rhodes' Spoofing Violated the Truth in Caller ID Act and Is Not Protected by the First Amendment

This Court has already determined that Rhodes' broad First Amendment challenge could not be brought in this proceeding. (Doc. 15 at 8.) Further, the Court held that the intent to cause emotional harm through upsetting illegal spoofed robocalls alleged in the Complaint is an "intent to cause harm" prohibited by the Truth in Caller ID Act. (Doc. 15 at 10.) The Court also found that the intent to use

10

spoofing to obtain nontangible things of value such as protection from liability incurred through publicity–seeking illegal robocalls alleged in the Complaint constitutes an intent to "wrongfully obtain anything of value." (Doc. 15 at 10–11.)

If Rhodes is seeking to reopen these determinations through an as-applied First Amendment defense to the government's specific evidence (Doc. 79 at 14), his attempt must fail. The right to freedom of speech protects only "speech," not conduct. Ninth Circuit precedent holds that a statute barring an individual from initiating a phone call with specific harmful intent "regulates nonexpressive conduct and does not implicate First Amendment concerns"—even if the person made the call in part to disseminate some sort of political message. *United States v. Waggy*, 936 F.3d 1014, 1019 (9th Cir. 2019). *Waggy* controls: the legal trigger for Rhodes' liability is the nonexpressive conduct of causing the display of inaccurate caller ID information with a specified intent.

That the First Amendment protects Rhodes' right to engage in inflammatory speech in the public square does not preclude Congress from prohibiting him from spoofing with the intent to shock and upset unsuspecting recipients with illegal robocalls. *See id.*; *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) (discussing Congress' authority to protect consumers from privacy-invading calls and texts); *Maryland v. Universal Elections, Inc.*, 729 F.3d 370, 376–

11

Case 9:21-cv-00110-DLC   Document 84   Filed 12/08/23   Page 13 of 18

77 (4th Cir. 2013) (First Amendment does not preclude Congress from protecting consumers from anonymous robocalls merely because of their political content).

Enforcing the Truth in Caller ID Act against Rhodes also does not abridge his First Amendment right to speak anonymously. Not only does the Act expressly permit callers to remain anonymous, *see* 47 U.S.C. § 227(e)(2), but the Ninth Circuit has held that mere "[e]xposure of a telephone number does not violate the First Amendment right not to speak" nor a "First Amendment right to speak anonymously." *People of State of Cal. v. FCC*, 75 F.3d 1350, 1362 (9th Cir. 1996). The First Amendment does not command that Rhodes be allowed to spoof so that he can get away with making robocalls that violate federal law.

In sum, enforcing the Act against Rhodes simply "does not implicate First Amendment concerns." *Waggy*, 936 F.3d at 1019. Rhodes provides no basis for the Court to reverse its prior determinations regarding the interpretation of the Truth in Caller ID Act.

### C. Rhodes' Evidentiary Objections Are Meritless

Rhodes objects to some of the government's evidence on the bases of Rules 403 and 404. (Doc. 79 at 15–20.) As to his Rule 403 challenge, he asserts that some of the government's evidence is irrelevant and inflammatory. But that evidence is plainly relevant to matters at issue in the case, such as the fact the calls at issue occurred, Rhodes' identity as the person responsible for them, and his intent. And

more importantly, Rule 403 objections are not well-taken at the summary judgment stage. *Mally v. City of Beaverton*, Civ. No. 17-01000-JR, 2018 WL 5266841, at *2 (D. Or. Oct. 23, 2018) ("At the summary judgment stage, Rule 403 objections are unnecessary because there is no jury that can be misled and no danger of confusing the issues.").

As to his Rule 404 objections, Rhodes asserts that evidence about robocalls that were not part of the Forfeiture Order is somehow irrelevant to this case. But this evidence is plainly relevant to the government's request for injunctive relief, and it is also classic Rule 404(b) evidence that shows Rhodes' identity as the person who placed the calls that were the subject of the Forfeiture Order. The Court should overrule Rhodes' evidentiary objections, reject his other legal arguments, and enter partial summary judgment in the government's favor.

### IV. The Court Should Enter Factual Findings Regarding All Facts Not in Dispute

Additionally, the Court should issue findings of fact under Rule 56(g) as to those material facts about which there is no genuine dispute. These include:

- All facts and portions of facts that Rhodes did not dispute in his L.R. 56.1(b) statement (*see* Ex. 1);

- That the caller Ids used in the Iowa, Idaho, and Florida campaigns were not assigned to Rhodes (*id.* ¶¶ 87, 121, 147);

- All facts disputed by Rhodes based on the argument that calls with prerecorded messages are not "robocalls";

- All facts disputed by Rhodes based only on his conclusory declarations;

13

- That Rhodes is responsible for the spoofed calls identified in connection with each of the five robocall campaigns in the Forfeiture Order; and

- That he acted with the intent to cause harm or wrongfully obtain something of value.

Adopting these facts as established will narrow issues for future proceedings, including any potential hearing or trial on the amount of the forfeiture penalty.

## CONCLUSION

The United States respectfully requests that this Court grant the government's motion for partial summary judgment, enter the proposed injunction, and enter the requested findings of fact under Rule 56(g).

**DATED** this 8th day of December, 2023

        Respectfully submitted,

        BRIAN M. BOYNTON
        Acting Assistant Attorney General

        ARUN G. RAO
        Deputy Assistant Attorney General

        AMANDA LISKAMM
        Director
        Consumer Protection Branch

        LISA K. HSIAO
        Assistant Director

        /s/     Michael J. Wadden
        PATRICK RUNKLE
        Senior Litigation Counsel
        MICHAEL J. WADDEN
        Trial Attorney
        Consumer Protection Branch
        United States Department of Justice
        Attorneys for Plaintiff United States

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(d)(2)(E), the attached brief is proportionately spaced, has a typeface of 14 points and contains 3,246 words, excluding the caption, signature block, and certificates of service and compliance.

**DATED** this 8th day of December, 2023

>  /s/ Michael J. Wadden
>  **Michael J. Wadden**
>  **Trial Attorney**
>  **Attorney for Plaintiff**

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 8th day of December, 2023, a copy of the foregoing document was served on the following person by the following means.

<u> 1,2 </u>  CM/ECF
<u>     </u>  Hand Delivery
<u>     </u>  U.S. Mail
<u>     </u>  Overnight Delivery Service
<u>     </u>  Fax
<u>     </u>  E-Mail

1. Clerk of Court

2. Scott Rhodes
1104 Louisiana Avenue,
Libby, MT 59923

**/s/ Michael J. Wadden**
**Michael J. Wadden**
**Trial Attorney**
**Attorney for Plaintiff**