UNITED STATES DISTRICT COURT
DISTRICT OF MONTANA
MISSOULA DIVISION

UNITED STATES OF AMERICA,

  Plaintiff,

v.

SCOTT RHODES,

  Defendant.

**Case No. 21-110-M-DLC-KLD**

**PRO SE DEFENDANT'S
MOTION TO EXTEND FILING
DEADLINE PER F.R.C.P. 6(b)(1)(B)**

## INTRODUCTION

Pursuant to FRCP 6(b)(1)(B), Defense requests Court to extend the deadline for Defendant's filing to the date it was lately filed in good faith, January 16, 2024, upon Defendant's reliance on the Court's Pre-Trial Order (Doc. 51) language seeming to allow until January 16, 2024 to do so where Order stated, (pg. 2) "Motions Deadline (fully briefed): January 16, 2024", based on a mistaken belief which Defendant previously communicated he held as early as October, to both this Court and Plaintiff without contradiction from either prior to Plaintiff's Motion to Strike (Doc. 92).

## BACKGROUND

Plaintiff's Complaint (two counts) alleges violation of The Truth in Caller ID Act, 47 U.S.C. § 227(e)(1) which says it is unlawful "to cause any caller identification service to knowingly transmit misleading or inaccurate caller identification information with the intent to defraud, cause harm, or wrongfully obtain anything of value."

Count 1 of 2 seeks forfeiture of $2,000 per call of 4,959 phone calls (totaling to $9.918 million), alleged to have been made during a three-month period, Aug. 28, 2018 to Dec. 4, 2018 which played pre-recorded messages of a political nature.

Count 2 of 2 seeks an injunction, turning a future offense into a felony crime, and a mere false accusation of same, into justification for a search warrant.[1]

April 20, 2023 District Judge Dana Christensen entered Doc. 51, a trial schedule order.

October 13, 2023, Plaintiff filed an MSJ that is still before the Court, prior to the end of discovery of December 15, 2023.

January 16, 2024, Defendant filed an MSJ on the belief it was the deadline specified in the Pre-Trial Scheduling Order (Doc. 51).

January 19, 2024 Plaintiff filed a Motion to Strike Defendant's MSJ for not being filed timely, citing a missed deadline of December 26, 2023, a date which does not appear anywhere in the Order, and was not clear to pro se Defendant.

Pro se Defendant hasn't made any other late filings, and the record shows he has made a consistent effort to conform to deadlines, the Rules of Procedure and other filing requirements.

---

[1] Such as the admittedly false assertion by FCC lawyer Daniel Stepanicich of violations in his initial presentation to FCC Commissioners in his Notice of Apparent Liability, an assertion he was subsequently forced to omit in his Order of Forfeiture, which had it been presented to a judge with such an injunction in place, would have certainly led to an improper search warrant.

## LEGAL STANDARD

FRCP 6(b)(1): In General. When an act may or must be done within a specified time, the court may, for good cause, extend the time: (B) on motion made after the time has expired if the party failed to act because of excusable neglect.

Upon motion made, Rule 6(b)(1)(B) permits a post-deadline filing extension "for good cause" if the party failed to act because of "excusable neglect." *Lujon v. Nat'l Wildlife Fed'n*, 498 U.S. 871, 896 (1990). Excusable neglect requires "a demonstration of good faith…and some reasonable basis for noncompliance within the specified period of time." *Kimberg v. Univ. of Scranton*, 411 Fed. Appox. 473, 477 (3rd Cir. 2010) (quoting *Petrocelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1312 (3rd Cir. 1995).

Black's Law Dictionary defines "good cause" as adequate or substantial grounds or reason to take a certain action, or to fail to take an action prescribed by law. What constitutes good cause is determined on a case-by-case basis. Good cause is not a rigorous or high standard under Rule 6(b), and courts have construed it broadly. *Ahanchion v. Kenan Pictures*, 624 F.3d 1253 (9th Cir. 2010); *Venegas-Hernandez v. Sonolux Records*, 370 F.3d 183, 187 (1st Cir. 2004). It imposes a "light burden." Moore's Federal Practice § 6.06 [2] p. 6-32. Matthew Bender 3rd ed. 2013.

To determine whether a party failed to act because of excusable neglect, the court considers all relevant circumstances surrounding the party's omission, including the danger of prejudice to the opposing party; the length of the delay and its potential impact on judicial proceedings; the reason for the delay, including whether it was within the reasonable control of the movant; and whether the movant acted in good faith. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)

Courts have held that Rule 6(b)(1)(B) should be construed broadly. *Rachel v. Troutt*, 820 F.3d 390, 394 (10th Cir. 2016). "Excusable neglect" under Rule 6(b) is an equitable doctrine, and while relief is discretionary with the district court, it is an "elastic concept." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S, at 392.

Rule 6(b) "[is] to be liberally construed to effectuate the general purpose of seeing that cases are tried on the merits." *Rodgers v. Watt*, 722 F.2d 456, 459 (9th Cir. 1983); *Wong v. Regents of the Univ. of Calif.*, 410 F.3d 1052, 1060 (9th Cir. 2005) ("Of course, courts should not mindlessly enforce deadlines.")

Litigation in federal civil law should be decided on the merits and not on technicalities. *Rodriguez v. Village Green Realty, LLC*, 788 F.3d 31, 47 (2nd Cir. 2015) (citing *Cargill, Inc. v. Sears Petroleum & Transp. Corp.*, 334 F. Supp. 2d

197, 247 (NDNY 2014) (there is a strong preference for resolving disputes on the merits).

## OVERVIEW

1.  Good cause, Reliance Upon Scheduling Order

2.  Defendant acted in good faith

3.  Delay in filing was not within the reasonable control of the Defendant

4.  Length of delay and delay's potential impact on proceedings.

5.   No prejudice to the Plaintiff necessary.

## ARGUMENT

For the sake of this argument, non-attorney pro se Defendant, due to lack of any experience to contrary, assumes as true Plaintiff's U.S. Attorneys' assertion that the actual deadline for filing the MSJ was December 26, 2023, despite that date appearing nowhere in the scheduling order.

Further, he only now, upon Plaintiff's filing a Motion to Strike Defendant's MSJ, understands that is arrived at by subtracting 21 days from January 16 as being the period necessary to allow for the adverse party's Opposition, but even having understood that, would have had to ask for an extension, not being able himself to prepare and file an MSJ in the 10 days between Dec. 15 end of discovery, and Dec. 26 2023.

**1. Good cause, reliance upon scheduling order.**  The pro se Defendant lacks any legal education, training, or experience. This was known to J. Christensen at least by relatively early in the pre-trial conference on April 20, 2024, and thus also before writing his scheduling Order of later same day.

From Doc. 56, "This is the defendant. I'm not an attorney. I've actually got no court trial experience or legal experience…" (pg. 17, 2-4 ). Doc. 56 shows J. Christensen heard that statement and understood its import. "Now, that's a lot to absorb, particularly, Mr. Rhodes, for a nonlawyer." (pg. 37, 5-6).

In setting a motions deadline of January 16, 2024 during the telephonic conference, J. Christensen did verbally introduce the concept of counting back from that deadline (eight months off into the future), but just as he stated, "Now, that's a lot to absorb, particularly…for a nonlawyer," it was not understood by the Defendant.

Instead, Defendant relied on the clear outline written by J. Christensen in his same-day scheduling Order (pg. 2) that followed, which goes directly from "Discovery Deadline: December 15, 2023" to "Motions Deadline (fully briefed): January 16, 2024. There is nothing in between about a deadline for Motions for Summary Judgment of December 26, 2023.

If the phrase "(fully briefed)" is clear to lawyers to include also the adverse party's Opposition filing to a Motion, that was non-intuitive to the Defendant, who

has been forced to learn as he goes in the process of being a Defendant in this lawsuit. Defendant took a Response or Opposition to a motion to be distinct from a "Motion", and a "Brief" being only what the movant files to support a motion. He did not understand that "fully briefed" is understood by lawyers to include Response/Opposition.

If the Defendant had understood that, he would not have been able to make the unstated deadline of December 26 2023 and would have moved the Court for an extension, (which the Court is asked to consider if it would have been likely to grant it.) Defendant was still compiling significant discovery for himself right up to the day before the discovery deadline of December 15, 2023. See for instance multi-page compilation Exhibits W & X to Defendant's MSJ (Doc. 86) bearing date stamps, (upper left of each page), no earlier than 12/14/23 4:16 p.m. through to 12/15/23 2:14 p.m.

**2. Defendant Acted in Good Faith.** There is no evidence of bad faith in this matter, and thus no reason to assume it. Rather, the record shows the non-lawyer pro se Defendant to have done his best to learn this process as he's forced to go through it, akin to building an airplane while flying it. Previous errors by the Defendant have been minor and he has corrected them moving forward after having them pointed out, such as with his initial filing by a Defendant that knew nothing of "Local Rules" or word count limits, that was over said limit.

After Defendant's learned otherwise only via Plaintiff moving for his filing to be entirely disregarded on that ground, he offered to immediately refile an amended version, and all subsequent filings comported with word count limits as he then understood them. After Plaintiff asked the Court to disregard entirely a non-dispositive motion by Defendant due to his lack of having first asked Plaintiff if they would oppose it, Defendant, now knowing that requirement, has conformed to it since then. Had Defendant understood the nowhere-stated deadline of December 26 2023 for filing his MSJ, there is no reason to believe he would not have either conformed to it or, not being able to, would have prior moved the Court for an extension.

Especially when the Court considers the previous filing history in this case, there is no reason to think that the Defendant thought that by filing the MSJ on the stated deadline of January 16, 2024, that he believed the completely counterintuitive concept that a court would actually accept such a motion while also denying the Plaintiff any Response to it due to that deadline, a concept that will be revisited further on in Argument point 5 herein, or even merely that if J. Christensen held in his head the unstated deadline of December 26 2023, he would for no stated cause just accept a motion filed after that time.

**3. Delay in filing was not within the reasonable control of the Defendant.**

The pro se Defendant is not merely a non-attorney but has no legal experience education or training and it was not in his reasonable control to gain it since inception of Plaintiff's lawsuit. Next, the Defendant was exposed to the components that could allow some to deduce the unstated deadline of December 26, but Defendant failed to. The Defendant has limited intelligence and limited cognitive ability, immutable conditions outside Defendant's control.

Further, it was impossible to file the document on December 26, 2023 because it didn't exist to be so. Upon the end of Defendant's discovery efforts for himself on Dec. 15, he needed to spend the final two weeks of the month working toward his next expected imbursement date of January 1 merely in order to cover basic living expenses, and thought he could do so under a mistaken belief he had until January 16 to file.  Since shortly after the inception of legal action by Plaintiff, Defendant lives month to month on meager earnings and without any substantial savings that would allow total dedication to his Defense, and balancing the two has been walking a knife's edge.

The actual MS Word document that became the MSJ was not started until January 4, 2024 in anticipation of the mistakenly believed deadline of January 16.[2]

**4. Length of delay and delay's potential impact on proceedings.** This is unlike motions under FRCP 6(b)(1)(B) when they are filed months or years after

---

[2] EXHIBIT B, Document Properties

the fact. First, it is being filed by Defendant at the earliest possible opportunity (Jan. 22) after learning of the missed deadline via the January 19 2024 Motion to Strike by Plaintiff. The differential between the unstated deadline of December 26 and January 16 is not months or years, but only three weeks.

The next scheduled event involving the Court seems not to be until April 11 2024 (final pretrial conference) such that one would hope Court has sufficient time to review Defendant's MSJ and Plaintiff's anticipated Opposition at some time in between. Court is also asked to recognize that there essentially would be no delay from what would have alternatively occurred if the Court had been likely to grant the Defense a 21-day extension if the Defense had moved for it prior to Dec 26.

**5. No prejudice to the Plaintiff necessary.** Potential prejudice is one of the considerations here before granting a motion under FRCP 6(b)(1)(B) per the "liberally construed" SCOTUS test of *Pioneer Investment Services Co. v. Brunswick Assoc.* \Additionally, Plaintiff has filed (Doc. 92) a Motion to Strike Defendant's MSJ on grounds of prejudice to Plaintiff.

Defendant would agree it would be prejudicial to entertain a motion from one party while not allowing any response to it from the adverse party. Such a counterintuitive concept was never even imagined by Defendant as something permissible by any court and is not being requested here. The Court allowing

Plaintiff an adequate response period to the Defense's filing on the stated (but misunderstood) deadline of January 16, 2024 poses no prejudice to the Plaintiff.

But Court is also asked to recognize that if prejudice to Plaintiff were ever any real consideration, that Plaintiff had notice well in advance that Defendant had been led by the Order to believe the filing deadline to be the stated January 16 2024, and Plaintiff raised no concern of prejudice to the Defendant during all that time despite ongoing communication between the parties. (That will be demonstrated further herein.)

Rather, Plaintiff deliberately chose to capitalize on the pro se Defendant's anticipated mistake, by trying to strike his filing on grounds of being filed late, or in the alternative, at least getting far more than the normal 21-day response period, given that in the event the late filing was allowed, Plaintiff might get a 21-day response period, plus all the time preceding that would ensue from the period of filing a Motion to Strike, response (14 days), and reply (14 days), potentially giving the enormously staffed, enormously funded Department of Justice as much as 49 days compared to the normal 21 days plus all of the days for the Court to finally adjudicate the motion after that, such as another 30 to 45 days.

As stated earlier herein, Defense is nowhere suggesting the bizarre concept that a motion, on good faith late filed, would be considered while disallowing any response from an opposing party, but the current circumstances were totally

11

avoidable by Plaintiff by merely raising to Defendant its now-claimed concern of prejudice. Plaintiff cunningly chose not to do so, in order to seek an unneeded advantage in this already enormously lopsided case.

*First*, as far back as October 25th 2023 Plaintiff (and this Court) had notice that the Defendant believed he had until the written deadline of January 16 2024 to file, where he wrote in Doc. 72, (pg. 3) "Further, J. Christensen's Order sets a Motions Deadline of January 16, 2024 indicating a common-sense recognition of a 30-day period necessary to allow for the digesting and incorporation of all discovery made up to Dec. 15 into said Motions." And pg. 6, "Defendant's Motion for Summary Judgment. Defendant intends to file his own Motion for Summary Judgment…"[3]

*Second*, again on November 24 2023, another filing served on Plaintiff (Doc. 79, pg. 1, first para.), "Further, Defense intends to file its own MSJ, for which this Court has allowed until January 16, 2024, and for which Defense already gave notice to Court on Oct. 25, 2023."

*Third*, again on December 27 2023, a filing written by Defendant as Movant, served on Plaintiff, "Now Movant must meet a January 16 deadline for filing his

---

[3] It should also be noted that the Court also knew of that misunderstanding by Defendant, the Court must having read it, because Court subsequently ruled on that Motion.

own MSJ, still bereft of the discovery of the subpoena which Olson defied and still defies." (pg. 10).[4]

Plaintiff lawyers cunningly avoided raising to Defendant any supposed concern of prejudice from a Defense MSJ filed after the unstated deadline of December 26, so Plaintiff's now-cries of prejudice should be seen for what it is.

## CONCLUSION

Considering the full "Legal Standard" portion of this motion, and that the Argument section has addressed each of the points under the liberal SCOTUS test of *Pioneer*, Defendant requests grant of the Motion. Next, doing so is in the interest of justice in this case. Further, doing so conforms to the precedent of judicial economy. A look now at the Defense MSJ at issue will show that it is wholly meritorious, not frivolous, and it's certain that if not considered, all the same issues therein, the same points of law, all the same evidence attached, will have to be dealt with anyway at a trial but at greater expense to the public and at much greater expense of time to the Court and Judge.

DATED this 22nd day of January, 2024

Respectfully submitted,

SCOTT RHODES
By: *s/Scott Rhodes*
Pro Se Defendant

---

[4] EXHIBIT A, This was filed in the Idaho District Court but was served same day on this Plaintiff via email and USPS.

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d)(2)(E), the attached Motion is proportionately spaced, has a typeface of 14 points, and contains 2,948 words out of the 6,500 allowed, excluding caption and certificates.

DATED this 22nd day of January, 2024

By: *s/Scott Rhodes*
Pro Se Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of January, 2024, I electronically filed the forgoing document with the Clerk of Court using the CM/ECF system which will send notification of the filing to the Plaintiff.

By: *s/Scott Rhodes*
Pro Se Defendant

# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO
NORTHERN DIVISION

UNITED STATES OF AMERICA,

  Plaintiff,

v.

SCOTT RHODES,

  Defendant.

**Case No. 1:23-mc-00304-BLW**

**PRO SE DEFENDANT'S REPLY IN
SUPPORT OF MOTION TO
COMPEL AND REQUEST FOR
SANCTIONS**

**Exhibits to Reply to Opposition to Motion to Compel and for Sanctions,**

**F Through U, Filed Conventionally on DVD**

| <u>Ex.</u> | <u>Description</u> | |
|---|---|---|
| F | Plaintiff's USA_00000193 Olson-DOJ email, highlighted text | PDF |
| G | Plaintiff's USA_00004863 | PDF |
| H | Excerpt of Plaintiff's USA_00012782 Request for Admission | PDF |
| I | Defendant's WIN-002110, highlighted text | PDF |
| J | Compendium of Olson-DOJ emails | PDF |
| K | Plaintiff's Request for Admission excerpt | PDF |
| L | Plaintiff's USA_00004885 Ben Olson child pornography video | **MP4** |
| M | Plaintiff's USA_00004619 Ben Olson boycott audio | **MP3** |
| N | Excerpt of Defendant's WIN-004533 The Reader article | PDF |
| O | Defendant's WIN-08020 The Inlander article | PDF |
| P | Defendant's WIN-006588 The Reader | PDF |
| Q | Plaintiff's USA_00005089 Olson-Bessler email | PDF |
| R | US News & World Report article | PDF |
| S | Plaintiff's USA_00005122 Olson-Bessler email | PDF |
| T | Plaintiff's USA_00005165 Olson-Wilson email | PDF |
| U | Plaintiff's USA_00005124, USA_00005144, USA_00005165 | PDF |

Objections made by lawyer Wendy Olson in her Response to Motion to Compel and for Sanctions should not even be considered by the Court, since they were all waived by her failure to respond in the time period required by FRCP 45(d)(2)(B) of 14 days after service of the subpoena, there being no response from her or her client to Movant prior to September 22, 2023 regarding the subpoena served on September 5, 2023.

However, Movant will be conservative by addressing them herein and showing why they fail and further, are desperate and spurious.

## OVERVIEW

**1. No immunity.** There is no Idaho State or federal law that grants Ben Olson immunity from turning over the subpoenaed documents.

**2. Anonymous sources not at issue.**

**3. No overbreadth.** The items specified by the subpoena are not even close to the boilerplate claim of overbreadth by lawyer Wendy Olson.

**4. Not harassing.** The items specified by the subpoena don't present any hardship, and are not even close to the boilerplate claim of harassment by lawyer Wendy Olson.

**5. None of Olson's three cited case decisions apply here.**

**6. Need for sanctions underscored.** Ben Olson's willful defiance of the *entirety* of the subpoena are for entirely self-serving reasons, and underscores the need of a teachable moment for presumptive reporter Ben Olson in the form of sanctions, namely a period of custody and/or payment of a fine to this Court.

**ARGUMENT**

**1. No immunity.** Ben Olson has no privilege in this matter, his total lack of education or qualifications as a reporter notwithstanding (dealt with elsewhere herein as relevant to the need for sanctions but upon which this section on lack of immunity does not depend).

Decisions of SCOTUS and Idaho Supreme Court (ISC)[1] have held society does not grant a "newsman's privilege" for the unregulated position of "reporter", and that when courts are allowed to engage in some judicial scrutiny of such a disputed privilege claim, it is in instances that don't exist in this case, namely disclosure of the identity of a confidential source or when a purported reporter is the defendant.

Further, any such spurious claim of privilege has been waived by Ben Olson's copious voluntary disclosures to the Plaintiff related to the specific matters identified in the subpoena, and expressed willingness to produce more of same, "I look forward to sharing whatever information I can to help the case."[2] [3] (*emp. added*) Olson wants this court to set a terrifying and dystopian precedent that the self-appointed title of "reporter" entitles him to a special societal status to voluntarily disclose only those claims of his, or facts, which he deems detrimental to the Defendant he seeks to punish via the government's lawsuit[4], and not any countervailing facts that are exculpatory or could lead to same, which Olson seeks to suppress from coming to light for consideration by the adjudicating court and jury, as

---

[1] *Sierra Life Ins. Co. v. Magic Valley Newspapers* (ISC, 1980), *Marks v. Vehlow* (ISC, 1983), *In re Wright* (ISC, 1985).
[2] Ex. F Plaintiff's USA_00000193 Olson-DOJ email, highlighted text
[3] Ex. G Plaintiff's USA_00004863, page 4, highlighted text
[4] Ex. F Plaintiff's USA_00000193 Olson-DOJ email, highlighted text

well as that which will impeach Olson's expected testimony, and that will reveal he has already committed perjury in his declaration to aid the government.

    **2. Anonymous sources not at issue.** The subpoena requires production from Ben Olson of contemporaneous notes and his surreptitious audio recordings of individuals spoken to in the course of his "asking questions" about the Movant. Olson has already named people in his free paper and/or in his written communications to the government.[5] An exception claimed by lawyer Olson is the Movant's landlord, who is not anonymous here.

    The Movant obviously already knows who his own landlord was, Vance Geisinger of Bonner County, ID (whom Movant personally knew, and with whom he was on good terms). Further, Olson already identified him to the government in all but name, by writing to the Plaintiff that the individual is the Movant's landlord and made known to Olson looking up the <u>public</u> record of the property ownership,[6] the address of which is part of the record.[7]

    Further, even if Geisinger's name weren't already known, as it is per above, Olson waived any claim to immunity from disclosure writing to Plaintiff thusly, "…a man who I will name if compelled to…"[8] Olson was subsequently compelled via a subpoena, which he then defied in its entirety.

    Next, Geisinger is not a "source". Olson does not attribute anything he ever published about the Movant to his landlord, (nor to <u>any</u> "confidential source(s)"), presumably because

---

[5] Ex. G. Plaintiff's USA_00004863 Purported timeline voluntarily written and provided by Olson to Plaintiff, highlighted text throughout.
[6] *Id.* page 4, highlighted
[7] Ex. H Excerpt of Plaintiff's USA_00012782 Request for Admission
[8] Ex. G Plaintiff's USA_00004863, page 4, highlighted

Movant's landlord had nothing bad to say, Olson's only real goal with his publishing, i.e. punishment for transgressing Olson's beliefs,[9] [10] not actual reporting.

Lastly, Ben Olson already volunteered to give his recordings of conversations with Geisinger to the government if they believed it necessary to win the lawsuit that Olson zealously wants to prevail, "I have this call recorded…I will only share it if it's necessary…"[11] It is just one of the parties, the Defendant, to which Olson wants to avoid giving recordings and other information because 1) Olson knows it to be either exculpatory information or having the potential to lead to same 2) will lead to the truth of the claim about Olson which comprises one of the underlying events, that Olson threatened to write about Movant's landlord unless he evicted Movant.[12]

**3. No overbreadth.** All of the subpoena's specified items are related to the Plaintiff's legal theory of the case that is supposed to go to "intent to cause harm", or individuals Olson has already named to the government or in publishing as his having asked questions about the Movant he'd targeted for punishment for perceived transgressions of Olson's beliefs[13] [14] shared by co-owner Bessler[15], or recordings made by Olson of any interactions with Movant (of which Movant saw Olson making an audio recording) with such account already being relied on in his voluntary declaration to Plaintiff and again in Wendy Olson's Opposition to

---

[9] Ex. I Defendant's WIN-002110, highlighted text
[10] Ex. S. Olson-Bessler email, highlighted text
[11] Ex. G Plaintiff's USA_00004863, page 7, para. 1, highlighted text
[12] The truth of the content of the call recordings for which a government forfeiture is being sought, is relevant since proving the identity of the caller is not enough by itself. The govt's theory of "intent to cause harm" must also be proven, where content that one could presume to be false being weighed differently in that regard than that which can be shown true.
[13] Ex. I Defendant's WIN-002110, highlighted text
[14] Ex. T Plaintiff's USA_00005165 Olson-Wilson email
[15] Ex. S Plaintiff's USA_00005122 Olson-Bessler email, page 2, highlighted text

this very Motion, and things that may be exculpatory for the Defense or lead to same[16], as clearly allowed by the FRCP and precedent cited in Motion.

To this end, Movant directs court to even the mere subset of the whole body of voluntary disclosures included here as exhibits which Olson has already made in his desire to aid the government, so this Court can compare it to the legitimate items required by the subpoena that Olson defied.

It is contrary to the interest of justice, and is prejudicial to the Movant, to set the bar so high (as lawyer Olson implies) as needing to provide hostile Ben Olson with a detailed roadmap of the Defense strategy so that Olson can know exactly what pieces of evidence to illegally withhold, or even destroy, in order for Olson to avoid being impeached on the stand at trial, as well as be shown to have already committed perjury with his declaration to this Court, as well as his other voluntary declaration for Plaintiff's evidence.

Further, lawyer Olson's argument that the subpoenaed materials aren't necessary because the Plaintiff has already made discovery to the Movant is irrelevant and did nothing to contradict the dynamic already outlined in the Motion, namely, that Ben Olson is an eager voluntarily participant in this case with a documented desire to exact harm to the Movant, something Olson tried himself but learned he hadn't legal cause to do.[17] As such, the Plaintiff never needed to subpoena Olson which would have yielded the relevant items in their entirety, which Plaintiff would have been obligated to share with the Defense, a fact not refuted by lawyer Olson. Further Ben Olson makes reference to his sending specific

---

[16] Ex. U Plaintiff's USA_00005124, USA_00005144, USA_00005165
[17] Ex. G Plaintiff's USA_00004863, page 8, final para., highlighted text

items to the government that Plaintiff did not share with Defense per its discovery obligation, if they received them as Olson intended.[18] [19]

Therefore, hostile Olson has naturally only ever provided Plaintiff with accounts or claims he perceives detrimental to the Defendant, while withholding that which is exculpatory or might lead to same (and certainly that which would impeach Olson's expected testimony, and also prove Olson's declaration as perjury). Plaintiff has exploited that fortuitous dynamic and will continue to.

And those judicious disclosures by Olson to Plaintiff were made interspersed with numerous undocumented phone conversations between Olson and government to coordinate their joint strategy, as shown by their email correspondence.[20]

**4. Not harassing.** Lawyer Wendy Olson either fails to understand the Plaintiff's case, or pretends not to, when she argues to this Court that the only issue in the case is the disputed fact of if the Movant made the calls advocating boycott of Olson's free paper as alleged by Plaintiff, and that therefore anything that doesn't speak directly to that has to be overbroad, and therefore harassment.

The government must also prove the calls were made with "intent to cause harm"[21] but it has no statements either by Defendant, nor by others about Defendant, of any "intent to cause harm", and so they are desperately trying to use Olson's false narrative of harassment by Movant for which there is no source except Olson himself, and for which

---

[18] Ex. G Plaintiff's USA_00004863 page 3, first para. "(DVDs containing surveillance video...are included in my folder)."
[19] *Id.*, page 9, first para.  "I took notes of the conversation, which you can read in the file marked Oct. 12, 2018".
[20] Ex. J Compendium of Olson-DOJ emails
[21] Otherwise a prohibited argument based solely on the call's content for a boycott of Olson, per *NAACP v. Claiborne Hardware*, or disparagement of the semi-public figure Olson per *Hustler Magazine, Inc. v. Falwell*, or any claimed "emotional harm" from the political nature of the call recording, per *Snyder v. Phelps.*

there is zero evidence (even after all Plaintiff's discovery), contrary to Olson's combinations of outright claims or mere insinuations to both the public and Plaintiff.

For example, Plaintiff's Request for Admission[22] shows its intent to claim Movant posted online a video of an advertiser's allegation that Ben Olson sent child pornography to him and at least one other advertiser in his free weekly paper.[23] Movant would agree with lawyer Wendy Olson the subject <u>should</u> be irrelevant to the political phone call recording underlying the complaint, namely calling for the boycott of Olson's free weekly paper while also stating semi-public figure Ben Olson has no education as a reporter and is unethical, having blackmailed a local business owner that Olson would bring public attention to him by writing about him if he did not evict his tenant (ostensibly the Movant).[24]

However, the Plaintiff's <u>intent</u> to use a posting of the Ben Olson child pornography video for showing "intent to cause harm" for the earlier political phone calls has made that video relevant, so therefore, other postings of that video, the dates (before or after) that they were posted, and what Olson claimed at that time in his emails to the video platform services about the source of the video postings are obviously appropriate subject matter for the subpoena, and made necessary due to the Plaintiff's intended use of the subject.[25]

**5. None of Olson's three cited case decisions apply here.** Olson's use of *Shoen v. Shoen* is especially perverse given its decision in reversing a contempt finding was predicated on the consideration that a compelled disclosure "...harms the press ability to

---

[22] Ex. K Plaintiff's Request for Admission excerpt
[23] Ex. L Plaintiff's USA_00004885 Ben Olson child pornography video .mp4 file
[24] Ex. M Plaintiff's USA_00004619 Ben Olson boycott audio .mp3 file
[25] June 24, 2023, Defense moved the Court to rule the topic of Ben Olson's sharing of child pornography as inadmissible for irrelevance, due to Defense's lack of resources to thoroughly investigate the full complexity of the pornography claims by the discovery deadline (Doc. 53, pg. 7). Court denied the Motion. (Doc. 76).

gather information by damaging confidential sources' trust in the press' capacity to keep secrets and, in a broader sense, by converting the press…into an investigative arm of prosecutors and the courts."

In this case, Olson is *already* an eager, voluntary, "investigative arm of the prosecutors (government) and the courts", both in the multitude of instances covered herein and its exhibits, and Olson's written statements of willingness to give more to the Plaintiff.

*Farr v. Pitchess*, was specifically about disclosure of the identity of an anonymous source, and one explicitly promised confidentiality. It's already been dealt with herein that there is no confidential source issue in this case. Court should also notice that lawyer Olson's proffered sworn declaration of her client Olson lacks any claim that he made any such promise to anyone, at any time, let alone the Movant's landlord, Vance Geisinger, who is not anonymous, again for the reasons given herein.  The directly preceding also invalidates lawyer Olson's attempt to use *In re Wright*.

**6. Need for sanctions underscored.** A course of education in journalism includes journalistic ethics and relevant law. Ben Olson never had any such lessons as he admits to lacking any education in journalism[26] and only a year-and-a-half of college[27], and it is in society's interest to provide such lesson to Olson now by way of sanctions.

Olson is a band musician and bartender[28] who was handed a job writing content for his grade school buddy's local free weekly called The Reader, despite no journalism qualifications.[29] That friend closed the paper and moved away, putting Olson out of a job.

---

[26] Ex. N. Excerpt of Defendant's WIN-004533 The Reader article
[27] *Ibid.*
[28] Ex. O Defendant's WIN-08020 The Inlander article
[29] Ex. N. Excerpt of Defendant's WIN-004533 The Reader article

Two years later in 2015, Olson's friend Chris Bessler, publisher through a company Keokee Publishing of a free, innocuous non-political magazine (really just an advertising vehicle) called Sandpoint Magazine, resurrected the free paper The Reader under a new LLC, and put Olson nominally in charge of it, but Bessler is the one who has been keeping it in business, (something Olson admits he was incapable of doing himself)[30], while hiding behind public-facing Olson.[31]

     Olson's defiance of the subpoena in its entirety was never motivated by any legitimate journalistic practice, merely Olson's own self-serving interest in a) avoiding being impeached at trial, b) avoiding having his declaration shown to be perjury, c) proving the truth of Olson's unethical behavior claimed in the call recording, d) punishing the Movant for perceived transgression of Olson's personal beliefs[32] via Olson's eager encouragement of and voluntary participation in the attempt by a handful of federal employees to punish political speech they don't like, using the power of the U.S. government to do so by novel use of an anti-fraud/theft statute in a way never done before and never intended.

     And Olson did so, believing ignorantly, that the first amendment provided him a universal loophole to do so, due to his self-appointment of the unregulated term "reporter", when in fact the first amendment is to protect speakers (like the Defendant) from abuse by

---

[30] Ex. P Excerpt of Defendant's WIN-006588 The Reader
[31] Ex. Q Plaintiff's USA_00005089 Olson-Bessler email, highlighted text (As revealed in discovery, Bessler later preemptively ended his hiding behind Olson, due to their shared paranoia that the Movant was about to publicly out their ongoing deception of the public and Bessler's advertisers.)
[32] Ex. I Defendant's WIN-002110, highlighted text

the government (such as this SLAPP suit), not Olson from a defendant's right to discovery that Olson is obligated to provide as a named and voluntary (non-subpoenaed) witness.

Olson has already <u>severely harmed the judicial process in this case</u>, with Defendant having had to meet a November 24 2023 filing deadline for his Opposition to Plaintiff's MSJ (which Plaintiff filed before the discovery deadline of Dec. 15) without the benefit of the discovery from Olson to which the Defense was legally entitled by September 26, 2023.

Now Movant must meet a January 16 deadline for filing his own MSJ, still bereft of the discovery of the subpoena which Olson defied and still defies. Add to that damage by Olson the consideration that Olson, with no education in journalism, has spared himself any and all of the average $47,000 to $63,000 expense of total tuition for a journalism degree.[33]

Add further that had the Movant been represented by counsel, he could have here moved to be reimbursed by Olson for the attorney's fees for the Motion to Compel and this Reply[34], necessitated by Olson's defiance of the subpoena through the Missoula Court (with the lack of that possibility here for a pro se Defendant no doubt factoring into Olson's continued willful defiance). Therefore, a monetary penalty of $5,000 to $10,000 payable to this Court should be considered a teachable moment for Olson, a necessary protection of the public from him moving forward, and a mere fraction of the $47,000 to $63,000 Olson otherwise would have paid for such lesson.

DATED this 27th day of December, 2023

Respectfully submitted,

---

[33] Ex. R page 2, highlighted text, US News & World Report
[34] *Francois*, 2012 WL 777273, at *3; *In re Faiella*, 2008 WL 1790410, at *5-8 (Bankr. D.N.J. Apr. 18, 2008*); Int'l Bhd. of Elec. Workers*, 2007 WL 622504, at *1, *5; *Tranchant v. Envt'l Monitoring Svc., Inc.,* 2001 WL 1160864, at *1-2 (E.D. La. Oct. 2, 2001); *Bulkma c Transport Co., Inc. v. Pappas*, 2001 WL 504839, at *3 (S.D.N.Y. May 11, 2001)).

SCOTT RHODES

By: *s/Scott Rhodes*
Pro Se Defendant

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(b)(3), the attached Reply is 10 pages long, excluding caption and certificates.

DATED this 27th day of December, 2023

By: *s/Scott Rhodes*
Pro Se Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of December 2023, a copy of the foregoing document was served on the following persons by the following means.

_____ CM/ECF

\_\_2,3\_\_ U.S. Mail

\_\_\_1\_\_ Overnight USPS

\_\_2,3\_\_ Email

1. Clerk of Court
Federal Court, District of Idaho
James A. McClure Federal Building and United States Courthouse
550 W. Fort St. Ste. 400
Boise, ID 83724

2. Wendy Olson
Stoel Rives LLP
101 S Capitol Blvd, Ste 1900
Boise ID 83702
wendy.olson@stoel.com

3. Michael J. Wadden
U.S. Attorney
U.S. Department of Justice
Civil Division
950 Pennsylvania Avenue, N.W.
Washington, DC 20530-0001
Michael.J.Wadden@usdoj.gov

By: *s/Scott Rhodes*
Pro Se Defendant

# EXHIBIT B

