UNITED STATES DISTRICT COURT
DISTRICT OF MONTANA
MISSOULA DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | **Case No. 21-110-M-DLC-KLD** |
| Plaintiff, | |
| v. | **PRO SE DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE MOTION FOR SUMMARY JUDGMENT** |
| SCOTT RHODES, | |
| Defendant. | |

## INTRODUCTION

Defense opposes Plaintiff's drastic remedy of a Motion to Strike Defendant's "Motion for Summary Judgment ("MSJ")" as grossly disproportionate to the Local Rule violation, and unnecessary. Defense only now upon Plaintiff's Motion to Strike filing learns his MSJ filed in good faith, January 16, 2024, was lately so, and done upon Defendant's reliance on page 2 of Court's Pre-Trial Order (Doc. 51) language seeming to allow until January 16, 2024 to do so where Order stated, (pg. 2) "Motions Deadline (fully briefed): January 16, 2024", based on a mistaken belief which Defendant previously communicated he held as early as October, to both this Court and Plaintiff without contradiction from either prior to Plaintiff's Motion to Strike (Doc. 92).

Directly related to the subject of Plaintiff's Motion to Strike, Defense has separately filed a more specific formal Motion before this Court (Doc. 93) pursuant to F.R.C.P. 6(b)(1)(B), but Defense will herein refute the specific claims of Plaintiff's Motion.

## BACKGROUND

Plaintiff's Complaint (two counts) alleges violation of The Truth in Caller ID Act, 47 U.S.C. § 227(e)(1) which says it is unlawful "to cause any caller identification service to knowingly transmit misleading or inaccurate caller

identification information with the intent to defraud, cause harm, or wrongfully obtain anything of value."

Count 1 of 2 seeks forfeiture of $2,000 per call of 4,959 phone calls (totaling to $9.918 million), alleged to have been made during a three-month period, Aug. 28, 2018 to Dec. 4, 2018 which played pre-recorded messages of a political nature.

Count 2 of 2 seeks an injunction, turning a future offense into a felony crime, and a mere false accusation of same, into justification for a search warrant.[1]

April 20, 2023 District Judge Dana Christensen entered Doc. 51, a schedule Order.

October 13, 2023, Plaintiff filed an MSJ that is still before the Court, prior to the end of discovery of December 15, 2023.

January 16, 2024, Defendant filed an MSJ on the belief it was the deadline specified in the Pre-Trial Scheduling Order (Doc. 51).

January 19, 2024 Plaintiff filed a Motion to Strike Defendant's MSJ for not being filed timely, citing a missed deadline as being December 26, 2023, a date which does not appear anywhere in the Order, and was not clear to pro se Defendant.

---

[1] Such as the admittedly false assertion by FCC lawyer Daniel Stepanicich of violations in his initial presentation to FCC Commissioners in his Notice of Apparent Liability, an assertion he was subsequently forced to omit in his Order of Forfeiture, which had it been presented to a judge with such an injunction in place, would have certainly led to an improper search warrant.

January 22, 2024 Defendant filed a Motion pursuant to F.R.C.P. 6(b)(1)(B) to belatedly extend the filing deadline to the date it was filed in good faith by Defendant, with no need to prejudice to Plaintiff.

Pro se Defendant hasn't made any other late filings, and the record shows he has made a consistent effort to conform to deadlines, the Rules of Procedure and other filing requirements.

## LEGAL STANDARD

*Ghazali v. Moran*, 46 F.3d 52 (9th Cir. 1995), "Before dismissing the action, the district court is required to weigh several factors: '(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions.' *Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir. 1986)."

Litigation in federal civil law should be decided on the merits and not on technicalities. *Rodriguez v. Village Green Realty, LLC*, 788 F.3d 31, 47 (2nd Cir. 2015) (citing *Cargill, Inc. v. Sears Petroleum & Transp. Corp*., 334 F. Supp. 2d 197, 247 (NDNY 2014) (there is a strong preference for resolving disputes on the merits).

## CONTEXT

For the sake of this Opposition, non-attorney pro se Defendant, due to lack of any experience to contrary, assumes as true Plaintiff's attorneys' assertion that the actual deadline for filing the MSJ was December 26, 2023, despite that date appearing nowhere in the scheduling order nor explicitly stated in the same-day phone conference that preceded it.

Further, he only now, upon Plaintiff's Dec. 19 filing a Motion to Strike Defendant's MSJ, understands that date is arrived at by subtracting 21 days from January 16 as being the period necessary to allow for the adverse party's Opposition.

## ARGUMENT

This Opposition cites *Ghazali v. Moran*, as does the Plaintiff's Motion, but Plaintiff's attempt to use *Ghazali* as justification is fundamentally flawed because in that case, which regarded a Motion to Dismiss, there had been no filing at all from the non-movant, and so *Ghazali* was premised on that "Under the Nevada local rule, "[t]he failure of the opposing party to file a memorandum of points and authorities in opposition to any motion shall constitute a consent to the granting of the motion."

The following 1-5 directly satisfy the five-point test called for by *Ghazali* quoted earlier in the Legal Standard section herein.

**1. The availability of less drastic measure.**  Defense has separately filed a Motion pursuant to FRCP 6(b)(1)(B) (Doc. 93) that allows for a less drastic measure than that of striking an entire substantive dispositive motion filed in good faith.

**2. No risk of prejudice to the Movant (Plaintiff).** Defendant agrees it would be wildly prejudicial to entertain a motion from one party while not allowing any response to it from the adverse party. The Court allowing Plaintiff an adequate response period to the Defense's filing of the Order's stated (but misunderstood) deadline of January 16, 2024 cures a prejudice to the Plaintiff.

But Court is also asked to recognize that if prejudice to Plaintiff were ever Plaintiff's genuine consideration, that Plaintiff had notice well in advance that Defendant was operating under the mistaken belief the filing deadline to be the January 16 2024 stated on page 2 of the Order, and Plaintiff raised no concern of prejudice with the Defendant during all that time despite admitted ongoing communication between the parties.

Rather, Plaintiff consciously chose to capitalize on the anticipated mistake by pro se Defendant, by trying to strike his filing on grounds of being filed late, or in the alternative, at least getting far more than the normal 21-day response period, given that in the event the late filing was ultimately allowed, Plaintiff might get not only the 21-day response period, but additional to that, all the time which would

derive from the period of filing a Motion to Strike, response (14 days), and reply (14 days), potentially giving the enormously staffed, enormously funded Department of Justice as much as 49 days compared to the normal 21 days, <u>plus</u> all the additional days it takes for the Court to finally adjudicate their motion.

Defense is nowhere suggesting that a motion, on good faith late filed, would be considered while disallowing any response from an opposing party, but the current circumstances were totally avoidable by Plaintiff merely raising to Defendant their now-claimed preeminent concern of prejudice, any time since October. Plaintiff cunningly chose not to do so, in order to seek an unneeded advantage in this already enormously lopsided case.

<u>*First*</u>, as far back as October 25th 2023 Plaintiff (and this Judge) had notice that the Defendant believed he had until the written deadline of January 16 2024 to file, where he wrote in Doc. 72, (pg. 3) "Further, J. Christensen's Order sets a Motions Deadline of January 16, 2024 indicating a common-sense recognition of a 30-day period necessary to allow for the digesting and incorporation of all discovery made up to Dec. 15 into said Motions." And pg. 6, "Defendant's Motion for Summary Judgment. Defendant intends to file his own Motion for Summary Judgment…"[2]

---

[2] It should also be noted that the Court also knew of that misunderstanding by Defendant, the Court must having read it, since Court subsequently ruled on that Motion.

_Second_, again on November 24 2023, another filing served on Plaintiff (Doc. 79), "Further, Defense intends to file its own MSJ, for which this Court has allowed until January 16, 2024, and for which Defense already gave notice to Court on Oct. 25, 2023."

_Third_, again on December 27 2023, a filing written by Defendant as Movant, served on Plaintiff, "Now Movant must meet a January 16 deadline for filing his own MSJ, still bereft of the discovery of the subpoena which Olson defied and still defies." (pg. 10).[3]

Plaintiff lawyers cunningly avoided raising to Defendant their supposed concern of prejudice from a Defense MSJ being filed after the unstated deadline of December 26, so Plaintiff's now-cries of prejudice, as the sole justification for the drastic action of entirely striking a dispositive motion, should be seen for what it is.

**3**. **The court's need to manage its docket.** Unless the pro se non-lawyer Defendant has misunderstood more of the Court's schedule Order, it seems that the next scheduled event involving the Court is not until April 11 2024 (final pretrial conference) such that one would hope the Court still has adequate time to review Defendant's MSJ and Plaintiff's anticipated Opposition at some time in between.

---

[3] EXHIBIT A, This was filed in the Idaho District Court but was served same day on this Plaintiff via email and USPS and which Plaintiff hasn't denied receiving.

**4. Public policy favoring disposition of cases on their merits**

and

**5. Public's interest in expeditious resolution of litigation**.  A look now at the Defense MSJ at issue will show that it is wholly meritorious and not frivolous, and it's certain that if not considered, all the same issues therein, all the same points of law, all the same evidence attached, will have to be dealt with anyway at a trial but at greater expense to the public and at much greater expense of time to the Court and Judge.

(Thus ends the satisfying of the 1-5 test of *Ghazali.)*

**6. Refutation of Plaintiff's claims in Motion to Strike.**

a) (pg. 3) "As the Court explained at the hearing and in the scheduling order, in order to be 'fully briefed' by January 16, 2024, Defendant's motion should have been filed at least three weeks prior, on December 26, 2023, to allow the Government 21 days to file an opposition."

That is a characteristically misleading overstatement from Plaintiff which falsely implies the date of December 26 2023 explicitly appeared in the Order or was explicitly stated by any party to the corresponding telephonic conference when it was neither stated nor appeared anywhere in the Order that followed same day.

b) Plaintiff's attempted use (pg. 3) of *Johnson v. Mammoth Recreations, Inc*., 975 F.2d at 608 is not analogous. In that instance, the Court decided against a

belated motion to amend because it came after the final pretrial conference had already taken place, "following a final pretrial conference" such that that schedule should only be modified if it were to "prevent manifest injustice".

That court also cited as significant to its decision that, "Johnson did not specifically request that the court modify its scheduling order; he only moved to amend his complaint." In this case, Defendant has separately filed Doc. 93 Motion to Extend Filing Deadline per F.R.C.P. 6(b)(1)(B) and did so post haste upon being informed by Plaintiff of his error by way of their Motion to Strike filing of Dec. 19.

c) Plaintiff (pg. 4) cites *Nelson v. Cap. One Fin. Corp*. requiring pro se parties to "...comply with Scheduling Order deadlines and Court rules." Defendant having formally filed a Motion to Extend the Filing Deadline per F.R.C.P. 6(b)(1)(B) is comporting with the rules, said rule existing for this very reason.

d) Plaintiff (pg. 4-5) claims two instances (d & e, this enumeration) in Defendant's MSJ as being "improper". One, the Plaintiff totally and egregiously falsely characterizes as "based on nonexistent evidence and conspiracy theories". In asking the Court for relief from the suborning of perjury by Plaintiff's lawyers, Defendant never used the word "conspiracy" and its introduction by Plaintiff is clearly intended to try and impugn the Defense.

Further, Defendant's MSJ (Doc. 86) cited attached Exhibits of <u>Plaintiff's own evidence</u>. Irrespective of the Court's decision on the suborning of perjury by Plaintiff, the Plaintiff clearly continues a pattern of misrepresentation to the Court by saying "nonexistant evidence". Strictly for the purpose of Court's judgment of the falsity of that claim in Plaintiff's Motion, Defendant points Court to that specific content of the MSJ (Doc. 86), bottom page 16, starting with "…is perjury that was knowingly suborned by the government's lawyers…" through the first four lines of pg. 18, taking note of the content's reference to specific attached Exhibits that are Plaintiff's own evidence produced in discovery.

Lastly, it's highly relevant since it's regarding a perjurious declaration by Plaintiff's witness that they have submitted into evidence and are relying on in their own MSJ that is still before the Court, and the obviously falsity of which is being relied upon in Defendant's MSJ. So Plaintiff's suggestion that, in their forthcoming Opposition to Defendant's MSJ, that it's improper for Plaintiff to feel compelled to address their problematic issue of a false declaration being their key piece of "evidence" should be seen as spurious.

e) Plaintiff egregiously and falsely characterizes a point of Defendant's motion thusly, "…<u>sham</u> affidavit that tries to walk back key portions of Rhodes' own damaging deposition testimony." (emp. added) Again, for the purpose of this Opposition, Defense directs court to that specific content, a single paragraph, to see

Plaintiff's falsehood, Doc. 86, bottom pg. 6 through top of pg. 7, and the short affidavit itself attached there as Exhibit D, Declaration of Defendant 2.

First, the Defendant's affidavit is not a "sham". It is a sworn affidavit that both references and is backed up by citations of Plaintiff's own evidence. Next, it doesn't "walk back" anything from the deposition. Rather, it provides the context that Plaintiff hid from this Court when invoking it in its MSJ (Doc. 64) as something it wasn't, namely, that Defendant's deposition answer was to a (probably intentionally) non-specific question which Plaintiff's MSJ misrepresented to the Court as being specific to the events of the Complaint, and therefore it is entirely proper to include in Defense's MSJ (Doc. 86).

Further, the deposition answer being addressed was not at all "damaging" as Plaintiff Motion claims. It could only be so without the context which Plaintiff hid from the Court, and which Defendant's MSJ then supplied by way of that one paragraph plus the affidavit, and the cited evidence from Plaintiff's own disclosures.

## CONCLUSION

Defendant directs court to the directly related formal Motion per F.R.C.P. 6(b)(1)(B), (Doc. 93) as the equitable and nonprejudical alternative to Plaintiff's seeking the drastic action of striking an entire critical dispositive Motion for

Summary Judgment, which can then be denied while satisfying the needs of the Plaintiff and justice both.

DATED this 22nd day of January, 2024

Respectfully submitted,

SCOTT RHODES
By: *s/Scott Rhodes*
Pro Se Defendant

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d)(2)(E), the attached Opposition to Plaintiff's Motion is proportionately spaced, has a typeface of 14 points, and contains 2,488 words out of the 6,500 allowed, excluding caption and certificates.

DATED this 22nd day of January, 2024

By: *s/Scott Rhodes*
Pro Se Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of January, 2024, I electronically filed the forgoing document with the Clerk of Court using the CM/ECF system which will send notification of the filing to the Plaintiff.

By: *s/Scott Rhodes*
Pro Se Defendant

# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO
NORTHERN DIVISION

UNITED STATES OF AMERICA,

  Plaintiff,

  v.

SCOTT RHODES,

  Defendant.

**Case No. 1:23-mc-00304-BLW**

**PRO SE DEFENDANT'S REPLY IN
SUPPORT OF MOTION TO
COMPEL AND REQUEST FOR
SANCTIONS**

**Exhibits to Reply to Opposition to Motion to Compel and for Sanctions,**

**F Through U, Filed Conventionally on DVD**

| Ex. | Description | |
|---|---|---|
| F | Plaintiff's USA_00000193 Olson-DOJ email, highlighted text | PDF |
| G | Plaintiff's USA_00004863 | PDF |
| H | Excerpt of Plaintiff's USA_00012782 Request for Admission | PDF |
| I | Defendant's WIN-002110, highlighted text | PDF |
| J | Compendium of Olson-DOJ emails | PDF |
| K | Plaintiff's Request for Admission excerpt | PDF |
| L | Plaintiff's USA_00004885 Ben Olson child pornography video | **MP4** |
| M | Plaintiff's USA_00004619 Ben Olson boycott audio | **MP3** |
| N | Excerpt of Defendant's WIN-004533 The Reader article | PDF |
| O | Defendant's WIN-08020 The Inlander article | PDF |
| P | Defendant's WIN-006588 The Reader | PDF |
| Q | Plaintiff's USA_00005089 Olson-Bessler email | PDF |
| R | US News & World Report article | PDF |
| S | Plaintiff's USA_00005122 Olson-Bessler email | PDF |
| T | Plaintiff's USA_00005165 Olson-Wilson email | PDF |
| U | Plaintiff's USA_00005124, USA_00005144, USA_00005165 | PDF |

Objections made by lawyer Wendy Olson in her Response to Motion to Compel and for Sanctions should not even be considered by the Court, since they were all waived by her failure to respond in the time period required by FRCP 45(d)(2)(B) of 14 days after service of the subpoena, there being no response from her or her client to Movant prior to September 22, 2023 regarding the subpoena served on September 5, 2023.

However, Movant will be conservative by addressing them herein and showing why they fail and further, are desperate and spurious.

## OVERVIEW

**1. No immunity.** There is no Idaho State or federal law that grants Ben Olson immunity from turning over the subpoenaed documents.

**2. Anonymous sources not at issue.**

**3. No overbreadth.** The items specified by the subpoena are not even close to the boilerplate claim of overbreadth by lawyer Wendy Olson.

**4. Not harassing.** The items specified by the subpoena don't present any hardship, and are not even close to the boilerplate claim of harassment by lawyer Wendy Olson.

**5. None of Olson's three cited case decisions apply here.**

**6. Need for sanctions underscored.** Ben Olson's willful defiance of the *entirety* of the subpoena are for entirely self-serving reasons, and underscores the need of a teachable moment for presumptive reporter Ben Olson in the form of sanctions, namely a period of custody and/or payment of a fine to this Court.

1

## ARGUMENT

**1. No immunity.** Ben Olson has no privilege in this matter, his total lack of education or qualifications as a reporter notwithstanding (dealt with elsewhere herein as relevant to the need for sanctions but upon which this section on lack of immunity does not depend).

Decisions of SCOTUS and Idaho Supreme Court (ISC)[1] have held society does not grant a "newsman's privilege" for the unregulated position of "reporter", and that when courts are allowed to engage in some judicial scrutiny of such a disputed privilege claim, it is in instances that don't exist in this case, namely disclosure of the identity of a confidential source or when a purported reporter is the defendant.

Further, any such spurious claim of privilege has been waived by Ben Olson's copious voluntary disclosures to the Plaintiff related to the specific matters identified in the subpoena, and expressed willingness to produce more of same, "I look forward to sharing <u>whatever</u> information I can to help the case."[2] [3] (*emp. added*) Olson wants this court to set a terrifying and dystopian precedent that the self-appointed title of "reporter" entitles him to a special societal status to voluntarily disclose only those claims of his, or facts, which he deems detrimental to the Defendant he seeks to punish via the government's lawsuit[4], and not any countervailing facts that are exculpatory or could lead to same, which Olson seeks to suppress from coming to light for consideration by the adjudicating court and jury, as

---

[1] *Sierra Life Ins. Co. v. Magic Valley Newspapers* (ISC, 1980), *Marks v. Vehlow* (ISC, 1983), *In re Wright* (ISC, 1985).
[2] Ex. F Plaintiff's USA_00000193 Olson-DOJ email, highlighted text
[3] Ex. G Plaintiff's USA_00004863, page 4, highlighted text
[4] Ex. F Plaintiff's USA_00000193 Olson-DOJ email, highlighted text

well as that which will impeach Olson's expected testimony, and that will reveal he has already committed perjury in his declaration to aid the government.

    **2. Anonymous sources not at issue.** The subpoena requires production from Ben Olson of contemporaneous notes and his surreptitious audio recordings of individuals spoken to in the course of his "asking questions" about the Movant. Olson has already named people in his free paper and/or in his written communications to the government.[5] An exception claimed by lawyer Olson is the Movant's landlord, who is not anonymous here.

    The Movant obviously already knows who his own landlord was, Vance Geisinger of Bonner County, ID (whom Movant personally knew, and with whom he was on good terms). Further, Olson already identified him to the government in all but name, by writing to the Plaintiff that the individual is the Movant's landlord and made known to Olson looking up the <u>public</u> record of the property ownership,[6] the address of which is part of the record.[7]

    Further, even if Geisinger's name weren't already known, as it is per above, Olson waived any claim to immunity from disclosure writing to Plaintiff thusly, "…a man who I will name if compelled to…"[8] Olson was subsequently compelled via a subpoena, which he then defied in its entirety.

    Next, Geisinger is not a "source". Olson does not attribute anything he ever published about the Movant to his landlord, (nor to <u>any</u> "confidential source(s)"), presumably because

---

[5] Ex. G. Plaintiff's USA_00004863 Purported timeline voluntarily written and provided by Olson to Plaintiff, highlighted text throughout.
[6] *Id.* page 4, highlighted
[7] Ex. H Excerpt of Plaintiff's USA_00012782 Request for Admission
[8] Ex. G Plaintiff's USA_00004863, page 4, highlighted

Movant's landlord had nothing bad to say, Olson's only real goal with his publishing, i.e. punishment for transgressing Olson's beliefs,[9] [10] not actual reporting.

Lastly, Ben Olson already volunteered to give his recordings of conversations with Geisinger to the government if they believed it necessary to win the lawsuit that Olson zealously wants to prevail, "I have this call recorded…I will only share it if it's necessary…"[11] It is just one of the parties, the Defendant, to which Olson wants to avoid giving recordings and other information because 1) Olson knows it to be either exculpatory information or having the potential to lead to same 2) will lead to the truth of the claim about Olson which comprises one of the underlying events, that Olson threatened to write about Movant's landlord unless he evicted Movant.[12]

**3. No overbreadth.** All of the subpoena's specified items are related to the Plaintiff's legal theory of the case that is supposed to go to "intent to cause harm", or individuals Olson has already named to the government or in publishing as his having asked questions about the Movant he'd targeted for punishment for perceived transgressions of Olson's beliefs[13] [14] shared by co-owner Bessler[15], or recordings made by Olson of any interactions with Movant (of which Movant saw Olson making an audio recording) with such account already being relied on in his voluntary declaration to Plaintiff and again in Wendy Olson's Opposition to

---

[9] Ex. I Defendant's WIN-002110, highlighted text
[10] Ex. S. Olson-Bessler email, highlighted text
[11] Ex. G Plaintiff's USA_00004863, page 7, para. 1, highlighted text
[12] The <u>truth</u> of the content of the call recordings for which a government forfeiture is being sought, is relevant since proving the identity of the caller is not enough by itself. The govt's theory of "intent to cause harm" must also be proven, where content that one could presume to be false being weighed differently in that regard than that which can be shown true.
[13] Ex. I Defendant's WIN-002110, highlighted text
[14] Ex. T Plaintiff's USA_00005165 Olson-Wilson email
[15] Ex. S Plaintiff's USA_00005122 Olson-Bessler email, page 2, highlighted text

this very Motion, and things that may be exculpatory for the Defense or lead to same[16], as clearly allowed by the FRCP and precedent cited in Motion.

To this end, Movant directs court to even the mere subset of the whole body of voluntary disclosures included here as exhibits which Olson has already made in his desire to aid the government, so this Court can compare it to the legitimate items required by the subpoena that Olson defied.

It is contrary to the interest of justice, and is prejudicial to the Movant, to set the bar so high (as lawyer Olson implies) as needing to provide hostile Ben Olson with a detailed roadmap of the Defense strategy so that Olson can know exactly what pieces of evidence to illegally withhold, or even destroy, in order for Olson to avoid being impeached on the stand at trial, as well as be shown to have already committed perjury with his declaration to this Court, as well as his other voluntary declaration for Plaintiff's evidence.

Further, lawyer Olson's argument that the subpoenaed materials aren't necessary because the Plaintiff has already made discovery to the Movant is irrelevant and did nothing to contradict the dynamic already outlined in the Motion, namely, that Ben Olson is an eager voluntarily participant in this case with a documented desire to exact harm to the Movant, something Olson tried himself but learned he hadn't legal cause to do.[17] As such, the Plaintiff never needed to subpoena Olson which would have yielded the relevant items in their entirety, which Plaintiff would have been obligated to share with the Defense, a fact not refuted by lawyer Olson. Further Ben Olson makes reference to his sending specific

---

[16] Ex. U Plaintiff's USA_00005124, USA_00005144, USA_00005165
[17] Ex. G Plaintiff's USA_00004863, page 8, final para., highlighted text

items to the government that Plaintiff did not share with Defense per its discovery obligation, if they received them as Olson intended.[18] [19]

Therefore, hostile Olson has naturally only ever provided Plaintiff with accounts or claims he perceives detrimental to the Defendant, while withholding that which is exculpatory or might lead to same (and certainly that which would impeach Olson's expected testimony, and also prove Olson's declaration as perjury). Plaintiff has exploited that fortuitous dynamic and will continue to.

And those judicious disclosures by Olson to Plaintiff were made interspersed with numerous undocumented phone conversations between Olson and government to coordinate their joint strategy, as shown by their email correspondence.[20]

**4. Not harassing.** Lawyer Wendy Olson either fails to understand the Plaintiff's case, or pretends not to, when she argues to this Court that the only issue in the case is the disputed fact of if the Movant made the calls advocating boycott of Olson's free paper as alleged by Plaintiff, and that therefore anything that doesn't speak directly to that has to be overbroad, and therefore harassment.

The government must also prove the calls were made with "intent to cause harm"[21] but it has no statements either by Defendant, nor by others about Defendant, of any "intent to cause harm", and so they are desperately trying to use Olson's false narrative of harassment by Movant underline for which there is no source except Olson himself, and for which

---

[18] Ex. G Plaintiff's USA_00004863 page 3, first para. "(DVDs containing surveillance video…are included in my folder)."
[19] *Id.*, page 9, first para.  "I took notes of the conversation, which you can read in the file marked Oct. 12, 2018".
[20] Ex. J Compendium of Olson-DOJ emails
[21] Otherwise a prohibited argument based solely on the call's content for a boycott of Olson, per *NAACP v. Claiborne Hardware*, or disparagement of the semi-public figure Olson per *Hustler Magazine, Inc. v. Falwell*, or any claimed "emotional harm" from the political nature of the call recording, per *Snyder v. Phelps.*

there is zero evidence (even after all Plaintiff's discovery), contrary to Olson's combinations of outright claims or mere insinuations to both the public and Plaintiff.

For example, Plaintiff's Request for Admission[22] shows its intent to claim Movant posted online a video of an advertiser's allegation that Ben Olson sent child pornography to him and at least one other advertiser in his free weekly paper.[23] Movant would agree with lawyer Wendy Olson the subject <u>should</u> be irrelevant to the political phone call recording underlying the complaint, namely calling for the boycott of Olson's free weekly paper while also stating semi-public figure Ben Olson has no education as a reporter and is unethical, having blackmailed a local business owner that Olson would bring public attention to him by writing about him if he did not evict his tenant (ostensibly the Movant).[24]

However, the Plaintiff's <u>intent</u> to use a posting of the Ben Olson child pornography video for showing "intent to cause harm" for the earlier political phone calls has made that video relevant, so therefore, other postings of that video, the dates (before or after) that they were posted, and what Olson claimed at that time in his emails to the video platform services about the source of the video postings are obviously appropriate subject matter for the subpoena, and made necessary due to the Plaintiff's intended use of the subject.[25]

**5. None of Olson's three cited case decisions apply here.** Olson's use of *Shoen v. Shoen* is especially perverse given its decision in reversing a contempt finding was predicated on the consideration that a compelled disclosure "…harms the press ability to

---

[22] Ex. K Plaintiff's Request for Admission excerpt
[23] Ex. L Plaintiff's USA_00004885 Ben Olson child pornography video .mp4 file
[24] Ex. M Plaintiff's USA_00004619 Ben Olson boycott audio .mp3 file
[25] June 24, 2023, Defense moved the Court to rule the topic of Ben Olson's sharing of child pornography as inadmissible for irrelevance, due to Defense's lack of resources to thoroughly investigate the full complexity of the pornography claims by the discovery deadline (Doc. 53, pg. 7). Court denied the Motion. (Doc. 76).

gather information by damaging confidential sources' trust in the press' capacity to keep secrets and, in a broader sense, by converting the press…into an investigative arm of prosecutors and the courts."

In this case, Olson is *already* an eager, voluntary, "investigative arm of the prosecutors (government) and the courts", both in the multitude of instances covered herein and its exhibits, and Olson's written statements of willingness to give more to the Plaintiff.

*Farr v. Pitchess*, was specifically about disclosure of the identity of an anonymous source, and one explicitly promised confidentiality. It's already been dealt with herein that there is no confidential source issue in this case. Court should also notice that lawyer Olson's proffered sworn declaration of her client Olson lacks any claim that he made any such promise to anyone, at any time, let alone the Movant's landlord, Vance Geisinger, who is not anonymous, again for the reasons given herein.  The directly preceding also invalidates lawyer Olson's attempt to use *In re Wright*.

**6. Need for sanctions underscored.** A course of education in journalism includes journalistic ethics and relevant law. Ben Olson never had any such lessons as he admits to lacking any education in journalism[26] and only a year-and-a-half of college[27], and it is in society's interest to provide such lesson to Olson now by way of sanctions.

Olson is a band musician and bartender[28] who was handed a job writing content for his grade school buddy's local free weekly called The Reader, despite no journalism qualifications.[29] That friend closed the paper and moved away, putting Olson out of a job.

---

[26] Ex. N. Excerpt of Defendant's WIN-004533 The Reader article
[27] *Ibid.*
[28] Ex. O Defendant's WIN-08020 The Inlander article
[29] Ex. N. Excerpt of Defendant's WIN-004533 The Reader article

Two years later in 2015, Olson's friend Chris Bessler, publisher through a company Keokee Publishing of a free, innocuous non-political magazine (really just an advertising vehicle) called Sandpoint Magazine, resurrected the free paper The Reader under a new LLC, and put Olson nominally in charge of it, but Bessler is the one who has been keeping it in business, (something Olson admits he was incapable of doing himself)[30], while hiding behind public-facing Olson.[31]

Olson's defiance of the subpoena in its entirety was never motivated by any legitimate journalistic practice, merely Olson's own self-serving interest in a) avoiding being impeached at trial, b) avoiding having his declaration shown to be perjury, c) proving the truth of Olson's unethical behavior claimed in the call recording, d) punishing the Movant for perceived transgression of Olson's personal beliefs[32] via Olson's eager encouragement of and voluntary participation in the attempt by a handful of federal employees to punish political speech they don't like, using the power of the U.S. government to do so by novel use of an anti-fraud/theft statute in a way never done before and never intended.

And Olson did so, believing ignorantly, that the first amendment provided him a universal loophole to do so, due to his self-appointment of the unregulated term "reporter", when in fact the first amendment is to protect speakers (like the Defendant) from abuse by

---

[30] Ex. P Excerpt of Defendant's WIN-006588 The Reader
[31] Ex. Q Plaintiff's USA_00005089 Olson-Bessler email, highlighted text (As revealed in discovery, Bessler later preemptively ended his hiding behind Olson, due to their shared paranoia that the Movant was about to publicly out their ongoing deception of the public and Bessler's advertisers.
[32] Ex. I Defendant's WIN-002110, highlighted text

the government (such as this SLAPP suit), not Olson from a defendant's right to discovery that Olson is obligated to provide as a named and voluntary (non-subpoenaed) witness.

Olson has already severely harmed the judicial process in this case, with Defendant having had to meet a November 24 2023 filing deadline for his Opposition to Plaintiff's MSJ (which Plaintiff filed before the discovery deadline of Dec. 15) without the benefit of the discovery from Olson to which the Defense was legally entitled by September 26, 2023.

Now Movant must meet a January 16 deadline for filing his own MSJ, still bereft of the discovery of the subpoena which Olson defied and still defies. Add to that damage by Olson the consideration that Olson, with no education in journalism, has spared himself any and all of the average $47,000 to $63,000 expense of total tuition for a journalism degree.[33]

Add further that had the Movant been represented by counsel, he could have here moved to be reimbursed by Olson for the attorney's fees for the Motion to Compel and this Reply[34], necessitated by Olson's defiance of the subpoena through the Missoula Court (with the lack of that possibility here for a pro se Defendant no doubt factoring into Olson's continued willful defiance). Therefore, a monetary penalty of $5,000 to $10,000 payable to this Court should be considered a teachable moment for Olson, a necessary protection of the public from him moving forward, and a mere fraction of the $47,000 to $63,000 Olson otherwise would have paid for such lesson.

DATED this 27th day of December, 2023

Respectfully submitted,

---

[33] Ex. R page 2, highlighted text, US News & World Report
[34] *Francois*, 2012 WL 777273, at *3; *In re Faiella*, 2008 WL 1790410, at *5-8 (Bankr. D.N.J. Apr. 18, 2008*); Int'l Bhd. of Elec. Workers*, 2007 WL 622504, at *1, *5; *Tranchant v. Envt'l Monitoring Svc., Inc.,* 2001 WL 1160864, at *1-2 (E.D. La. Oct. 2, 2001); *Bulkma c Transport Co., Inc. v. Pappas*, 2001 WL 504839, at *3 (S.D.N.Y. May 11, 2001)).

SCOTT RHODES

By: *s/Scott Rhodes*
Pro Se Defendant

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(b)(3), the attached Reply is 10 pages long, excluding caption and certificates.

DATED this 27th day of December, 2023

By: *s/Scott Rhodes*
Pro Se Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of December 2023, a copy of the foregoing document was served on the following persons by the following means.

_____ CM/ECF

\_\_2,3\_\_ U.S. Mail

\_\_\_1\_\_ Overnight USPS

\_\_2,3\_\_ Email

1. Clerk of Court
Federal Court, District of Idaho
James A. McClure Federal Building and United States Courthouse
550 W. Fort St. Ste. 400
Boise, ID 83724

2. Wendy Olson
Stoel Rives LLP
101 S Capitol Blvd, Ste 1900
Boise ID 83702
wendy.olson@stoel.com

3. Michael J. Wadden
U.S. Attorney
U.S. Department of Justice
Civil Division
950 Pennsylvania Avenue, N.W.
Washington, DC 20530-0001
Michael.J.Wadden@usdoj.gov

By: *s/Scott Rhodes*
Pro Se Defendant