IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>SCOTT RHODES,<br><br>Defendant. | CV 21–110–M–DLC<br><br><br>ORDER |

On February 20, 2024, the Court granted the United States' Motion for Partial Summary Judgment, finding Defendant Scott Rhodes liable for the 4,959 illegally spoofed calls identified in the FCC's Forfeiture Order.[1]  (Doc. 104.)  The Court also granted the United States' request for injunctive relief and issued an Order of Permanent Injunction directing Rhodes to comply with the Telephone Consumer Protection Act and Truth in Caller ID Act and imposing compliance reporting requirements on Rhodes.  (Doc. 105.)  Although the United States did not move for summary judgment on the sole remaining issue—the amount of forfeiture imposed—the Court noted that this issue may also be appropriately resolved on summary judgment.  (Doc. 104 at 34–37.)  Consistent with Federal Rule of Civil Procedure 56(f)(3), the Court notified the parties that there appears to be no

---

[1] For a detailed discussion on the factual and procedural background of this case as well as the Court's *de novo* findings regarding liability, see the Court's Order granting partial summary judgment dated February 20, 2024. (Doc. 104.)

1

genuine dispute regarding the forfeiture amount and provided the parties with an opportunity to respond. (*Id.* at 37, 40.) The Court also requested that the parties address whether Rhodes has a right to a jury trial on the issue of the forfeiture amount should the Court ultimately decline to grant summary judgment. (*Id.* at 37.)

The United States filed its Brief Regarding Forfeiture Penalty on March 1, 2024. (Doc. 108.) Rhodes filed his response on March 15, 2024. (Doc. 115.) Rhodes has also filed a motion to reconsider disqualification (Doc. 109) and a motion to reconsider summary judgment (Doc. 110). The United States has also filed a Motion in Limine. (Doc. 106.)

## LEGAL STANDARD

This Court can resolve an issue summarily if "there is no genuine dispute as to any material fact" and the prevailing party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is genuine when there is sufficient evidence for a reasonable factfinder to return a verdict for the other party. *Id.* If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue of fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In meeting this burden, conclusory assertions are insufficient, and "non-speculative evidence of specific facts" is required. *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1061 (9th Cir. 2011). In establishing facts, the parties may rely on evidence in an inadmissible form as long as the evidence could be introduced in an admissible form at trial. *See Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (holding that "[a]t the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents"); *see also JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1110 (9th Cir. 2016) (stating that "at summary judgment a district court may consider hearsay evidence submitted in an inadmissible form, so long as the underlying evidence could be provided in an admissible form at trial").

## DISCUSSION

### I. Forfeiture Amount

Having found that Rhodes is liable for the 4,959 violations of 47 U.S.C. § 227(e) alleged in the Complaint and Forfeiture Order, the sole remaining issue is whether the forfeiture amount is appropriate. The FCC has established base forfeiture sums for various violations of its regulations, the lowest of which is $1,000 per violation. *See* 47 C.F.R. § 1.80(b)(11). In determining the amount of forfeiture to impose for violations of § 227(e), the FCC begins with a base forfeiture amount and may adjust upward or downward depending on "the nature,

circumstances, extent, and gravity of the violation and, with respect to the violator, the degree of culpability, any history of prior offenses, ability to pay, and such other matters as justice may require." 47 U.S.C. § 503(b)(2)(E); *see also* 47 C.F.R. § 1.80(b)(11). The forfeiture amount is capped at $11,766 for each violation. *See* 47 U.S.C. § 227(e)(5)(A)(i); 47 C.F.R. § 1.80(b); Annual Adjustment of Civil Monetary Penalties to Reflect Inflation, 85 Fed. Reg. 2318, 2319 (Jan. 15, 2020).

The Ninth Circuit has explained that "[r]eview of a forfeiture amount is limited to whether it reflects a reasonable application of [47 U.S.C. § 503] and the 'adjustment criteria' set out in [47 C.F.R. § 1.80]." *United States v. Hodson Broad.*, 666 F. App'x 624, 627–28 (9th Cir. 2016). In *Hodson*, the Ninth Circuit upheld the district court's grant of summary judgment as to the forfeiture amount, explaining that "[t]he FCC noted some material supporting [the defendant's] claimed inability to pay—the only downward criteria he argued—but also found that any consequent reduction was offset by multiple upward adjustments for intentional and repeated violations." *Id.* at 628. The court concluded that "[t]he FCC's decision not to adjust downward was reasonable and not an abuse of discretion." *Id.* Similarly, other courts have held that an FCC forfeiture penalty should be upheld where the amount is reasonable and consistent with the relevant guidelines. *United States v. Frank*, 487 F. App'x 931, 933 (5th Cir. 2012) (affirming the district court's conclusion that "the amount of the [FCC's] forfeiture

order was not unreasonably high" in light of the facts); *United States v. Neely*, 595 F. Supp. 2d 662, 667 (D.S.C. 2009) (upholding the FCC's forfeiture penalty because it was "within the agency's guidelines and reasonable on its face").

There are no genuine issues of material fact in the record before the Court that would preclude summary judgment on this issue. Here, the FCC started with a base forfeiture of $1,000 per violation then determined that an upward adjustment was warranted after considering the relevant factors. (Doc. 1-1 at 10.) The FCC found that Rhodes "designed his spoofed calling campaigns to be as disruptive as possible," (*id.* at 19), and concluded that Rhodes was "highly culpable and unlikely to be deterred absent a substantial penalty," (*id.* at 20). Accordingly, the FCC applied a 100% upward adjustment to $2,000 per violation, for a total forfeiture penalty of $9,918,000. (Doc. 1-3 at 26.) During the FCC proceedings, Rhodes did not contest the basis for the forfeiture calculation nor assert an inability to pay the proposed forfeiture amount. (*See* Doc. 1-2.)

In his response in opposition to summary judgment on this issue, Rhodes attempts to relitigate issues already resolved in this Court's previous order on summary judgment, argues that there was no actual harm caused, claims an inability to pay, and argues that the forfeiture penalty violates the Eighth Amendment's Excessive Fines Clause. (*See* Doc. 115.) Rhodes concludes by

requesting that, if forfeiture is to be imposed, the Court impose a forfeiture penalty of $1.  (*Id.* at 31.)

First, the Court's Order granting summary judgment confirmed *de novo* the relevant facts relied upon by the FCC in setting the forfeiture penalty.  Rhodes's attempt to relitigate those issues now is procedurally improper.  Second, while actual harm may be relevant in the FCC's determination of a forfeiture penalty, it is not a prerequisite to imposing forfeiture.  Third, while Rhodes now contends that he is unable to pay the forfeiture amount, there is no evidence in the record, other than Rhodes's own self-serving statements, to support this contention.  Moreover, ability to pay is only one factor to be considered when determining an appropriate forfeiture amount and, in this case, the FCC imposed a penalty that was well below the maximum potential penalty of $11,766 per violation.

Finally, regarding Rhodes's Eighth Amendment argument, the Court understands Rhodes to be raising an as-applied, rather than facial, challenge to the imposition of the FCC's forfeiture penalty.  The Eighth Amendment states that "excessive bail shall not be required, nor excessive fines imposed."  U.S. Const. amend. VIII.  "[A] punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense."  *United States v. Bajakajian*, 524 U.S. 321, 334 (1998).  This analysis essentially requires the Court to consider whether the FCC's forfeiture penalty is reasonable and with the

relevant regulatory bounds, which is the standard articulated by the Ninth Circuit in *Hodson Broadcasting*. Thus, where the civil forfeiture is reasonable and consistent with the relevant statutory and regulatory guidelines, it is not excessive under the Eighth Amendment. Other Courts have applied similar standards in the face of Eighth Amendment challenges to statutory civil penalties. *See Grid Radio v. FCC*, 278 F.3d 1314, 1322 (D.C. Cir. 2002) (upholding an FFC imposed civil penalty against an Eighth Amendment challenge because "the amount [was] neither indefinite nor unlimited, nor [did] it seem excessive in view of [the defendant's] continued and willful violation of the licensing requirement"); *Pharaon v. Bd. of Governors of the Fed. Reserve Sys.*, 135 F.3d 148, 157 (1998) (rejecting an Eighth Amendment excessive fines challenge where "the penalty [was] proportional to [plaintiff's] violation and well below the statutory maximum"); *Duckworth v. United States*, 418 F. App'x 2, 4 (D.C. Cir. 2011) (same).

Accordingly, based on the arguments and evidence before the Court and the *de novo* findings of fact established in the Court's previous Order on summary judgment (Doc. 104), the Court finds that there is no genuine dispute that the forfeiture penalty of $9,918,000 imposed by the FCC in its Forfeiture Order is reasonable and consistent with the relevant statutory and regulatory guidelines.

The Court therefore grants summary judgment in favor of the United States on the issue of the forfeiture amount.

## II.   Motions to Reconsider

Following the entry of the Court's Order on summary judgment, Rhodes filed two separate motions for reconsideration.  First, Rhodes seeks to have the Court reconsider disqualification of the undersigned on the basis that the undersigned is biased, prejudiced, and partial toward the United States.  (Doc. 109.)  The Court previously denied Rhodes's motion for disqualification where he raised this same argument.  (Doc. 39 at 4–7.)  Second, Rhodes seeks to have the Court reconsider its summary judgment ruling regarding Rhodes's liability.  (Doc. 110.)  In both motions, Rhodes argues that reconsideration is warranted under Federal Rule of Civil Procedure 59(e).

Rule 59(e) states that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment."  This rule applies only to final appealable orders.  *United States v. Martin*, 226 F.3d 1042, 1048 (9th Cir. 2000) ("Rule 59(e) applies only to motions to alter or amend 'a judgment'. A 'judgment' is defined by Rule 54 of the Federal Rules of Civil Procedure as 'any order from which an appeal lies,' Fed. R. Civ. P. 54, in other words, a *final* order.")  Furthermore, this Court's local rules require that a party must first seek leave to

file a motion for reconsideration of an interlocutory order and specify how at least one of the following threshold criteria are met:

>(1)(A) the facts or applicable law are materially different from the facts or applicable law that the parties presented to the court before entry of the order for which reconsideration is sought, *and*
>
>(B) despite the exercise of reasonable diligence, the party applying for reconsideration did not know such fact or law before entry of the order;
>
>*or*
>
>(2) new material facts arose or a change of law occurred after entry of the order.

D. Mont. L.R. Civ. 7.3(a)–(b) (Dec. 1, 2023).  The rule goes on to state that "[n]o motion for leave to file a motion for reconsideration of an interlocutory order may repeat any oral or written argument made by the applying party before entry of the order" and that a "[v]iolation of this restriction subjects the offending party to appropriate sanctions."  L.R. Civ. 7.3(c).  The local rules also state more broadly that "[a] Judge may impose sanctions for violations of these rules."  L.R. Civ. 1.1(d); *see also* L.R. Civ. 83.8(a) ("A self-represented person is bound by the federal rules and all applicable local rules. Sanctions, including but not limited to entry of default judgment or dismissal with prejudice, may be imposed for failure to comply with local rules.").

9

Rhodes's motions are procedurally improper under both Rule 59(e) and L.R. Civ. 7.3. First, his motion to reconsider disqualification pertains to an interlocutory order, so Rule 59(e) does not apply, and he has failed to first seek leave to file the motion as required by the local rules. Second, the Court's order granting partial summary judgment is not a final appealable order and, therefore, Rule 59(e) is inapplicable. *Jones v. McDaniel*, 717 F.3d 1062, 1068 (9th Cir. 2013) ("Orders granting partial summary judgment 'are not final appealable orders.'"). And again, Rhodes did not first seek leave to file this motion.

Even construing these motions as motions for leave to file, neither motion puts forth the requisite showing under L.R. Civ. 7.3 to warrant reconsideration. In fact, Rhodes repeats many of the arguments already presented to, and rejected by, this Court. At best, Rhodes reframes arguments and evidence already presented. For example, Rhodes argues that disqualification is necessary due to the undersigned's use of the term "neo-Nazi" and description of anti-Semitic speech as "a morally and factually indefensible worldview." (Doc. 109 at 9.) Rhodes made this *exact* same argument in his first motion for disqualification. (Doc. 31 at 11–12.) As another example, in Rhodes's motion to reconsider summary judgment, he argues that he cannot be liable under the Truth in Caller ID Act because the United States has not shown that he knew the identity of the call recipients or their "personal characteristics." (Doc. 111 at 28.) Rhodes made this same argument in

10

his brief in opposition to summary judgment and the Court found it unpersuasive. (Doc. 79 at 25.)

Rhodes has been warned on numerous occasions that his status as a pro se litigant does not shield him from the requirements of federal and local rules and that the failure to comply with these rules or the Court's orders may result in sanctions. (Docs. 22 at 3; 99 at 2.) Warnings no longer appear to be sufficient. Thus, pursuant L.R. Civ. 1.1(d), 7.3(c), and 83.8(a), the Court imposes the following sanction: any filing that fails to comply with the Federal Rules of Civil Procedure, this Court's local rules, or the Court's orders will be stricken without review.

## CONCLUSION

The Court finds that there is no genuine dispute precluding summary judgment on the forfeiture amount imposed in the FCC's Forfeiture Order. Having already found Rhodes liable for the violations outlined in the Forfeiture Order and having granted the United States' request for injunctive relief, there are no issues remaining to be resolved. Judgment shall therefore be entered in favor of the United States as to all claims.

Accordingly, IT IS ORDERED that the Court GRANTS summary judgment in favor of the United States on the amount of forfeiture imposed. Rhodes is ordered to pay the FCC's forfeiture penalty of $9,918,000.

IT IS FURTHER ORDERED that the trial set for April 22, 2024, and all associated deadlines are VACATED.

IT IS FURTHER ORDERED that Rhodes's motions for reconsideration (Docs. 109, 110) are DENIED and all remaining motions, including the United States' Motion in Limine (Doc. 106), are DENIED as MOOT.

IT IS FURTHER ORDERED that any future filings from Rhodes that fail to comply with the Federal Rules of Civil Procedure, this Court's local rules, or the Court's orders will be stricken without review.

The Clerk of Court is directed to enter judgment in the United States' favor by separate document and close the case file.

Dated this 19th day of March, 2024.

_____
Dana L. Christensen, District Judge
United States District Court